**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**RICHARD KLEIN,**

**Petitioner,** **Case No. C-1-01-794**

**v.** **Judge Beckwith**

**HAROLD CARTER, WARDEN,** **Magistrate Judge Black**

**Respondent.**

**RESPONDENT'S ANSWER/RETURN OF WRIT**

The Respondent denies each of the allegations made by the Petitioner except those expressly admitted herein.

The Petitioner, Richard Klein (hereinafter "Klein"), is state prisoner number 350-022. He is presently incarcerated at the Southern Ohio Correctional Facility. Respondent is the warden at that institution.

Klein has brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254.

Hereinafter, the Respondent shows cause why the writ should not be granted.

## FACTUAL BACKGROUND

The state appellate court summarized the evidence surrounding Klein's conviction as follows:

> Defendant-appellant, Richard Joseph Klein, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of involuntary manslaughter, felonious assault, and three counts of endangering children. n1 He was convicted of those offenses following a jury trial, and the trial court sentenced him to consecutive periods of incarceration totaling thirty-one years. On appeal, Klein asserts six assignments of error. Because we find the assignments to lack merit, we affirm the judgment of the trial court.
>
> - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -
>
> n1 The indictment included charges under three separate subsections of the child-endangering statute: administering excessive corporal punishment on the victim under R.C. 2919.22(B)(3), torturing or cruelly abusing the victim under R.C. 2919.22(B)(2), and creating a substantial risk to the safety or health of the victim by violating a duty of care under R.C. 2919.22(A). The violations of subsections (B)(2) and (3) of R.C. 2919.22 were charged as felonies of the second degree, because serious physical harm was alleged. The violation of R.C. 2919.22(A) was charged as a felony of the third degree for the same reason.
>
> - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - -
>
> II. FACTS
>
> Sharon Richmond and her twelve-year-old son, Matthew, resided with Klein. Matthew was developmentally delayed and suffered from periodic seizures. Even though Matthew was twelve years of age, he was only three and one-half feet tall and weighed only sixty-five pounds.
>
> The record indicates that Matthew also suffered periods of incontinence. Prior to January 1, 1997, Klein had disciplined Matthew for incidents of incontinence by immersing the child in a tub of cold water. During the evening of January 1, 1997, Matthew suffered another incident, and Klein took him into the

bathroom while Richmond remained in another room. Approximately twenty-five minutes later, Klein emerged from the bathroom and reported to Richmond that Matthew had been accidentally burned.

Neither Klein nor Richmond sought immediate medical treatment for Matthew. Instead they treated Matthew's burns with cold, wet sheets and Noxzema skin lotion. The next day, Richmond summoned paramedics when she discovered that Matthew's breathing had become rapid and shallow. Matthew was initially taken to Children's Hospital on January 2, 1997. Later that day he was transferred to Shriners Burns Hospital. He died at Shriners eleven days later.

Matthew's treating physician at Shriners, Dr. Glenn Warden, testified that Matthew had suffered third-degree burns covering seventy-four percent of his body. Warden stated that the injuries were consistent with Matthew having been immersed in twelve inches of 140-degree water for five seconds. n2 According to Dr. Warden, Matthew died of pulmonary lung damage secondary to the burns. The doctor further opined that the delay in seeking medical treatment also contributed to Matthew's death.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - -

n2 Investigating police officers measured the hot-water temperature at Klein's residence at 140 degrees.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - -

Richmond and Klein had initially told the authorities that Matthew was accidentally burned while Richmond was bathing him. They maintained that Matthew turned on the hot-water faucet when Richmond momentarily left him unattended. Later, Richmond recanted this account and told investigating officers that Matthew had suffered his injuries at Klein's hands. Armed with this account, the officers accompanied Richmond to Klein's residence. Richmond's attempts to open the front door of the residence were to no avail because it had been nailed closed. The officers then encountered Klein at the rear of the residence, and he was taken into custody.

Further investigation revealed that Klein had left a note for Richmond in which he claimed that he did not intend to harm Matthew and that his injuries had resulted from an accident. Klein gave the same account to investigating officers. He stated that he

> had accidentally burned the child while he was cleaning him with a hose that was attached to the faucet.
>
> Richmond ultimately entered a plea of guilty to one count of child endangering. She was sentenced to a term of incarceration for that offense.

(Exhibit 22, Appellate Court Opinion, p. 2-4)

**STATE CONVICTION**

On January 13, 1997, the Hamilton County Grand Jury issued an indictment charging Klein with one count of felonious assault, and three counts of endangering children. (Exhibit 1) The state subsequently dismissed that indictment and obtained a new indictment charging Klein with one count of murder, one count of involuntary manslaughter, one count of felonious assault, and three counts of endangering children. (Exhibit 2)

A jury found Klein not guilty of murder but found him guilty of involuntary manslaughter, felonious assault, and three (3) counts of endangering children. (Transcript ("T."), p. 700-1) He was ordered to serve ten years for involuntary manslaughter, eight years for felonious assault, eight years for endangering children and five years for endangering children, all sentences to be served consecutively. The court found that counts four and five of the indictment, both charging Klein with endangering children, merged for sentencing purposes. (T., p. 729)

The victim was Matthew Richmond, the son of Sharon Richmond, Klein's live-in girlfriend who was also charged in Matthew's death. (T., p. 345, Exhibits 1 and 2) Mathew was twelve years old, three and one-half feet tall, and weighed about sixty-five pounds. (T., p. 350) He was mentally

handicapped. He was developmentally delayed and suffered from a seizure disorder. (T., 304, 347) He communicated in one-word utterances and had difficulty staying focused in school. (T., p. 305). He had some physical limitations, but generally was very active and was one of the more physically able students at his school. (T., p. 304, 328, 347)

Matthew died from burns he received when Klein put him in a bathtub filled with scalding hot water to punish him for having a bowel movement in his pants. (T. p. 373-5) Klein and Richmond did not seek medical attention for Matthew until the following day. (T., p. 389-90) Eventually, Matthew was taken to the hospital. He had third degree burns over 75 per cent of his body. (T., p. 575) Once at the hospital, Matthew lingered for the next eleven days during which time he was administered fluids, was put on a ventilator to enable him to breathe, had incisions made through his dead skin to help him breathe better and underwent skin grafts. (T., p. 581-3) He died on January 13, 1997. The cause of death was pulmonary lung damage secondary to a 74 percent total body surface area burn. (T., p. 583-4)

Initially, Sharon Richmond told authorities that she had put Matthew in the bathtub, but eventually she told police that Klein had put him in the hot bathtub. (T., p. 390-398, 471, 526) Klein admitted to the police that he had caused the burns. (T., p. 477, 534) He stated that he wanted the bath to be uncomfortable for Matthew in order to teach Matthew not to go in his pants. (T., p. 478, 535)

Klein filed several pre-trial motions. He filed a motion to suppress his

statements. (Exhibit 3) The trial court held a hearing. The testimony at the hearing appears on pages 21-81 of the Transcript. The motion was overruled. (T., p. 81) Klein's counsel also filed a motion in limine to exclude photographs of Matthew from evidence and a motion to dismiss. (Exhibits 4 and 5) They were both overruled.

**MOTIONS FOR ACQUITTAL AND FOR NEW TRIAL**

Klein filed a Motion for Acquittal and a Motion for New Trial. (Exhibits 6 and 7) The State's response is Exhibit 8. Klein's counsel filed further pleadings. (Exhibits 9 and 10) The court denied both motions. (Exhibits 11 and 12) The appeal from the motions was part of Klein's direct appeal from his convictions.

**DIRECT APPEAL**

Klein's first appeal was dismissed for lack of a final appealable order on December 4, 1998, because the original sentencing entry did not comply with Ohio Criminal Rule 32(B). (Exhibit 13) The trial court subsequently issued a nunc pro tunc Judgment Entry from which Klein took an appeal. (Exhibit 14)

**REINSTATED DIRECT APPEAL**

Klein, represented by new counsel, appealed from the nunc pro tunc entry and raised seven assignments of error as follows:

I. The Trial Court erred in denying the Defendant's Motion for a New Trial when the State failed to provide the Defendant with exculpatory evidence.

II. The Defendant-Appellant received ineffective assistance of counsel.

III. The Trial Court erred to the prejudice of the Defendant-Appellant when it overruled his motion for new trial.

IV. The Trial Court erred to the prejudice of the Defendant-Appellant when, at the sentencing, it fashioned a sentence imposing consecutive commitments upon Defendant-Appellant on all but one count for which he was convicted.

V. The Trial Court erred to the prejudice of the Defendant-Appellant when it denied his Crim. R. 29 motions.

VI. The Trial Court erred to the prejudice of Defendant-Appellant by admitting gruesome slides and photographs into evidence.

VII. The Trial Court erred to the prejudice of the Defendant-Appellant when it wrongfully included a complicity charge to the jury.

(Klein's Brief, Exhibit 15) The State's Brief is Exhibit 16.

On September 21, 1999, Klein filed a *pro se* Motion for Leave to File Late Amended and Supplemental Brief. (Exhibit 17) He filed an Amended and Supplemental Brief on the same date. (Exhibit 18) The court overruled the motion for leave to file a late amended and supplemental brief and ordered the brief stricken from the record. (Exhibit 19) Klein filed a motion asking the court to reconsider it. (Exhibit 20) The court denied his motion. (Exhibit 21)

On December 3, 1999, the Hamilton County Court of Appeals issued its Opinion affirming Klein's convictions. (Exhibit 22)

On January 11, 2000, Klein filed another Amended and Supplemental Brief in the appellate court. (Exhibit 23) The court struck the brief for failing to comply with the Rules of Appellate Procedure. (Exhibit 24)

Klein did not appeal to the Ohio Supreme Court.

**STATE HABEAS CORPUS**

On August 2, 2000, Klein filed an application for a writ of habeas corpus as an original action in the Warren County Court of Appeals. (Exhibit 25) Klein's application set forth three grounds for relief:

I. The Trial Court failed to file a judgment of conviction leaving Appellate Court without jurisdiction to review case, causing dismissal of appeal, and violating Petitioner's due process and speedy trial rights.

II. The Trial Court was without jurisdiction to place of record a nunc pro tunc judgment of conviction after a 19 month delay and the nunc pro tunc order is an invalid judgment.

III. The Trial Court is divest of jurisdiction to impose sentence.

Respondent filed a motion to dismiss. (Exhibit 26) Klein's memorandum in opposition is Exhibit 27. On October 6, 2000, the Court of Appeals granted Respondent's motion to dismiss. (Exhibit 28)

Klein appealed to the Ohio Supreme Court asserting two propositions of law as follows:

I. When a court exceeds its power in entering a purported nunc pro tunc order that order is invalid.

II. Delay of 18 months between notice of appeal and affirmance of judgment by state court violates due process and Sixth Amendment speedy trial rights.

(Exhibit 29, Klein's Brief) Respondent filed a motion to strike Klein's brief because he had failed to serve Respondent as required by the Supreme Court's Rules. (Exhibit 30) Klein filed a motion to overrule Appellee's motion to strike his brief. (Exhibit 31) Once again, it was necessary for Respondent to file a motion to strike Klein's motion because he had not served Respondent.

(Exhibit 32) The State filed its Merit Brief on February 26, 2001. (Exhibit 33) Klein's Reply Brief is Exhibit 34. In an Entry filed March 21, 2001, the Supreme Court dismissed the case *sua sponte*. (Exhibit 35)

**RULE 26(B) APPLICATION FOR REOPENING**

On January 2, 2001, Klein filed a Motion for Delayed Reopening of his Appeal. (Exhibit 36) He filed an appeal brief on the same date in which he asserted the following assignments of error:

I. The Trial Court erred in denying Klein's motion for new trial when the State failed to provide defense with exculpatory evidence, in violation of Klein's due process, confrontation, and compulsory process rights.

II. The Trial Court erred when the State presented false misleading (sic) evidence through police testimony which prejudicially effected the defense in violation of due process rights.

III. The Trial Court erred when the State presented Klein's alleged confession to the jury in violation of Fourth, Fifth, and Fourteenth Amendment due process rights.

IV. The Trial Court erred when the State presented highly inflammatory, inadmissible, prejudicial, opinion testimony of police in violation of Klein's due process rights.

V. The Trial Court erred when the State failed to prove beyond a reasonable doubt the essential element of reckless (sic) in the charges of endangering and knowingly in the charge of felonious assault in violation of Klein's due process rights.

VI. The Trial Court erred when the State presented highly inflammatory inadmissible hearsay testimony in violation of due process rights.

VII. The Trial Court erred when it sentenced Klein to maximum consecutive terms of incarceration for four offences (sic) arising out of a single incident and consecutive sentences exceeding the maximum prison term allowed by Division (A) for the most serious offense R.C. 2953.085(C).

VIII. Trial counsel was ineffective by his failure to make appropriate objections, failure to challenge prejudicial inadmissible evidence, failure to investigate, failure to properly cross-examine witnesses, and failed to assert other rights in violation of the Sixth and Fourteenth Amendments.

(Exhibit 37, Brief) The State's amended memorandum in opposition is Exhibit 38. On July 27, 2001, the court denied Klein's Rule 26(B) Application, finding that it was untimely and that he had failed to show good cause for the delay in filing.[1] (Exhibit 39)

Klein appealed the denial of the Rule 26(B) Application to the Ohio Supreme Court. (Exhibit 40) He asserted ten propositions of law as follows:

I. Is double jeopardy, due process and equal protection of the law denied when a court imposes five maximum consecutive sentences R.C. 2953.08A(1), ". . . arising out of a single incident. . ." R.C. 2953.08A(1)(b); " . . .and the consecutive sentences exceed the maximum prison term allowed for the most serious offense. . ." (sic)

II. Prisoners have a constitutional right of access to the courts; the state nor its officers may abridge nor impair this right. (sic)

III. Defendants have a right to an advocate in mandatory appeals; counsel has an ethical responsibility of constitutional dimension to argue zealously those issues contained of record, and to raise arguable issues consistent with the law.

IV. The court of appeals abused its discretion when it struck appellant's pro se brief which was, in fact, timely filed denying due process, access to the courts and an adequate meaningful review on appeal in violation of federal and state Constitutional rights.

---

[1] Ohio Appellate Rule 26(B) provides that an application for reopening is to be filed within ninety days from the journalization of the appellate judgment sought to be reopened unless the applicant shows good cause for filing at a later time.

V. Due process requires the prosecution to disclose exculpatory evidence to defense when it is material to guilt or punishment.

VI. A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.

VII. If the totality of the circumstances reveals that the statement was the direct result of the exploitation of the Fourth Amendment violation, the statement and any additional evidence thereafter is inadmissible.

VIII. Prosecutor's duty is . . . to refrain from improper methods calculated to produce wrongful convictions.

IX. The due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

X. Trial counsel has an ethical responsibility of constitutional dimension to zealously represent his client's interests (1A.B.A. Standards [1982 Supp.) No. 4-4.1), consistent with is a duty to conduct reasonable investigation, present pertinent exculpatory evidence, conduct appropriate cross-examination, and to assert any other rights defendant may possess. (sic)

(Exhibit 41, Memorandum in Support of Jurisdiction) The State's Memorandum in Response is Exhibit 42. On October 24, 2001, the court dismissed the appeal. (Exhibit 43)

**FEDERAL HABEAS CORPUS**

On January 11, 2001, Klein filed his first habeas petition in this Court under Case No. C-1-01-10. That petition was dismissed without prejudice for failure to exhaust, and the statute of limitations was tolled. (Exhibit 44)

On November 16, 2001, Klein filed a new habeas petition in the instant case. (R. 1) On February 11, 2003, he filed an amended petition. (R. 15) On June 10, 2003, he filed a revised amended petition with fifteen grounds for relief which is the current petition pending before this Court. (R. 27)

> Ground One: The First District Court of Appeals struck Petitioner's timely filed pro se brief and denied replacement appellate counsel which denied Petitioner due process, equal protection, right of access to the courts, an adequate meaningful review and effective assistance of counsel on a first appeal of right.
>
> Ground Two: Appellate counsel and the clerk of courts failed to give proper notice of appellate court's December 3, 1999, judgment entry affirming conviction which denied Petitioner due process, access to the courts effective and meaningful review and effective assistance of counsel on a first appeal of right.
>
> Ground Three: The Court of Appeals, in denying Petitioner's application to reopen pursuant to App.R. 26(B) denied Petitioner of clearly established federal Constitutional rights of due process, equal protection effective assistance of counsel, an adequate and meaningful review and the right of access to the courts on a state created appeal of right.
>
> Ground Four: Ineffective assistance of appellate counsel.
>
> Ground Five: The State failed to disclose exculpatory evidence.
>
> Ground Six: The state knowingly presented perjured vouching testimony in violation of Petitioner's due process rights.
>
> Ground Seven: The State violated Petitioner's Fifth and Fourteenth Amendment rights when it presented at trial confessions allegedly made to Petitioner to detectives during custodial interrogation, and denied Petitioner a fair hearing and reliable determination of voluntariness.
>
> Ground Eight: Petitioner was denied equal protection of the law and due process of law when he was not permitted to recant the alleged inculpatory misstatement.
>
> Ground Nine: Detectives made a warrantless arrest without probably cause in violation of Petitioner's Fourth Amendment

rights, and prosecutors presented alleged inculpatory statements stemming from this unlawful arrest at trial in violation of Petitioner's due process rights.

Ground Ten: Insufficiency of the evidence.

Ground Eleven: Ineffective Assistance of Trial Counsel.

Ground Twelve: The State took two dramatically opposed positions on evidence against Petitioner and co-defendant Richmond in violation of Petitioner's due process rights.

Ground Thirteen: By imposing multiple punishments for what is essentially one offense, the sentencing court violated the Fifth Amendment Double Jeopardy Clause.

Ground Fourteen: Unjustified and lengthy delay between the finding of guilty and court of appeals' resolution of appeal denied Petitioner due process and speedy trial rights.

Ground Fifteen: Petitioner was denied due process on appeal of right to the Ohio Supreme Court when the court dismissed Petitioner's timely filed merit brief.

## ARGUMENT

### I. STATUTE OF LIMITATIONS

In Klein's eighth ground for relief, he claims that he was not permitted to recant his confession. He complains that his co-defendant, Sharon Richmond made highly detailed admissions and that she was permitted to recent those admissions.

The claim is barred by the statute of limitations contained in 28 U.S.C. §2244(d). It is also procedurally defaulted due to waiver because Klein did not present it to the state courts. It is also without merit. Klein was not prevented from recanting his confession. He could have taken the stand at his trial and recanted his confession just as Sharon Richmond recanted her previous

statements when she testified at his trial. Had Klein done so, he would have been subject to cross-examination based on his prior inconsistent statement, just as Sharon Richmond was. (T., p. 403-432)

**A. 28 U.S.C. §2244(d) and Statutory Tolling**

A federal habeas petition attacking a conviction in the state courts must be filed within one year after the conviction becomes final pursuant to 28 U.S.C. §2244, which provides, in relevant part, as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The appellate court affirmed Klein's convictions on December 3, 1999. He had 45 days after that, until January 17, 2000, in which to file an appeal to the Ohio Supreme Court. See Rule II, Section 2(A)(1)(a), Rules of Practice of the Supreme Court of Ohio. Since Klein did not file an appeal, his convictions became final on January 17, 2000, and the one-year statute of limitations began running at that time. It expired one year later absent any tolling.

The only action which tolled the limitation period under §2244(d)(2) (statutory tolling) is Klein's Rule 26(B) Application. (His state habeas petition did not toll because it was not a "properly filed" application for state collateral

review. See discussion below under state habeas petition.) Taking into account the period of time which was statutorily tolled by Klein's Rule 26(B) Application, the statute of limitations expired on February 7, 2002. See discussion below.

**1. Rule 26(B) Application**

In White v. Schotten, 201 F.3d 743 (6th Cir. 2000), the Court held that a Rule 26(B) Application is part of direct review. That decision has created confusion, particularly as to the effect of a Rule 26(B) application on the AEDPA statute of limitations. In Bronaugh v. Ohio, 235 F.3d 280 (6th Cir. 2000), the Court directly confronted the tension created between the White decision and AEDPA's statute of limitations. Since the statute of limitations begins at the conclusion of direct review, and since White held that a Rule 26(B) action is part of the direct review, it would have been logically consistent for the Bronaugh Court to rule that the statute of limitations begins to run at the conclusion of the Rule 26(B) proceeding. The Bronaugh Court, however, recognized that since Rule 26(B) actions can be filed years after a conviction is otherwise final, such a result would have eviscerated the statute of limitations for Ohio defendants. The Court was unwilling to indefinitely delay the running of the limitation period until after the Rule 26(B) action was decided, so the Court decided to treat a Rule 26(B) proceeding as a tolling action for statute of limitations purposes. The court held that a Rule 26(B) proceeding always tolls the limitation period (regardless of whether it is "properly filed"), but it does not

start the limitation period running anew.[2]

Klein filed his Rule 26(B) application on January 2, 2001. At that time, 350 days of the limitation had already expired. (From January 17, 2000, until January 2, 2001) The limitation period was tolled during the entire time the Rule 26(B) action was pending in state court and for an additional 90 days after that during which Klein could have filed a petition in the United States Supreme Court seeking *certiorari* review. See Abela v. Martin, 348 F.3d 164 (6th Cir. 2003).

Klein's Rule 26(B) Application was pending in state court from January 2, 2001, until October 24, 2001, when the Ohio Supreme Court dismissed his appeal. He had until January 22, 2002, in which to file a *certiorari* petition but did not do so. Therefore, the limitation period resumed running on January 23, 2002. At that time, there were 15 days remaining of the one-year period. Klein had until February 7, 2002, in which to file a habeas petition presenting the claim at issue here. He did not do so, and the claim is time-barred.

**2. State Habeas Petition**

Klein's state habeas petition did not toll the limitation period during its pendency. In order to qualify for tolling purposes under §2244(d)(2), an application for state post-conviction relief must be recognized as such under

---

[2] The court reached a contrary result in Lambert v. Warden, Ross Correctional, 81 Fed. Appx. (6th Cir. 2003). Lambert, however, is unpublished and therefore cannot overrule Bronaugh, which is published. An unpublished decision cannot overrule a published decision. United States v. Roper, 266 F.3d 526, 530 (6th Cir. 2001). The Bronaugh decision is controlling here and is binding on this Court.

the governing state procedures. Adeline v. Stinson, 206 F.3d 249 (2nd Cir. 2000). An action filed seeking to revive a long-since denied appeal or post-conviction action does not qualify as a recognized application for state post-conviction relief if the applicable state law does not permit it to be used for that purpose. We do not "allow defendants to create their own methods of seeking post-conviction relief by availing themselves of a state court's general motion practice. Were it otherwise, then so long as the state court was willing to keep its clerk's office door open to a petitioner, he or she could bring successive motions seeking to reinstate a denied petition for leave to appeal indefinitely and thus stave off the running of the AEDPA proscribed time to file a federal petition for habeas corpus virtually in perpetuity." Adeline, at 252-3. Citing Adeline, the Sixth Circuit ruled that attempts to seek relief in state court through avenues that are not available for that purpose do not constitute properly filed state post-conviction actions because they are not recognized as such under governing state procedures. Williams v. Brigano, Case No. 99-3913, 2000 U.S. App. LEXIS 33223 (6th Cir. 2000), *cert. denied,* 534 U.S. 831 (2001). The Court held that none of the actions filed by Williams was a properly filed post-conviction or other collateral review proceeding which tolled the running of the statute. "Under Ohio law, Williams could not seek collateral review of his conviction by attempting to reopen his post-conviction action, filing a state habeas corpus action which did not raise jurisdictional issues, or filing a civil declaratory judgment action." Williams, supra, at *5.

In Ohio, the writ of habeas corpus is a narrow remedy. Habeas corpus is

an extraordinary remedy and is available if the petitioner is entitled to immediate release from confinement. State ex rel. Jackson v. McFaul (1995), 73 Ohio St.3d 185; R. C. 2725.01, *et. seq.* Habeas corpus is generally available only to challenge the jurisdiction of the trial court. Wireman v. Ohio Adult Parole Authority (1988), 38 Ohio St.3d 322. The Ohio Supreme Court has recognized that habeas may be used to challenge non-jurisdictional errors, but only if there is no other adequate legal remedy. In State ex rel. Jackson v. McFaul, supra, the Court stated as follows:

> [H]abeas corpus will lie in certain extraordinary circumstances where there is an unlawful restraint of a person's liberty . . . but only where there is no adequate legal remedy, *e.g.*, appeal or post-conviction relief.

Id., at 186. Habeas corpus is not available to review claimed errors occurring during the process of a criminal conviction because the petitioner has other legal remedies in which to raise the errors, *i.e.*, direct appeal or post-conviction.

Although Klein tried to claim that he was attacking the jurisdiction of the trial court, the Warren County Court of Appeals ruled that the trial court (the Hamilton County Court of Common Pleas) clearly had jurisdiction to convict Klein of the offenses of involuntary manslaughter, felonious assault and endangering children. (Exhibit 28, Entry Granting Motion to Dismiss, p. 3) Klein is not permitted to create his own methods of seeking collateral review of his convictions. As the Sixth Circuit indicated in Williams v. Brigano, Case No. 99-3913, 2000 U. S. App. LEXIS 33223 (6th Cir. 2000), *cert. denied,* 534 U.S. 831 (2001), he could not seek collateral review of his conviction by filing a state habeas corpus action which did not raise jurisdictional issues. His state

habeas petition was not a "properly filed" application for state post-conviction or other collateral review of his conviction and did not toll the statute of limitations.

**B. Federal Habeas Petitions**

**1. Case No. C-1-01-10**

The petition filed on January 11, 2001, under Case No. C-1-01-10 was dismissed for failure to exhaust. In Duncan v. Walker, 121 S. Ct. 2120 (2001), the court held that a prior federal habeas petition does not toll the limitation period under §2244(d)(2), as it is not an "application for State post-conviction or other collateral review." However, the opinion suggested (and several other federal appellate courts have agreed) that the statute of limitations may be equitably tolled while a habeas petition with unexhausted claims was pending if the petitioner returns to state court within a reasonable time (usually 30 days) after the petition is dismissed to exhaust the claims, and then returns to federal court within a reasonable time (usually 30 days) after exhaustion is complete and files a new habeas petition. See Palmer v. Carlton, 276 F.3d 777 (6th Cir. 2002). That was the Order of the Court in Case No. C-1-01-10. See Exhibit 44.

As required by the Order, Klein returned to federal court within thirty days after exhausting his state court remedies. (The Ohio Supreme Court dismissed Klein's appeal of the Rule 26(B) proceeding on October 24, 2001, and Klein filed his first petition in the instant case, Case No. C-1-01-794, on November 16, 2001.) Thus, the statute of limitations was equitably tolled from

January 11, 2001, until November 23, 2001, which was 30 days after the Ohio Supreme Court dismissed Klein's 26(B) appeal. However, that equitable tolling is not relevant here because it is subsumed by statutory tolling. In other words, for the entire time period during which equitable tolling would have applied, the limitation period was statutorily tolled under §2244(d)(2) by the pendency of Klein's Rule 26(B) proceeding.

**b. Case No. C-1-01-794**

Klein filed his first petition in the instant case on November 16, 2001. The claims presented in that petition are timely. The claim at issue here was not presented in that petition. He filed his second (amended) petition, in which he first presented the claim at issue here, on February 11, 2003. The statute of limitations had expired by then, and the claim is therefore time-barred.

The limitation period is not tolled by a pending federal habeas petition. Duncan v. Walker, 121 S. Ct. 2120 (2001). Therefore, the limitation period for this particular claim continued to run while the first petition filed under the instant case number was pending, and, as noted above, expired on February 7, 2002. Since Klein did not file the amended petition (wherein he raised this claim) until after the statute of limitations had expired, the claim is time-barred.

Rule 15(c) of the Federal Rules of Civil Procedure allows a party to amend a pleading. However, the AEDPA presents a special situation. United States v. Duffus, 174 F.3d 333 (3rd Cir. 1999). Pursuant to Rule 15(c), an untimely amendment to a §2255 petition which, by way of additional facts, clarifies or

amplifies a claim or theory in the original petition may relate back to the date of the original petition if and only if the original petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case. United States v. Espinoza-Saenz, 235 F.3d 501 (10th Cir. 2000). The court extended that rationale to habeas petitions filed pursuant to §2254. Petitioner's amended petition added claims of ineffective assistance and juror misconduct. Those claims were "new" claims which did not relate back to the date of the original habeas petition and were properly dismissed by the district court as untimely. Woodward v. Williams, 263 F.3d 1135 (10th Cir. 2001). "A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period." Duffus, p. 338. The court may allow an amendment to clarify a claim initially made, but to allow new claims to be filed after the statute of limitations has expired would frustrate the intent of Congress and would be contrary to the policy of the AEDPA. Duffus, p. 337-8. Also see United States v. Craycraft, 167 F.3d 451 (8th Cir. 1999); Davenport v. United States, 217 F.3d 1341 (11th Cir. 2000); United States v. Pittman, 209 F.3d 314 (4th Cir. 2000); United States v. Hicks, 283 F.3d 380 (D. C. 2002).

In Pruitt v. United States, 274 F.3d 1315 (11th Cir. 2001), Petitioner filed a timely habeas petition challenging his sentence. Two years later, he tried to amend his petition by adding claims of ineffective assistance of counsel and prosecutorial conduct. The new claims were held to be untimely. In order for an untimely claim to "relate back" to the original date of filing, the new claim

must have arisen from the same underlying facts as the original claim. It is not enough that the new claim arose out of the same trial and sentencing proceedings. Rule 15(a) allows amendments to correct technical deficiencies or expand facts alleged in the original pleading, but does not permit an entirely different transaction to be alleged by amendment. The same analysis applies whether a district court denies leave to amend because the claims asserted in the amended petition are untimely or allows the amendment and dismisses the claims as time-barred. Similarly, in Dean v. United States, 278 F.3d 1218 (11the Cir. 2002), while a timely habeas petition was pending, Petitioner filed an untimely amended petition to add new claims. New claims are untimely and do not relate back to original filing date unless they arise from or clarify the same facts as the original claims. Congress did not intend Civil Rule 15(c) (which allows amendments) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts. The fact that the new claims arose out of the same trial and sentencing proceeding is not enough.

The Sixth Circuit, in Oleson v. United States, Case No. 00-1938, 27 Fed. Appx. 556, 2001 U.S. App LEXIS 27018 (6th Cir. 2001), agreed that once the statute of limitations has expired, allowing amendment of a habeas petition with additional grounds for relief would defeat the purpose of the AEDPA's statute of limitations. "Finally, Oleson's amendment does not escape the AEDPA statute of limitations by 'relating back' to previous claims – Oleson's amendment raises an entirely new argument. See generally FED. R. CIV. P.

15(c); United States v. Thomas, 221 F.3d 430, 436 (3rd Cir. 2000) ('[A] party cannot amend a §2255 petition to add a completely new claim after the statute of limitations has expired.')." Oleson, at **11 .

One of the signal purposes of the AEDPA is the desire of Congress to achieve finality in criminal cases, both federal and state. Duncan v. Walker, 121 S. Ct. 2120, 2127-28 (2001); Williams v. Taylor, 529 U.S. 420, 436 (2000); Calderon v. Thompson, 523 U.S. 538, 554-58 (1998). To allow a habeas petitioner to amend his petition to raise claims that are time-barred would frustrate that intent and would be contrary to the policy of the AEDPA.

**II. PROCEDURAL DEFAULT**

With the possible exception of the claims in which Klein complains about procedural decisions made in state court with regard to his Rule 26(B) action and his state habeas action (Grounds Three and Fifteen), Klein's claims are procedurally defaulted. (The claims in which he complains about various procedural decisions are not cognizable in a habeas corpus action. See discussion below.)

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. §2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court, and to all appropriate state courts prior to that, so that the state is given the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. 28 U.S.C. §2254 (b) and (c); O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, 1731 (1999); Duncan v. Henry, 513 U.S. 364 (1995); Lyons v.

Stovall, 188 F.3d 327, 331 (6th Cir. 1999). A habeas corpus petition which contains any issue which is not exhausted must be dismissed. Coleman v. Thompson, 501 U.S. 772, 731 (1991); Hannah v. Conley, 49 F.3d 1193, 1195 (6th Cir. 1995).

Procedural default occurs when the petitioner fails to fairly present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error. A federal habeas court is barred from hearing issues that could have been raised and litigated in the state courts, but were not, and which now may not be presented to those state courts due to procedural default or waiver. Gray v. Netherland, 518 U.S. 152, 162 (1996). The habeas petitioner has the burden of overcoming this bar by showing cause for the default and actual prejudice. Sawyer v. Whitley, 505 U.S. 333, 338 (1992). Normally, a federal habeas court will consider default in the state courts to have occurred if the last "reasoned state judgment rejecting a federal claim" makes a plain statement of such state procedural default. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). No such statement is necessary if the relevant issues were not presented at all to the state court(s). Harris v. Reed, 489 U.S. 255, 263 n.9 (1989).

Before an alleged federal constitutional error may be reviewed in federal habeas corpus, a petitioner must exhaust his state court remedies by affording the state courts "a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." Vasquez v. Hillery, 474 U.S.

254, 257 (1986). In order to meet the requirements for exhaustion, "the federal claim [must be] fairly presented to the state courts . . ." Duncan v. Henry, 513 U.S. at 365.

A federal law or constitutional issue is fairly presented to the state courts when:

1) It sets forth all essential factual allegations asserted in the federal petition, and

2) It places before the state courts essentially the same legal doctrine asserted in the federal petition.

Morgan v. Jackson, 869 F.2d 682, 684 (2nd Cir. 1989), *cert denied*, 493 U.S. 920 (1989).

The federal issue as presented in the state court must rely on pertinent federal cases employing constitutional analysis, or state cases using a constitutional analysis in similar factual situations, or must specifically assert particular constitutional claims. Pierson v. O'Leary, 959 F.2d 1385, 1393 (7th Cir. 1992).

Failure to fairly present the federal claim, especially if the petitioner is now barred from returning to the state courts with it, waives the claim for the purposes of federal habeas corpus review. Gray v. Netherland, 518 U.S. at 162.

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. Reynolds v. Berry, 146 F.3d 345, 347 (6th Cir. 1998). First, the Court must determine that there is a state procedural

rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the Court must determine whether the state courts actually enforced the state sanction. Third, it must be determined whether the state procedural rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the Court has determined that a state procedural rule was violated and that the rule was an adequate and independent state ground, then petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. The habeas petitioner bears the burden of overcoming the procedural bar by showing cause and actual prejudice.

In order to show cause, petitioner must prove "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Coleman v. Thompson, 501 U.S. at 722, 753 (1991); Shorter v. Ohio Dept. of Rehab. And Corrections, 180 F.3d 723, 725 (6th Cir. 1999). Prejudice exists where, but for error, the defendant (petitioner) "might not have been convicted, " Reed v. Ross, 486 U.S. 1 (1984), or the errors undermined the accuracy of guilt, Smith v. Murray, 477 U.S. 527, 538-539 (1986). In Coleman, 501 U.S. at 748, the Court stated that the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct "a fundamental miscarriage of justice." A

fundamental miscarriage of justice is usually interpreted to mean that an innocent person was convicted. Sawyer v. Whitley, 505 U.S. at 339, n. 6.

**A. Claims that either were or could have been raised on direct appeal**

**1. Claims that were raised on direct appeal**

Any claims that Klein raised on direct appeal are procedurally defaulted because Klein did not file an appeal to the Ohio Supreme Court. He claims that he was not notified of the appellate court judgment in time to file a timely appeal. According to him, he was notified of the decision on February 27, 2000, after the 45 days during which he could have filed a notice of appeal in the Supreme Court expired. (Petition, p. 4) However, if he had diligently prepared and filed a motion for a delayed appeal as soon as possible thereafter, the motion might have been granted.

He can still file a motion for a delayed appeal, but he has refused to do so. When Respondent filed a motion to dismiss this case for failure to exhaust because Klein still has the option for filing said motion in the Ohio Supreme Court, Klein claimed that he did not need to because he had presented his claims in other pleadings. (See R. 10 and 11) Although true that he did raise the same claims in other proceedings, the claims cannot be considered in those actions. Klein presented many of the same claims in his Rule 26(B) Application, but the only claims that can be heard in a Rule 26(B) application are claims alleging "ineffective assistance of appellate counsel."[3] See Ohio

[3] Any claims presented in the Rule 26(B) proceeding are procedurally defaulted anyway. The state court refused to consider the merits of the claims because

Appellate Rule 26(B)(1). Raising the direct appeal claims in a Rule 26(B) Application, a proceeding in which they cannot be considered, does not present them to the state courts in the manner required by state law and does not properly exhaust the claims. Klein attempted to raise another of his direct appeal claims in his state habeas petition, but the petition was dismissed precisely because Klein had an adequate remedy by way of direct appeal. (Exhibit 28, p. 3) Klein did not present the direct appeal claims to the state court in the manner required by state law, and those claims are procedurally defaulted.

As indicated above, Klein can still file a motion for a delayed appeal. Had he filed the motion as soon as possible after being notified of the appellate court decision, the motion might have been granted. However, at this late date (four and one half years after the appellate judgment of conviction), it is unlikely that the motion would be granted, and the claims would be procedurally defaulted anyway.

**a. Specific claims**

**I. Fifth Ground for Relief**

In Klein's Fifth Ground for relief, he claims that the state failed to disclose exculpatory evidence.[4] This claim was raised in his direct appeal, both

---

Klein's 26(B) Application was untimely, finding that he had failed to show good cause for the untimely filing. (Exhibit 39)

[4] One of his allegations involves the testimony and failure to obtain an expert report from Dr. Glenn Warden, to whom Klein keeps referring as the State's expert. (Petition, p. 49) Although Dr. Warden probably could have been qualified as an expert, he did not testify as an expert witness but as the

by his attorney in the initial brief and by Klein in his *pro se* amended and supplemental brief which was stricken. The only way to properly exhaust this claim is to raise it in a direct appeal to the Ohio Supreme Court. Klein did not do that, and it is procedurally defaulted. (Klein raised the claim in his Rule 26(B) Application, where it cannot be considered.)

**II. Sixth Ground for Relief**

In Klein's Sixth Ground for Relief, he claims that the State presented perjured vouching testimony. The claim was raised in Klein's *pro se* amended and supplemental brief filed in his direct appeal. The only way to properly exhaust the claim is to raise it in a direct appeal to the Ohio Supreme Court. Klein did not do so, and it is procedurally defaulted. (Klein raised the claim in his Rule 26(B) Application where it cannot be considered.)

**III. Tenth Ground for Relief**

In his Tenth Ground for Relief, Klein claims that there was insufficient evidence to convict him. This claim was raised in Klein's direct appeal, both by his attorney in his initial brief and by Klein in his *pro se* amended and supplemental brief. The only way to properly exhaust the claim is to raise it in a direct appeal to the Ohio Supreme Court. Klein did not do so, and it is procedurally defaulted. (Klein raised the claim in his Rule 26(B) Application where it cannot be considered.)

---

treating physician. He was the physician who treated Matthew Richmond for his burns. (T., p. 563-5)

### IV. Eleventh Ground for Relief

In his Eleventh Ground for Relief, Klein asserts various claims of ineffective assistance of trial counsel. Many of the various claims were raised in Klein's direct appeal either in his attorney's brief or by Klein in his *pro se* amended and supplemental brief. The only way to properly exhaust the claims is to raise them in a direct appeal to the Ohio Supreme Court. Klein did not do so, and the claims are procedurally defaulted. (Klein raised many of the them in his Rule 26(B) Application, where they cannot be considered.)

### V. Fourteenth Ground for Relief

In Klein's Fourteenth Ground for Relief, he claims there was an inordinate delay between his sentencing and his appeal (because of the initial dismissal of his appeal due the trial court's failure to file a final appealable order and the subsequent nunc pro tunc order). See Exhibits 13 and 14. Klein raised this claim in his *pro se* amended and supplemental brief in his direct appeal. The only way to properly exhaust the claim is to raise it in a direct appeal to the Ohio Supreme Court. Klein did not do so, and the claim is procedurally defaulted.

Klein raised this claim in his state habeas action where it could not be considered. The habeas case was dismissed precisely because Klein had another legal remedy, *i.e.* direct appeal, in which to raise the claim. Exhibit 28

#### 2. Claims that could have been raised on direct appeal

Any claims that could have been raised in the direct appeal but were not are procedurally defaulted.

In Ohio, a claim must be presented at the first opportunity to do so. The failure to raise the claim at the first opportunity generally waives it for further review. See, e.g., Berger v. Berger (1981), 3 Ohio App.3d 125, 443 N.E.2d 1375. Under Ohio law, "fair presentation" of a claim generally requires that the claim be brought to the attention of the courts on direct appeal. Thus, when a claim was, or could have been, raised on direct appeal, it is barred under the doctrine of res judicata. State v. Perry, 10 Ohio St.2d 175 (1967).

The "Perry Rule"/res judicata bar has been explicitly recognized by the Sixth Circuit numerous times as an adequate basis for a procedural default. Norris v. Schotten, 146 F.3d 314 (6th Cir. 1998); Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); Rust v. Zent, 17 F.3d 155, 161 (6th Cir. 1994). See also Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) ("Because Rust failed to raise his constitutional issues in his direct appeal, and because Rust's procedural default constituted an 'adequate and independent' state ground on which the state relied to foreclose judicial review of his constitutional claims, we may not consider Rust's constitutional claims unless he can show cause to excuse his failure to present the claims in state court and actual prejudice to his defense at trial or on appeal.").

The exhaustion requirement is satisfied if it is clear that claims are procedurally barred under state law. Gray v. Netherland, 518 U.S. 152, 160-161 (1996). In the Sixth Circuit, a claim is exhausted because it is barred under Ohio law if it is based on the record and was not raised on direct appeal. Caldwell v. Russell, 181 F.3d 731, 739, fn. 8 (6th Cir. 1999) ("Caldwell has

exhausted his available state court remedies related to his evidence sufficiency contention, because he cannot now seek post-conviction relief in the Ohio Courts for any claim which he could have asserted in his prior direct appeal.").

**a. Specific claims**

**I. First Ground for Relief**

In Klein's first ground for relief, he claims that the court struck his timely filed brief.[5] (He is referring to Exhibit 18, his Amended and Supplemental Brief filed in the appellate court in his direct appeal.) This claim should have been presented to the Ohio Supreme Court in a direct appeal from the appellate judgment affirming his convictions. Instead, Klein raised it in his Rule 26(B) proceeding, where it cannot be considered. It is procedurally defaulted.

---

[5] Klein claims the court originally granted his motion to file a supplemental brief. (Respondent does not have a copy of that order, but has attached the appellate court's docket sheet as Exhibit 45) According to Klein, the amended brief was to be filed by September 7, 1999. The brief was filed on September 21, 1999. (Exhibit 18) His motion for leave to file it was denied and the brief was stricken, without explanation. (Exhibit 19) Klein claims his brief was timely filed and blames the prison officials for its being late. That contention is completely without merit. First of all, Klein claims that he gave the brief to the prison officials for mailing on September 7, 1999, the day it was due. The brief was already late then. It obviously could not have gotten to the court on time if it had been mailed on September 7, 1999. (Ohio does not recognize the "mailbox rule." In Ohio, a pleading is filed when it reaches the clerk of courts, not when it is given to the prison authorities for mailing. State ex rel. Tyler v. Alexander, (1990) 52 Ohio St.3d 84. See Adams v. Lemaster, 223 F.3d 1177 (10th Cir. 2000), which holds that the federal mailbox rule is a procedural rule, not a constitutional right.) Second, Klein clearly knew the brief was late because he filed a "Motion for leave to file *late* Amended and Supplemental Brief" (emphasis added) on September 21, 1999, the same date he filed the amended brief. (Exhibit 17)

**II. Second Ground for Relief**

His Second Ground for Relief, in which he complains about the court's failure to give him notice of its judgment affirming his convictions, should have been raised in the Ohio Supreme Court. The claim has no merit anyway, because the court sends copies of its decisions and orders to a party's attorney of record, not directly to the party.

Klein also alleged that his appellate attorney was ineffective for failing to give him notice of judgment. That claim will be discussed below.

**III. Seventh Ground for Relief**

In his Seventh Ground for Relief, Klein claims that the trial court erred by admitting his confession into evidence. The claim should have been raised in the direct appeal, but was not. Instead, Klein raised it in his Rule 26(B) Application, where it cannot be considered. Therefore, it is procedurally defaulted.

In his *pro se* amended and supplemental brief filed in his direct appeal, Klein claimed that his trial attorney was ineffective for allowing the confession to be admitted. (Trial counsel filed a motion to suppress the confession which was overruled, but Klein claimed he was ineffective for not raising the right arguments at the suppression hearing.) The ineffective assistance of counsel claim is procedurally defaulted because Klein did not appeal it to the Ohio Supreme Court.

A procedurally defaulted claim is not resurrected for a merits review

simply because it is raised as a basis for ineffective assistance of counsel. Lott v. Coyle, 261 F.3d 594 (6th Cir. 2001). In Lott, the petitioner procedurally defaulted a claim of error with respect to a jury waiver because he failed to raise it on direct appeal. He later asserted the jury waiver claim in an application to reopen his direct appeal, claiming that his appellate counsel was ineffective for failing to raise the claim on direct appeal. In his subsequent habeas case, he argued that the claim was preserved for a merits review. The Sixth Circuit rejected his argument:

> First, that a court, in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error for purposes of determining the existence of Strickland prejudice is not dispositive of the question whether a procedurally defaulted claim has been resurrected. As the district court correctly observed:
>
> > The fact that the state court engaged in that analysis, as they must under Strickland, does not, however, serve as evidence that those courts excused the procedural default. To hold otherwise would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel.

Lott, 261 F.3d at 612.

## IV. Eighth Ground for Relief

In his Eighth Ground for Relief, Klein argues that his rights were violated when he was not permitted to recant his confession. The claim could have been raised in Klein's direct appeal but was not. Therefore it is procedurally

defaulted. (It is also barred by the statute of limitations. See discussion above.)

**V. Ninth Ground for Relief**

In his Ninth Ground for Relief, Klein claims that his Fourth Amendment rights were violated by his warrantless arrest. The claim could have been raised in Klein's direct appeal but was not. Therefore it is procedurally defaulted.

Claims alleging Fourth Amendment violations are not cognizable in habeas corpus. Stone v. Powell, 428 U.S. 465 (1976). Klein is actually arguing about the admission of his statements into evidence, which is the same claim raised in his Seventh Ground for Relief.

**VI. Eleventh Ground for Relief**

In his Eleventh Ground for Relief, Klein claims that his trial counsel was ineffective for various reasons. Many of those specific claims were raised in his direct appeal, either by Klein's attorney in his brief or by Klein in his *pro se* amended and supplemental Brief. Those claims are procedurally defaulted because Klein failed to appeal to the Ohio Supreme Court.

The specific ineffective assistance of trial counsel claims that were not raised in the direct appeal, for example, failure to object during closing argument and failing to conduct an investigation into the cause of (Matthew's) death, are procedurally defaulted because they could have been raised in the direct appeal.

**VII. Twelfth Ground for Relief**

In his Twelfth Ground for Relief, Klein complains that the State took two dramatically opposed positions on evidence against himself and his co-defendant, Sharon Richmond. This claim could have been raised in Klein's direct appeal, but was not. Therefore, it is procedurally defaulted.

**VIII. Thirteenth Ground for Relief**

In his Thirteenth Ground for Relief, Klein complains that the trial court imposed consecutive sentences in violation of right to be from multiple punishments under the Double Jeopardy Clause. This claim could have been raised on direct appeal but was not. Therefore, it is procedurally defaulted.

In the appeal brief filed by Klein's attorney, he argued that the trial court's imposition of consecutive sentences was error under state law but he did not raise it as a federal constitutional claim. Therefore, it is procedurally defaulted.

If the court finds that the claim was raised as a federal constitutional claim, it is procedurally defaulted nonetheless because Klein did not appeal to the Ohio Supreme Court.

**B. Claims that were properly raised in a Rule 26(B) Application, *i.e.*, Ineffective Assistance of Appellate Counsel Claims**

In Klein's Fourth Ground for Relief, he claims that his appellate attorney was ineffective for various reasons.

Klein presented this claim in a Rule 26(B) Application, which is the proper forum in which to raise the claim. (In fact, this claim is the only claim

that can be properly raised in a Rule 26(B) Application. See Ohio App. R. 26[B][1].) Nonetheless, the claims are procedurally defaulted because the state court dismissed the application as untimely and found that Klein had failed to show good cause for his untimely filing. The Sixth Circuit has ruled that Ohio Appellate Rule 26(B) is an adequate and independent state procedural bar which forecloses federal habeas review of claims presented in that action if the Rule 26(B) Application is dismissed by the state court as untimely. Monzo v. Edwards, 281 F.3d 568 (6th Cir. 2002).

Klein claims that he was not notified of the appellate decision affirming his convictions until shortly before the 90-day filing deadline expired and implies that, therefore, he could not file the 26(B) application on time. If true, he should have prepared an application which complied with the rules and promptly filed it explaining the reason for the delay. Instead, he delayed another 90 days and then, according to him, tried to file a Rule 26(B) application which did not comply with Ohio's rules and was rejected sometime in May of 2000.

Klein complains that the reason for his failure to comply with the rules was the costs of copying and mailing his application and his indigence. He argues that the court should have taken his application and made the necessary copies for him, citing Ohio Crim. R. 32(B)(3)(c), which states that if the defendant is unable to pay the costs of documents necessary to an appeal, the documents will be provided. Klein's reliance on Rule 32 is misplaced. The rule refers to a defendant's first appeal as of right following a conviction, not

later discretionary appeals such as an appeal to the Ohio Supreme Court or a Rule 26(B) proceeding. Subsections (B)(1) and (B)(2) of Rule 32 proscribe the trial court's responsibilities "After imposing sentence in a serious offense." Subsection (B)(3) refers to "a right to appeal or a right to seek leave to appeal…under division (B)(1) or (B)(2) of this rule."

Even after that, Klein waited another eight months before he filed a Rule 26(B) Application that complied with Ohio's rules. In the meantime, he filed and prosecuted his state habeas petition in which he raised a claim that could not even be heard in that action. (Exhibit 25, state habeas petition filed August 2, 2000) Instead of wasting his resources on a state habeas petition (which has no filing deadline), he should have diligently worked on preparing a Rule 26(B) Application which complied with Ohio's rules. Had he made diligent efforts to file the application promptly, the court might have found good cause for his untimeliness. As it was, however, he was simply not diligent, and the court did not excuse his failure to file timely.

**III. Non-cognizable claims – Third and Fifteenth Grounds for Relief**

In Klein's Third Ground for Relief, he complains that the state refused to consider the claims in his Rule 26(B) Application. The Application was dismissed by the state court as untimely.

In his Fifteenth Ground for Relief, he complains that the Ohio Supreme Court refused to consider his appeal of his state habeas case. In that case, Klein failed to serve the opposing party (Respondent, who was represented by undersigned counsel) with a copy of his brief. His brief contained a certificate

of service, which he signed, in which he asserted to the court that he had served "all parties." (Exhibit 29, p. 13) When undersigned counsel learned that a brief had been filed (by calling the clerk of courts), she filed a motion to strike the brief. (Exhibit 30) Klein responded to the motion with a myriad of excuses as to why the brief had not been served. (Exhibit 31) Since he had previously asserted to the court that the brief was served on all parties, he had obviously lied to the court. The court *sua sponte* dismissed the appeal and refused to consider the merits of Klein's claim.

These claims are not cognizable in habeas corpus as they do not directly attack Klein's convictions, but the state court's procedures.

In Kirby v. Dutton, 794 F.2d 245 (6th Cir. 1986), the Sixth Circuit reasoned that habeas corpus, under 28 U.S.C. §2254, is only available to challenge the constitutionality of a petitioner's detention. Id., at 246. Building upon that premise, the Sixth Circuit concluded that claims of constitutional errors occurring during state collateral proceedings are not cognizable under §2254, as long as those claims address collateral matters and not the underlying state conviction giving rise to the petitioner's incarceration. Id., at 247.

A federal habeas court cannot grant habeas corpus relief "to correct alleged errors in state (habeas) proceedings." Trevino v. Johnson, 168 F.3d 173 (5th Cir). Errors in state post-conviction proceedings will not, in and of themselves, entitle at petitioner to federal habeas relief. Morris v. Cain, 186 F.3d 581 (5th Cir. 1999). Due process challenges to state habeas proceedings

necessarily fail "because infirmities in state habeas proceedings do not constitute grounds for relief in federal court." Hallmark v. Johnson, 118 F.3d 1073 (5th Cir. 1997).

Petitioner's claims that he was denied due process and equal protection in state post-conviction proceedings is not cognizable in federal habeas corpus. Federal habeas corpus permits a petitioner to challenge a petitioner's custody upon the basis that the detention is in violation of the Constitution, laws, or treaties of the United States. 28 U. S. C. §2254(a). The Sixth Circuit has held that an allegation of a denial of due process or equal protection in state post-conviction proceedings is not related to the issue of the petitioner's custody. Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986); see also Roe v. Baker, 316 F.3d 557, 571-2 (6th Cir. 2002). Moreover, "error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief." Alley v. Bell, 307 F.3d 380, 387 (6th Cir. 2002)(citing Kirby v. Dutton, 794 F.2d at 247).

Federal courts have repeatedly held in many contexts that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 749 (1991); see also Simpson v. Jones, 238 F.3d 399, 406 (6th Cir. 2000). Thus the procedural default doctrine is a federal doctrine and there is no absolute federal due process right to have a

claim heard on the merits in a state court when the person with the claim has failed to abide by appropriate state rules for presenting such a claim.

The United States Supreme Court has never held that the Constitution is violated when a court applies time limits and filing deadlines to its procedures. In fact, the Supreme Court itself imposes a 90-day filing deadline for filing appeals and/or petitions seeking certiorari review. Also, in federal court convicted defendants have ten days to file an appeal to the circuit courts. Further, there is a statute of limitations that applies to federal habeas corpus actions. Without time limits and filing deadlines, convicted prisoners could file any action whenever they felt like it, years after a conviction, which would completely abrogate a court's interest in the finality of its judgments.

The Sixth Circuit has ruled that Ohio Rule 26(B) is an adequate and independent state procedural bar which forecloses federal habeas review of constitutional claims presented in that action if the Rule 26(B) Application is dismissed by the state court as untimely. Monzo v. Edwards, 281 F.3d 568 (6th Cir. 2002). Obviously, a habeas petitioner's due process rights are not violated if the state appellate court dismisses his Rule 26(B) Application as untimely.

## CONCLUSION

For the foregoing reasons, Klein's federal habeas petition should be denied, and the case should be dismissed.

Respectfully submitted,

Jim Petro
Ohio Attorney General

S/Diane Mallory
Diane Mallory (0014867)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed by regular, first-class mail to Richard Klein, Ross Correctional Institution, P. O. Box 7010, Chillicothe, Ohio 45601, on the 17th day of May, 2004.

S/Diane Mallory