UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

FILED
JAMES ERWIN
CLERK

04 JUN 18  PM 2:59

Richard J. Klein,

    Petitioner,

    vs.

Harold Carter, Warden,

    Respondent.

Case No. C-1-01-794

Judge Beckwith

M.J. Black

## PETITIONER'S MOTION FOR LEAVE FOR DISCOVERY AND EXPANSION OF THE RECORD, AND TO FILE APPENDIX OF EXHIBITS

Pursuant to Rules 6 and 7 of the Rules Governing 2254 Habeas Corpus Cases, Petitioner respectfully requests that specific documents from the State Court record be made part of the federal docket for review by the United States District Court. And, that specific documents be amended which are part of the record through Petitioner's filing of an appendex. Petitioner's exhibits were initially filed in (Doc. 1) but that petition has since been amended and now those exhibits do not carry over to the amended petition, and there are exhibits attached directly to Petitioner's habeas corpus petition which Petitioner obtained at the later date. Now, because Respondent failed to incorporate specific documents into Respondent's ARW procedural posture and its exhibits filed it has become necessary for Petitioner to submit an appendex, and, in addition, to obtain pertinent documents from Respondent to demonstrate that Petitioner's averments and claims are consistent with the record. Certain issues cannot be accurately determined without these documents. A list of documents sought to be discovered is included, and a list of documents to be amended in the federal docket have been included herein.

Respectfully submitted,

Richard J. Klein 350-022

Petitioner/pro se

R.C.I. P.O. Box 7010

Chilicothe, Ohio 45601

-1-

## LIST OF DOCUMENTS NEEDED FROM RESPONDENT

(1) Petitioner's "MOTION TO AMEND AND SUPPLEMENT COUNSEL'S APPEAL BRIEF" filed July 27, 1999;

(2) Affidavit from attorney Ann Fluhearty which was attached to Petitioner's "Motion for New Trial" filed May 27, 1997.

## LIST OF DOCUMENTS TO BE AMENDED IN THE FEDERAL DOCKET BY PETITIONER

(1) Petitioner's "MOTION TO REDUCE NUMBER OF COPIES" filed June 15, 2000;

(2) Petitioner's "APPLICATION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b) filed January 2, 2001 (showing ineffective assistance of appellate counsel);

(3) Petitioner's "MOTION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)" filed January 2, 2001, (establishing good cause for the delay in filing);

(4) Police Search Warrants and itemized seizure lists;

(5) Co-defendant Richmond's three (3) signed Miranda waivers.

(6) Petitioner requests to amend into an appendix some of the other documents initially filed with the first petition in Doc. 1 because Petitioner relies upon some of these exhibits in his habeas corpus petition and other pleadings.

(NOTICE: Petitioner was unable to supply a copy of the documents listed above that came into his possession at a later date, that are cited herein, that Petitioner is requesting to incorporate into an appendix. Therefore, the documents cited have been omitted until Petitioner receives this Court's permission to amend them into an appendix. Because copies of these documents are beyond Petitioner funds and only one copy can be afforded).

## BASIS FOR DISCOVERY AND EXPANSION OF THE RECORD REQUEST

First, Respondent's procedural posture is severally false and misleading which is evident to cause a prejudicial effect as fully set forth below. Respondent has failed to incorporate pertinent documents from the state court record which makes his procedural posture misleading because omission of these documents throws the entire chain (sequence) of procedures out of perspective.

Some of Respondent's deficiencies are: Respondent placed on the federal record exhibits to support a counter claim of procedural default. Specifically, Respondent's ARW Exhibit-36 is severally deficient. It is the evidence that Petitioner has relied upon to establish good cause, cause, and prejudice in the state courts. The "Respondent's Exhibit-36" which is (Petitioner's "MOTION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)" which establishes good cause for the delay) is deficient in several ways:

(1) First, it is completely missing Petitioner's exhibi-1 which demonstrates that appellate counsel and prison authorities deliberately obstructed Petitioner's attempts to comply with procedural rules;

(2) Part of Petitioner's Exhibit-2 is missing which demonstrates the appellate court's obstruction. It was either removed by Respondent or other government authorities;

(3) Petitioner's exhibit-4 of exhibit-2 is missing and has been altered by either Respondent or other government officials. This is evident because officials were the only ones who ever handled these documents and Respondent's Exhibit-36 does not match the document that Petitioner had filed then received a copy from the clerk of the Court of Appeals.

The following is a brief summary of other instances of misconduct and obstruction by government officials and the reasons for these document and necessity for them to be placed on the federal docket in conjunction with Petitioner's averments in his habeas corpus petition and Respondent's Answer/Return of writ.

### (1) PETITIONER'S MOTION TO AMEND AND SUPPLEMENT COUNSEL'S DEFICIENT APPEAL BRIEF

The first document that Respondent fails to incorporate into his answer/return of writ and provide as an exhibit, that, should be made part of the federal docket for review is Petitioner's "MOTION TO AMEND AND SUPPLEMENT APPELLATE COUNSEL'S DEFICIENT APPEAL BRIEF" filed July 27, 1999. Petitioner's attempts to regain possession of this document, after it was removed from Petitioner's possession by prison authorities, have been continuously and

repeatedly obstructed which is why Petitioner does not possess these document now. This document demonstrates that Petitioner was not at all satisfied with appellate counsel's performance, and that, Petitioner made specific requests that the Court either order counsel to amend his factually deficient appeal brief or appoint counsel to do it. Petitioner's motion to amend presented a detailed description of counsel's factual deficiencies. Counsel was arguing in behalf of the State. Petitioner demonstrated in the motion ineffective assistance of appellate counsel; Petitioner requestd competent replacement counsel; Petitioner requested time extensions. This motion in no way constituted a motion requesting for Petitioner to proceed pro se, in fact, Petitioner stated numerous times in the motion that he was forced to file the motion to amend, pro se, due to counsel's sever factual deficiencies. "Forced" is the key word in that statement. Petitioner had not desire, nor, should he have had to ever file a document pro se in the first instance. Petitioner's two other motions attests to the contents of this motion to amend because Petitioner refers to the requests and arguments advanced therein. First, Petitioner's "MOTION FOR LEAVE TO FILE LATE AMENDED AND SUPPLEMENTAL APPEAL BRIEF" filed September 21, 1999, and Petitioner's "MOTION FOR RECONSIDERATION FOR FILING LATE AMENDED AND SUPPLEMENTAL APPEAL BRIEF" filed October 19, 1999 which Respondent placed on the federal docket as (ARW Exhibits 17 and 20). The motion to amend was completely omitted by Respondent in his procedural posture as though it did not exist and as if it would have no effect on this Court's determination. Nevertheless, it demonstrates that the court of appeals violated Petitioner's Due Process, Equal Protection, and effective assistance of appellate counsel rights even at that early stage in the proceedings. Petitioner was denied an "adequate," "effective," and "meaningful" appeal on a first appeal of right due to the court's denial of Petitioner's requests. The only request that the court granted was the request that a supplemental brief be filed. This was an admission by the court that it agreed that counsel's performance was deficient because Petitioner advanced no other argument therein; therefore, the court had to have agreed to justify permitting this filing. Petitioner's motion for leave (ARW Exhibit-17) attests that Petitioner specifically requested 60 days to prepare the supplemental brief but was only provided 30 days which is far to short for someone in prison. The motion for leave and motion for reconsideration (ARW Exhibit-20) refers to the motion to amend and attests to the fact that Petitioner specifically requested that the court provide counsel to perfect

-4-

counsel's brief and to perfect the "rough drafts" of claims advanced as evidence attached to the motion to amend. The Court's failure to do so severally violated Petitioner's federally mandated Constitutional rights. Therefore, it is evident that the Motion to Amend Counsel's Deficient Appeal Brief is pertinent evidence that Petitioner was denied effective assistance of counsel and a full and fair opportunity to present his claims fairly, and, that, Petitioner was forced to proceed pro se against his will because of ineffective assistance of appellate counsel and the absence of appropriate judicial determinations. The references made to the motion to amend in the other motions attests to its contents.

Respondent further compounds the intended prejudicial effect from omitting this document from his procedural posture and the docket by failing to incorporate other pertinent documents filed by Petitioner seeking Constitutionally mandated judicial action. Respondent's failure to incorporate these document into the procedural posture in the order and sequence in which they occurred only serves to continue to cause a prejudicial effect.

## (2) AFFIDAVIT FROM ATTORNEY ANN FLUHEARTY

The second document needed to be incorporated into the federal docket that Respondent has omitted is the affidavit from co-defendant's attorney "Ann Fluhearty." The affidavit was presented to the trial court at Petitioner's Motion for New Trial hearing. (T.P. 774, 6-12 copy of transcript attached); therefore, the trial transcript attests to its existence and its contents, somewhat. The affidavit was "somewhat" misread into the record at the hearing which renders it a pertinent document necessary for review in these proceedings because Ms. Fluhearty swore under oath that there had been a non-disclosed plea agreement. Then she stated that it all came out at trial but the problem is the record is devoid of any such information. This is pertinent and credible evidence of the existence of the plea agreement even though what she states is in the record, in all actuality, is not in the record. This document is part of other evidence that supports two of Petitioner's claims, (1) the State's failure to disclose exculpatory evidence, and (2) ineffective assistance of counsel at that stage. Petitioner respectfully requests that this document be placed on the federal docket, as well as, served upon Petitioner to make accurate reference to. Respondent removed this exhibit from Petitioner's Motion for New Trial exhibits. The motion was not served upon Petitioner in a like manner to the

actual document. Nevertheless, the hearing transcript demonstrates that it was attached to Petitioner's Motion for New Trial; therefore, this is not a conclusary allegation. The document was removed form Petitioner's possession by prison authorities and Petitioner has been unavoidably prevented from recovering it. This constitutes and demonstrates obstruction by government officials. Nevertheless, Petitioner was aware of its existence and relies upon it in his petition. Additionally, Respondent has removed this document from the motion for new trial prior to serving it upon Petitioner. Again, Respondent has attempted to abridge and impair Petitioner ability to litigate and prove his claims.

### DOCUMENTS NEEDED TO BE AMENDED IN THE FEDERAL DOCKET BY PETITIONER

For ease and to simplify all reviews of claims, counter claims, and motions and to cause the averments advanced in Petitioner's habeas corpus petition to be consistent with the record, Petitioner needs the following documents amended in the federal docket and requests leave to file an appendix containing this evidence.

### (1) MOTION TO REDUCE NUMBER OF COPIES

On page 7 of Respondent's ARW, Respondent failed to provide as an exhibit and failed to incorporate into his procedural posture Petitioner's "MOTION TO REDUCE NUMBER OF COPIES" filed June 15, 2000, (Petitioner's Exhibit  attached). This document demonstrates Petitioner's repeated attempts to obtain adequate Constitutional judicial action by the State Courts. This document demonstrates that Petitioner was un-Constitutionally precluded from filing due to three objective factors external to Petitioner's control which obstructed Petitioner's ability to comply with procedural rules. (1) Interference by government officials which Petitioner objectively verifies with exhibits; (2) for being indigent, and (3) ineffective assistance of counsel.

Th Respondent's Exhibit 36 is insufficient because it has been disassembled. The document is missing Petitioner's exhibit-1, part of exhibit-2, and exhibit-3. This is not the way Petitioner placed it on record at the time of its filing and this is not its condition when Petitioner received the time stamped return copy. Therefore, it was placed on the record correctly and in tact. Dismembering the party opponent's evidence does not suffice to render the proceedings constitutionally adequate. Although, the MOTION TO REDUCE NUMBER OF COPIES was attached to Respondent's Exhibit 36, the exhibit was still dismembered.

Next, this document demonstrates that on May 18, 2000, Petitioner attempted

-6-

to file two documents, first, was a motion for leave showing good cause for the delayed filing of a motion App.R. 26(B) which was captioned "MOTION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)" (see Exhibit  attached) and begins "RICHARD J. Klein Defendant/Appellant pro se requests leave to file delayed reopening pursuant to Appeal Rule 26(B),..." which sets forth good cause for the delay in filing. The second document was captioned "APPLICATION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)" (see Exhibit  attached) which sets forth the claim of ineffective assistance pursuant to Rule 26(B). Petitioner attempted filing these documents on May 18, 2000. (note: the State docket sheet (ARW Exhibit 45) shows these two motions were filed at the same time at the latter date January 2, 2001) Respondent has failed to supply all three of these documents as exhibits which is necessary to establish pertinent facts in this case. Respondent treats two of these documents as though they do not exist, and as if they were not filed together. Respondent completely omitts Petitioner's MOTION TO REDUCE NUMBER OF COPIES, as well as, Petitioner's APPLICATION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b).

Exhibit-1 attached to the "MOTION TO REDUCE NUMBER OF COPIES" contains certified mailing receipts to the clerk of court on May 18, 2000, which proves that Petitioner attempted to make this filing at that time. The clerk's return letter (exhibit 3) is dated May 19, 2000, which also attests to the date of attempted filing.

Exhibit-2 is petitioner's letter to the clerk of courts requesting copies to be made of the two (2) motions pursuant to 26(B) and its exhibits because of indigency status, and pursuant to Cri.R. 32 which provides for copies of documents for indigent appellant's. Exhibit-2 also contains an affidavit of indigency, and exhibit-4 was a state docket sheet, the first line of which establishes that a "poverty affidavit" had been placed on record therefore indigency had already been established by the court.

Exhibit-3 is the clerk's letter denying the filing of the motion 26(B) and its exhibits based on indigency because Petitioner could not afford copies of the documents necessary for filing. This letter proves the date in which the clerk of court received the attempted filing, and the unconstitutional reason the clerk refused to file the motions. Petitioner had already demonstrated to the clerk and court that he was to indigent to be able to afford copies of all the necessary documents and postage. Postage alone was almost beyond Petitioner's reach. Nevertheless, the clerk's own docket sheet demonstrated that

-7-

indigency status had already been established with the court, and, additionally, Petitioner possessed the constitutional right to have supplied "copies of documents necessary to an appeal" Crim.R. 32 and, Griffin v. Illinois,.... The denial of which is the decimal equivalent to denial of a transcript because it was impossible for Petitioner to establish ineffective assistance of appellate counsel without the necessary copies for filing. As the Court in White v. Schotten, 201 F.3d 743, 745 (N.D.Oh. 6th Cir.) determined "Because an application for reopening the direct appeal in Ohio is part of the direct appeal process, and because a defendant has a right to effective assistance of counsel during that stage of proceedings..." and "Those whose right to appeal has been frustrated ... should not be given an additional hurdle to clear just because their rights were violated at some earlier stage of the proceeding." White, at 752. Therefore, since, an application for reopening is part of the direct appeal process, Crim.R. 32's provisions for copies of documents necessary to an appeal are mandated because Petitioner's rights were frustrated by ineffective assistance of appellate counsel. Thus, Petitioner was entitled to copies of documents necessary to pursue a motion App.R. 26(B) to demonstrate counsel's deficiencies and prejudice caused which Petitioner had already pointed out to the appellate court in his earlier Motion to Amend. The appellate court's failure to either order provisions for copies to be made, order counsel to amend his deficient brief to make it conform to the facts and evidence of record, or appoint an attorney who would violated Petitioner's Constitutional rights to effective assistance of appellate counsel and to an "effective, adequate, and meaningful" appeal as of right.

The clerk's office regularly provides documents for any other prisoner who files an affidavit of indigency in any type of forum and venue. Petitioner possessed the right to demonstrate ineffective assistance of counsel and good cause for the delayed motion 26(B) even if to indigent to be able to afford copies and postage at the same time. Since, a motion 26(B) is part of the "direct appeal process" it is indisputable that Due Process principles apply as required by the Griffin Court and Crim.R. 32. The Clerk's refusal to file Petitioner's motion 26(B) was an objective factor external to Petitioner's control which is one of many similar circumstances that has risen in this case due to the extreme prejudice generated from the excessive publicity. Nevertheless, it is not within the clerk's discretion to refuse for filing any documents on the basis of indigency especially during direct review when Petitioner's right to effective assistance of counsel had been frustrated on an

appeal as of right. The appellate court further compounded the prejudicial effect by its failure to either order the clerk to make the copies or reduce the number of copies necessary for this filing. Petitioner was entitled to prove his case because Petitioner is entitled to a Constitutionally fair, "adequate," and "meaningful" appeal which Due Process requires. Most importantly, Respondent's failure to incorporate Petitioner's "Motion to Reduce Number of Copies" into his procedural posture is prejudicial because the evidence in the motion establishes objective factors beyond Petitioner's control which prevented Petitioner from complying with the procedural rules which serve as cause and prejudice. Petitioner was prejudiced by the clerk's underhanded means of denying Petitioner review of his constitutional claims because it unavoidably prevented Petitioner from timely filing of his motion 26(B), and because it took all of the time up until Petitioner actually was able to afford to make the filing to file it. It could not have been filed at an earlier date. This is evident because Petitioner has been continuously filing documents with the State Court system attempting to obtain his Constitutional protections which the State Court's have continuously been violating to secure what they know is an unlawful and un-Constitutional conviction of what they admitted is an innocent individual. (this is in the transcripts). The appellate court, by denying Petitioner copies necessary to an appeal has also abridge and impaired Petitioner's ability to pursue habeas relief; therefore, denying Due Process again as the United States Supreme Court pointed out in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491 (1977), "Prisoners have a constitutional right to access to the courts, First and Fourteenth Amendments." at 1493. ""Constitutional principles of due process and equal protection from the basis for the requirement that states expand resources in support of a convicted defendant's right to appeal." at 1501. "It is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." at 1502. The Supreme Court held that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." at 1495. "Because, we recognize that 'adequate and effective appellate review' is impossible without a trial transcript or adequate substitute, we held that states must provide trial RECORDS to inmates unable to buy them." at 1495. Most importantly, these documents are being withheld by the state's official, Respondent, which is an attempt to deny Petitioner Due Process of and Equal Protection of the law because it "abridges and impairs" Petitioner's ability to obtain an adequate and

meaningful review that has been being denied by the State's authorities ever
since the onset of this case. Bounds establishes that this invokes the Due
Process analysis because abridging and impairing a petitioner's access by
failure to provide pertinent documents violates Due Process in and of itself.
Nevertheless, the clerk of court also denied what Bounds established as Due
Process by denying access to that court at that time. Making an indigent
appellant's copies is not a "discretionary function" that the clerk is permitted
to pick and choose who they will supply copies for and who they won't. And,
Respondent's deliberate bypass of these documents demonstrates his desire to
mislead this Court and abridge and impair Petitioner's ability to fully assert
his claims fairly. Respondent's presentation in his procedural posture is
severely misleading because it falsely implies that Petitioner failed to even
pursue the claim in a motion 26(B), and it omitted the clear fact that
Petitioner pursued this filing to the best of his ability as soon as it was
permissible to do so, thus, it has created needless litigation. Additionally,
there were factors consistent with institutional affairs which are not
objectively verifiable but do exist in the prisons in which Petitioner was being
held which added to the confusion and obfuscated Petitioner's attempts to file
any earlier.

   (2) PETITIONER'S APPLICATION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)
(which is the motion establishing ineffective assistance of appellate counsel)
(see Exhibit    attached).

   Respondent omitted this document entirely from Respondent's ARW procedural
posture and exhibits. This document is evidence that Petitioner attempted to
give the state court of appeals full and fair opportunity to rule on the merits
of Petitioner's ineffective assistance of counsel claim for the third time.
First, in Petitioner's motion to amend and supplement counsel's brief, second,
in Petitioner's attempted May 18, 2000, filing and again in this document. The
State court simply evaded supplying Petitioner with effective assistance of
appellate counsel. Had the state court supplied Petitioner with effective
assistance of appellate counsel in the first instance no further litigation
would have been necessary. Respondent treats this document as non-existent.

   On January 2, 2001, Petitioner place of record two motions and an appeal
brief as required by App.R. 26.(B). First was "MOTION FOR DELAYED REOPENING
APPEAL RULE 26(B)(2)(b)" which was a motion for leave showing good cause for
late filing, and, second, this "APPLICATION FOR DELAYED REOPENING APPEAL RULE

-10-

26(B)(2)(b)" which is based upon ineffective assistance of appellate counsel. These were the documents in which Petitioner attempted to file earlier on May 18, 2000, but due to indigency and other obstructive forces, as stated above and below, Petitioner was unavoidably prevented from any earlier filing. Respondent treats one of these two documents as non-existent and the other is missing exhibits, as stated above and below, when Respondent served it upon Petitioner as Respondent's ARW Exhibit 36.

Respondent failed to provide for this Court a copy of "APPLICATION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)" which asserts a claim of ineffective assistance of appellate counsel in addition to the facts presented to the appellate court in Petitioner's Motion to Amend and Supplement Appellate Counsel's Deficient Appeal Brief filed July 27, 1999. This document demonstrates that Petitioner repeatedly provided the State Court of Appeals with adequate reasons and evidence to establish ineffective assistance of appellate counsel and attempted to thoroughly pursue this claim as adequately as humanly possible from a prison cell without any legal assistance at all due to the sever prejudice caused by the nature of the case.

###### (3) MOTION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)

(which is the motion for leave showing good cause for the delay filed with Petitioner's Application for Delayed Reopening Appeal Rule 26(B)(2)(b))(see Exhibit    attached).

Respondent served upon Petitioner, as Exhibit 36, a dismembered copy of this document which is intentional obstruction of Petitioner's right to an effective, adequate, and meaningful review of Petitioner's claims.

(1) This motion demonstrates that Petitioner was not properly notified of the appellate court's December 3, 1999, judgment affirming conviction until February 27, 2000. By this time the time for appeal to the Ohio Supreme Court and time to pursue a motion 26(B) had already expired. Petitioner objectively verified this in this motion.

First, Petitioner was totally unaware that there had been a judgment entered in this case. This is evident because on January 11, 2000, Petitioner attempted to file an appeal brief (ARW Exhibit 23), pursuant to Rule 14 of the Ohio Rules of Appellate Procedure which provided at that time, that, the court of appeals may permit any papers to be filed any time outside of the rule. This demonstrates that Petitioner was obviously not aware that there had been a judgment entered by the court of appeals. Even the Appellate Court's entry

-11-

striking the brief (ARW Exhibit 24) did not alert Petitioner that there had been a judgment entered at an earlier date. The Court's vague statement was misunderstood as a refusal to review the brief on that appeal not that that there was a judgment entry denying the appeal already entered.

(4) In Respondent's ARW Exhibit-36, Petitioner's Exhibit-1 in the Motion 26(B) (motion for leave) is missing and not in the form that Petitioner filed it. This makes Respondent's presentation of evidence misleading.

Petitioner's Exhibit-1 in the motion contained appellate counsel's post-marked envelope sent by certified mail which establishes that counsel did not even mail it until January 14, 2000, which was 40 days after entry of judgment, but the forwarding post-mark demonstrates that Petitioner did not receive this notice of judgment until the middle of February because counsel defiantly sent it to the Southern Ohio Correctional Facility when he was fully aware that Petitioner had been transferred to Lebanon Correctional Inst. Lebanon Correctional's "legal mail ledger" is devoid of any legal mail being received by Petitioner during the entire month of December. Nevertheless, counsel's certified mailing envelope which was exhibit 1, (2 pgs attached to Petitioner's Motion for Delayed Reopening Appeal Rule 26(B)(2)(b)) possesses the Lucasville "forwarding" post-mark which demonstrates a significant additional delay caused by the forwarding process. The envelope's post-mark demonstrates that counsel failed to even send this document until the middle of January. By the time Petitioner received notice of the judgment entry all of the time had elapsed for appeal to the Ohio Supreme Court and to pursue a motion 26(B) application. Petitioner placed the original on record with the clerk of court of appeals of Hamilton County in filing this motion. Petitioner attempted this filing on May 18, 2000, but it was refused by the clerk of court as stated above. Although Petitioner is unable to access Lebanon Corr.'s legal mail ledger, this information was and is "objectively verifiable" through that institutions legal mail ledger (that Petitioner did not receive any legal mail from counsel during December and until late February of that year). Respondent's ARW Exhibit-36 does not contain Petitioner's exhibit-1. It was removed prior to service. Removing this evidence is prejudicial to Petitioner's case. The fact that this post-marked certified mail envelope was placed on record with the court of appeals in Petitioner's motion for Delayed Reopening as exhibit-1 is objectively verifiable because the original is part of the state courts record. (see state's

-12-

docket sheet ARW Exhibit 45 for motion for delayed reopening  App.R.
26(B)(2)(b)). Counsel's failure to properly inform Petitioner of the Court's
entry is further evidence of ineffective assistance of appellate counsel.
Petitioner was again prejudiced by counsel's deficient performance because it
obstructed Petitioner's ability to timely proceed to the Ohio Supreme Court and
to timely file a motion under App.R. 26(B). And Respondent's failure to provide
the court with accurate documentation is evidence of Respondent's desire to
cause prejudice in this case.

(3)  In Exhibit-2 of Petitioner's motion for delayed reopening, Petitioner
provides for the appeals court as evidence of Petitioner's attempts to secure
earlier filing, a copy of Petitioner's MOTION TO REDUCE NUMBER OF COPIES and its
exhibits. This demonstrates that objective factors beyond Petitioner's control
unavoidably prevented Petitioner from earlier filing. Most importantly,
Respondent's ARW Exhibit-36 was deficient because Respondent removed and
switched part of exhibit-2's contents which was exhibit-4 (docket sheet, the
first line of which shows that Petitioner's indigency status had already been
established with the court of appeals in this case). The docket sheet now in its
place does not match Petitioner's averment in his motion, nor Petitioner's copy
received from the court of appeals.

(4)  Respondent treats these documents as unnecessary by not supplying them
in Respondent's ARW exhibits which separates them and confuses the issues. Now,
it is evident that Respondent is attempting to obstruct Petitioner's ability to
obtain review by either supplying incomplete copies or altering the evidence
contained in Respondent's (ARW Exhibit 36). This demonstrates Respondents desire
to prevent Petitioner from receiving an adequate and meaningful review of his
habeas corpus petition. Exhibit-4 was either altered by Respondent or some other
government official since they are the only individuals who ever handled this
document. It stands to reason that Petitioner would not have argued in the
motion that the docket sheet presented as exhibit-4 demonstrates that
Petitioner's indigency status had already been established with the court and he
is entitled to have copies made if the docket sheet did not possess that very
proof. The only logical conclusion is that the state's authorities altered this
evidence at some point in time. Petitioner's copy possesses that docket sheet
showing indigency. This is further evidence of government officials attempts to
obstruct Petitioner's attempts to litigate this case.

-13-

## POLICE SEARCH WARRANTS AND ITEMIZED SEIZURE LISTS

Petitioner would like to include into the appendex copies of police search warrants and their seizure of property lists which were stated in the trial transcripts therefore can be used in these proceedings. These documents prove four of Petitioner's claims, first, that, State's witnesses, the detectives, fabricated lies concerning the origin of the alleged apology "note" then lied to the court at the suppression hearing, second, that, State's witness Richmond conspired with detectives and police to present the fabricated lie to the jury on the witness stand at trial, third, it supports Petitioner's claim of ineffective assistance of trial counsel, and, fourth, supports Petitioner's claim of ineffective assistance of appellate counsel.

The search warrants contain valuable information concerning the origin of the alleged "note." The false testimony was prejudicial because it was false, the "note" was presented as an apology for the injury, but the police search warrants demonstrate this to be a false fabrication. Detectives presented at Petitioner's suppression hearing, that, Sharon Richmond allegedly retrieved the alleged apology "note" from the mail box at Petitioner's residence on the evening of January 2, 1997, and that, Petitioner had written it and left it in the mail box for her to find regarding the injury. Then Richmond allegedly gave the alleged apology "note" to detectives during the course of their investigation, but this was false; the detectives knew this was false; the Prosecutors knew this was false; Richmond knew this was false; the trial attorney knew this was false, prejudicial, and counsel failed to object, challenge, cross examine, or present any evidence whatsoever that this was a fabricated lie that they were presenting to the jury; and the appellate attorney knew this was false and extremely prejudicial but failed to even touch lightly the falsity on Petitioner's appeal. They all knew this was a fabricated lie because they all possessed copies of the search warrants and itemized seizure lists. These documents demonstrate repeatedly that this "note" was found in the "kitchen trash" in the residence three days later by detectives executing a search warrant. By being in the kitchen trash it is evident that (1) Richmond did not find it in the mail box; (2) Richmond did not "turn it over to detectives"; (3) it had to have been written and placed in the trash at an earlier date which is a fact. In fact, it was written several days before the incident; (4) that trial counsel was aware of these documents; (5) detectives knew that what they wrote into their documents; and (6) Prosecutors were also

-14-

aware of the falsity because they too possessed copies of the search warrants before and during the trial.

Presentation of this letter at trial was extremely prejudicial because it implies that Petitioner was apologizing for causing the injury.

In addition, detectives wrote on the note "1/8/97 – 297 Kitchen-Trash." (Exhibit    ). Therefore, the note was, in fact, found in the kitchen trash by detectives several days later. Therefore, the presentation of the letter was false and prejudicial because it was presented as an apology from Petitioner to Richmond for causing the injury and that's not even close to the truth. The "note" is devoid of any reference to this incident at all, and Richmond did not read the note accurately into the record but was permitted to fabricate even more testimony without objection by trial counsel. Nevertheless, the prosecutors knew that this was false testimony that they were feeding to the jury through Richmond's testimony but they failed to correct it, and the only thing connecting the "note" to the injury was detectives and Richmond's fabrication. Detectives knew Petitioner had left for work at 6:00 am on the morning of January 2, 1997, and went straight to the hospital from work after Richmond paged Petitioner at work. Petitioner had no opportunity to write or leave this note in the mail box because it was obviously not found by Richmond in the mail box, it was found by detectives in the kitchen trash either on January 3, 1997, or on January 8, 1997, during their search of the residence as the detectives own document clearly establishes. Most importantly, the presentation of evidence and testimony known by the State to be false violates Due Process if the jury could have relied upon it in their determination. It is indisputable that the jury relied on the presentation of the note. It was the only incriminating evidence presented to the jury for them to hang their hat upon, but it is severely Constitutionally tainted to the degree of non-existence therefore it cannot be relied upon to sustain the conviction. Because of the extreme prejudicial effect of the fabrication, and because of these documents credibility and reliability from being police records and the magnitude of the Constitutional violation that occurred, Petitioner respectfully requests to amend these documents into an appendix.

## RICHMOND'S THREE (3) MIRANDA WAIVERS

These documents demonstrate the probative value of Richmond's repeated tape recorded confessions to police as being solely responsible for the injury.

That, Richmond was in custody, willingly waived her Miranda rights three (3) times, and gave numerous repeated confessions even several tape recorded confessions during police investigation which lasted about 12 hours. That police and the State never possessed any evidence with a higher probative value. These documents attest to the reliability and trustworthyness of Richmond's repeated confessions. And, Petitioner relies upon these in several of his claims in his petition.

Petitioner respectfully requests that true and accurate copies of the forgoing documents be made part of the federal record for review by this court in conjunction with review of Petitioner's habeas corpus petition and Respondent's ARW. And, that Petitioner receives a copy of his Motion to Amend and Supplement Counsel's brief so that he possesses a true copy to present citations to, and a copy of Ann Fluhearty's affidavit. (Note: Petitioner is pursuing amending petition and further requests to submit an appendix incorporating some documents in his possession that Respondent has not already supplied and striking previously filed exhibits referred to in the habeas corpus petition to prevent any confusion and to make the petition conform to the record, and some of Respondent's averments).

Respectfully submitted,

_Richard J. Klein_

Richard J. Klein 350-022

Petitioner/pro se

R.C.I. P.O. Box 7010

Chillicothe, Ohio 45601

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document has been served upon counsel for Respondent Assistant Ohio Attorney General Diane Malory at 150 East Bay Street, Columbus Ohio 43215 on this 14th day of June, 2004.

Richard J. Klein

_Richard J. Klein_

-16-