Originals

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RICHARD J. KLEIN,

    Petitioner,

        vs.

HEROLD CARTER, WARDEN,

    RESPONDENT.

Case No. C-1-01-794

JUDGE BECKWITH

M. JUDGE BLACK

---

## PETITIONER'S EXHIBITS A THROUGH Q
### Fourth petition, third amendment

---

Respectfully submitted,

Richard J. Klein 350-022

Petitioner/pro se

R.C.I. P.O. Box 7010

Chillicothe, Ohio 45601


COUNSEL FOR RESPONDENT,

Assistant Ohio

Attorney General

Diane Mallory

150 East Gay Street

Columbus, Ohio 43215

## INDEX OF PETITIONER'S EXHIBITS A THROUGH P
(cited as "P. Exhibit" herein; Respondent's exhibits cited as "R. Exhibit")

**EXHIBIT A** PETITIONER'S PRO SE "MOTION TO FILE AMENDED, AND SUPPLEMENTAL BRIEF AND EXTENSION OF FILING DATE" filed July 27, 1999, App. Case No. C-990066. 45 pages.

**EXHIBIT B** "ENTRY GRANTING MOTION TO FILE SUPPLEMENTAL BRIEF AND EXTENDING TIME" entered August 13, 1999, App. Case No. C-990066.

**EXHIBIT C** "ENTRY GRANTING JOINT MOTION TO EXCEED THE PAGE LIMIT" entered August 5, 1999, App. Case No. C-990066.

**EXHIBIT D** PETITIONER'S PRO SE "MOTION TO REDUCE NUMBER OF COPIES" 13 pages, entered June 15, 2000, App. Case No. C-990066. 13 pages.

**EXHIBIT E** "ENTRY OVERRULING MOTION TO REDUCE NUMBER OF COPIES" entered June 6, 2000, App. Case No. C-990066. 1 page.

**EXHIBIT F** PETITIONER'S PRO SE "MOTION FOR DELAYED REPOENING APPEAL RULE 26(B)(2)(b)" (motion for leave showing good cause) 21 pages, and "APPLICATION FOR DELAYED REOPENING APPEAL RULE 26(B)(2)(b)" (demonstrating ineffective assistance of appellate counsel) 12 pages, filed January 2, 2001, App. Case No. C-990066. 33 pages.

**EXHIBIT G** CO-DEFENDANT RICHMOND'S FIRST MIRANDA WAIVER (1447 hours) pg. 1;
CO-DEFENDANT RICHMOND'S SECOND MIRANDA WAIVER (1915 hours) pg. 2;
CO-DEFENDANT RICHMOND'S THIRD MIRANDA WAIVER (2127 hours) pg. 3.

**EXHIBIT H** EXPERT WITNESSE'S BURN CHART.

**EXHIBIT I** January 3, 1997, Search Warrant and Police Inventory List pages 1 & 2;
January 8, 1997, Search Warrant & Poice Inventory List pages 3 & 4;
Alleged Apology Note page 5.

**EXHIBIT J** PETITIONER'S MIRANDA WAIVER.

**EXHIBIT K** Police Notes of Petitioner's Interrogation page 1 & 2.

**EXHIBIT L** PETITIONER'S PRO SE "NOTICE OF APPEAL TO THE OHIO SUPREME COURT" filed November 20, 2000. 2 pages.

**EXHIBIT M** Letter from the Clerk of Court of The Ohio Supreme Court.

**EXHIBIT N** PETITIONER'S PRO SE "APPELLANT'S MOTION TO OVERRULE APPELLEE'S MOTION TO STRIKE BRIEF" filed February 1, 2001. Case No. 00-2105. 5 pages.

**EXHIBIT O** PETITIONER'S PRO SE "APPELLANT'S MOTION FOR DELAYED RECONSIDERATION" 5 pages. filed May 4, 2001, Case No. 00-2105.

**EXHIBIT P** "APPELLEE'S MOTION FOR EXTENSION OF TIME" filed February 8, 2001, Case No. 00-2105. 5 pages.

**EXHIBIT Q** "STATE'S RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL" **file**d July 14, 1997. 5 pages.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served upon counsel for respondent Assistant Ohio Attorney General Diane Mallory at 150 East Gay Street Columbus, Ohio by regular first class mail on this 15th day of July, 2004.

Repectfuly submitted,

Richard J. Klein 350-022

Petitioner/pro se

R.C.I. P.O. Box 7010

Chillicothe, Ohio 45601

Original

3

**COURT OF APPEALS**
**FIRST APPELLATE DISTRICT**
<u>**HAMILTON COUNTY, OHIO**</u>

FILED
COURT OF APPEALS

JUL 2 7 1999

JAMES CISSELL
CLERK OF COURTS
HAMILTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | APPEAL NO. C-990066 |
| | : | TRIAL NO. B-9700308 |
| Plaintiff-Appellee, | : | |
| | : | |
| VS. | : | MOTION TO FILE AMENDED, AND |
| | : | SUPPLEMENTAL BRIEF, AND |
| RICHARD J. KLEIN, 350-022, | : | <u>EXTENSION OF FILING DEADLINE</u> |
| | : | |
| Defendant-Appellant. | : | |

Now comes the Defendant/Appellant Richard J. Klein pro-se, and moves this court to allow him to file an amended and supplemental brief. Defendant/Appellant is serving a 31 year sentence, And due to the serious nature of the charges and the first appeal being dismissed due to trial courts failure to file a valid judgement entry causing this dismissal. Defendant/Appellant respectfully requests an order granting time to file an amended and supplemental brief to fulfill the prerequisite of exhaustion for future proceedings.

This is more fully set forth in the memorandum and evidence attached.

Respectfully Submitted,

Richard J. Klein 350-022

Richard J. Klein 350-022

S.O.C.F. P.O. BOX 45699

LUCASVILLE, OHIO 45699

**P. EXHIBIT A**

1

## MEMORANDUM

First, in counsels second and final letter to Defendant/Appellant he stated that he was "awaiting a Scheduling Order from the Clerk of Courts," (Exhibit 1, attached). This letter was a response to Defendant/Appellants letter of February 2, 1999, in which the filing dates were requested. This was the last letter received from Appellate counsel, institutional (S.O.C.F.) legal mail records are devoid of any correspondence from counsel Bernard Mundy. On May 14, 1999, Defendant/Appellant sent a letter to counsel again requesting filing dates, (exhibit 2). Institutional legal mail records are devoid of any response from counsel, with his last correspondence being March 4, 1999. On June 2, 1999, Defendant/Appellant wrote a letter to the Hamilton County, Clerk of Court requesting a copy of Scheduling order, (exhibit 3). The Clerk of Court responded with a copy of the Scheduling Order, notice of appeal, and a motion for extension of time for filing brief that counsel had filed unknown to the Defendant/Appellant, (exhibit 4). Counsel has not communicated with Defendant/Appellant and was not able to aid counsel in facts of the case. Defendant/Appellant has the right to know what is transpiring with his case, especially when there is a 31 year sentence involved and numerous errors and Constitutional violations involved. Defendant/Appellant also has the right to effective counsel.

Appellate/counsel has omitted pertinent assignments of error in the June 14, 1999, Appeal Brief. To fulfill the prerequisite of exhaustion for future proceedings these issues and arguments must be included in this appeal. In exhibit 5 are a few of the "rough drafts of these omitted assignments of error, (exhibit 5).



In Appellate counsels Brief filed June 14, 1999, he has misstated facts that do not appear on record and stated facts incorrectly, (exhibit 6). For example, June 26, 1997, was the sentencing hearing date, not June 28, 1999, as stated by counsel in, (exhibit 6, pg.6 paragraph 2). The record shows June 24, 1997, was the date of filing motion for new-trial not July 25, 1997, as stated by counsel, (exhibit 6, pg. 6, paragraph 2). A timely notice of appeal was filed September 12, 1997, and a notice of appeal was filed again January 25, 1999, (exhibit 4, pg.2), not February 16, 1999, as stated by counsel in, (exhibit 6, pg.6, paragraph 2). Also, appellate counsel is citing transcript pages from opening argument. Opening argument is not evidence, (exhibit 6, pg.7). Appellate counsel failed to cite (T.P. 13, lines 9-22) is where the evidence of this deal really is, (exhibit 6, pg.7 paragraph 3-4). September 9, 1997, was not the date on which the trial court placed of record its entry over-ruling appellants new trial motion. This was the date of the hearing. September 10, 1997, was the filing entry date, (exhibit 6, pg. 7, paragraph 3). Then in Counsels first assignment of error he cites State v. Cotton, which has nothing to do with disclosure, "Brady" material, (exhibit 6, pg.7 argument). Then, counsel stated in brief that it was Defendant/Appellant that received a plea agreement instead of co-defendant Sharon Richmond, (exhibit 6, pg. 8, paragraph 3). At paragraph 3, line 3, pg. 8 of brief, counsel miss-cites where the court made this statement about semantics. It was not at 378, lines 2-20, it is at, (T.P. 797, lines 1-25). then, he fails to cite the facts where this conclusion was based, where the evidence was

found, (T.P. 750, lines 1-25; T.P. 751, lines 1-25; T.P. 752, lines 1-25; T.P. 753, lines 1-25). This is the evidence and it must be cited, (T.P. 752, lines 20-23; T.P. 753, lines 1-17), how could it not be cited? Counsel failed to cite that the expert witness Dr. Glen Warden testified that Matthew Richmond died of "shock lung" from Sharon Richmond's delay in seeking medical treatment. This testimony is extremely material to this argument, and should have been cited on pg. 10, paragraph 4, on brief along with Prosecuting attorney Joe Detere's contrary statement that the delay in treatment had nothing to do with the death, (T.P. 15, lines 18-25). Dr. Wardens testimony on this can be found at, (T.P. 575, lines 15-20; T.P. 577, lines 11-25; T.P. 578, lines 1-25; T.P. 579, lines 12-16; T.P. 582, lines 11-14; T.P. 583, lines 22-25; T.P. 584, lines 1-8). Counsel has so far failed to act as counsel guaranteed by the Sixth Amendment. Now, before any more damaging prejudice occurs in this case, Defendant/Appellant respectfully requests an order granting time to file an Amended and Supplemental brief. As stated, this appeal was first dismissed on December 4, 1998, due to trial courts failure to file a final judgement entry, and counsels failure to obtain a copy of a final judgement entry to attach as required by Rule. It is Obvious at this point in counsels brief that he has not read the transcript at all, and therefore, Defendant/Appellant is being denied Due Process of law, and counsel guaranteed by the Sixth Amendment. For these reasons the Defendant/Appellant respectfully requests that this Court order permission for the filing of an amended and supplemental brief to fulfill the prerequisite of exhaustion on the

pg. 3

issues in exhibit No. 5, and to correct the errors in facts in the existing brief filed with this court on June 14, 1999.

The Defendant/Appellant further requests this Court to appoint compentint counsel conforming to the Sixth Amendment.

Respectfully Submitted,

Richard J. Klein, pro-se

350-022

S.O.C.F. P.O. BOX, 45699

LUCASVILLE, OHIO 45699

The undersigned hereby certifies that a true and accurate copy of the forgoing document has been served upon the Hamilton County Prosecutor's office, by certified mail through the Hamilton County Clerk of Court, Hamilton County Court House, 1000 Main Street Cincinnati, Ohio 45202, on this 12th day of July, 1999.

Richard J. Klein, 350-022.

pg. 4

## EXHIBIT NO. 1

THE ONLY LETTERS DEFENDANT/APPELLANT RECEIVED FROM COUNSEL

# R. BERNARD MUNDY

*Attorney At Law*

**2761 Madison Road, Suite 1**
**Cincinnati, Ohio  45209**
**(513) 841-9288**

March 4, 1999

Mr. Richard Klien, Jr.
350-022
SOCF P.O. Box 45699
Lucasville, Ohio  45699

     RE:   Your correspondence of 2/23/99

Dear Mr. Klien:

     Please be advised that any information disseminated in connection with your pending appeal will be provided to you within a reasonable time.  On occasion, your father has inquired about my opinion of the case.  However, I prefer to share any opinion formed with you directly, via correspondence.  Currently, I have not completed a comprehensive review of the record.  Consequently, it would be premature to offer my opinion.

     Additionally, the brief I intend to file will be completed according to my case load and on going trial docket.  Currently, I am awaiting the Scheduling Order from the Clerk of the Court of Appeals reflecting the deadline to file said brief.  Accordingly, you and I should wait to see what amount of time will be provided by the Court to file the brief before deciding to file a Motion to Extend Time to file the brief.

     Finally, once I conclude a thorough review of the record, I will share my thoughts with you in writing.  Should you require additional information, please do not hesitate to write.

Respectfully,

R.  Bernard Mundy

exhibit No. 1

# R. BERNARD MUNDY

*Attorney At Law*

## 2761 Madison Road, Suite 1
## Cincinnati, Ohio  45209
## (513) 841-9288

January 28, 1999

Mr. Richard Klein, Jr.
No. 350-022 CRC
P.O. Box 300
Orient, Ohio  43146

   RE: **State of Ohio v. Richard Klein, Jr.**
      **Case No(s): C990066, C970788, B9700308**

Dear Mr. Klien:

  By way of introduction, I am Attorney R. Bernard Mundy, appointed by Judge Niehaus to assist you with your post conviction relief issues in the above referenced matter.  Enclosed please find my business card for your records.  Please be advised, due to fiscal concerns, I am unable to accept collect calls from penal facilities.  Accordingly, the most expeditious way to correspond with me is through a family member or in writing.

  Additionally, enclosed please find a photocopy of the Notice of Appeal filed on your behalf.  Currently, I am in the process of reviewing the record in your case.  My reading of the Court's decision in appeal No. C970788, is that the Court decided it lacked jurisdiction because the appeal was not taken from a final appealable order.  Further, my discussion with your former counsel, Mr. Lawson and Judge Niehaus gave me the impression you prefer to draft your own brief.  If so, please advise me in writing.  In such a situation, my practice is to prepare a brief and append your brief, thereto upon filing same.

  Under the circumstances, I hope this letter finds you as well as may be expected. Should you have questions, concerns or comments, please write.

        Respectfully,

        R. Bernard Mundy

Enclosure

exhibit No. 1



A9

## EXHIBIT NO. 2

THE FINAL LETTER, OF MANY, FROM DEFENDANT/APPELLANT REQUESTING
DEADLINE DATES FOR THE FILING OF THE BRIEF



Dear Mr. Mundy                                      May 14, 1999.

     I am writing you in regards to the date of deadline for filing the appeal brief. Have you received a Scheduling Order from the Clerk of the Court of Appeals? Also, have you had opportunity to review the transcript of the trial? If not this is fine. The reason that I have become concerned at this time is that the institutional file/record has changed, I received an institutional update that did not reflect the Judgement entry from the trial court. They informed me that a change in institutional records would only occur by an order of a court. The institution double checked for clerical errors, they would not inform me of an action of a judgement entry. The update of the change was this. I was convicted of five counts, four of which were ran consecutive, count five ran concurrent. The record here has changed from this. Now it reads that count five is no longer existent. This change could have only occurred by an order of a court. What court filed a judgement entry to this affect?

     In addition, If it will help you in the research and construction of the Appeal Brief, I will send you a summery based on testimony and evidence in the transcript, citing T.P. pages and lines. Since I know my case better than anyone, and if it will be of any aid to you then I will send you a copy.

                                   Sincerely,
                                   Richard KLein 350-022
                                   S.O.C.F. P.O. BOX 45699,
                                   Lucasville, Ohio 45699.

exhibit No. 2

## EXHIBIT NO. 3

LETTER TO THE CLERK OF COURT, FROM DEFENDANT/APPELLANT, REQUESTING
SCHEDULING ORDER FOR THE DEADLINE FOR FILING THE BRIEF

A 12                                                                        14

*RICHARD J. KLEIN 350-022*
*S.O.C.F P.O. BOX 45699*
*LUCASVILLE, OHIO 45699*

CLERK OF COURTS                        JUNE 2, 1999.
FIRST DISTRICT COURT OF APPEALS
HAMILTON COUNTY
1000 MAIN ST.
CINCINNATI, OHIO 45202

Dear Clerk of Courts,

    Please send me a copy of the Scheduling Order of the deadline for the filing of appeal brief on case, APPEAL NO. C-990066, TRIAL NO. B-97-00308. A notice of appeal was filed January 25, 1999, as of date I have not received a Scheduling order for the filing of the brief. Your timely response will be greatly appreciated, Thank You.

                Respectfully
                Richard Klein, 350-022
                S.O.C.F P.O. BOX 45699
                Lucasville, Ohio 45699

*Richard Klein 350-022*

*4-6-99  #23*
*3-17-99  #26*

**exhibit No. 3**

## **EXHIBIT NO. 4**

RESPONSE FROM THE CLERK OF COURT, TO LETTER FROM
DEFENDANT/APPELLANT REQUESTING SCHEDULING ORDER
CONTAINING, SCHEDULING ORDER, NOTICE OF APPEAL, MOTION FOR EXTENDED
TIME FOR FILING BRIEF, FILED BY COUNSEL, WHICH WAS UNKNOWN TO
DEFENDANT/APPELLANT

# COURT OF APPEALS

Judges:
Rupert A. Doan
Lee H. Hildebrandt, Jr.
Robert H. Gorman
Mark Philip Painter
J. Howard Sundermann, Jr.
Ralph Winkler

## FIRST APPELLATE DISTRICT OF OHIO
William Howard Taft Law Center
12th Floor, 230 East Ninth Street
Cincinnati, Ohio   45202-2138



Thomas J. Rottinghaus
Court Administrator

Daniel S. Jenkins
Assistant Administrator

(513) 946-3500
Fax: (513) 946-3411

STATE OF OHIO,

      Plaintiff-Appellee,

VS.

RICHARD KLEIN, JR.,

      Defendant-Appellant.

**ENTERED**
MAR 1 7 1999
**IMAGE** 26

:

:

:

:

APPEAL NO. C-990066
TRIAL NO. B-9700308

### ACCELERATED CALENDAR SCHEDULING ORDER

Having reviewed the notice of appeal and docket statement filed herein, and pursuant to Local Rule 12(2), it is the Order of this Court that this cause be placed on the Court's accelerated calendar.

It is Ordered that the complete record of this action be filed on or before **4/12/99**.
(See paragraphs one and two of the enclosed.)

The appellant's brief shall be filed on or before **5/12/99**.
The appellee's brief shall be filed on or before **6/14/99**.
(See paragraph four of the enclosed.)

Counsel who wish to submit the appeal to the Court without oral argument should submit a written request to the court at least three working days prior to the hearing.

---

**NOTE: Enclosed with this Order are several admonitions. These admonitions should be reviewed.**

---

To The Clerk:
Enter upon the Journal of the Court on   **3/17/99**   per order of the Court.

By: _____      **(Copy sent to counsel)**
          **Presiding Judge**    DR

exhibit No. 4

**COURT OF COMMON PLEAS**
**CRIMINAL DIVISION**
**HAMILTON COUNTY**   **C990066**

State of Ohio,

                              Plaintiff

VS.

Richard Klein, Jr.,

                    Defendant                    :

Case No.   B9700308
Appeal No. C970788
(Judge Niehaus)

NOTICE OF APPEAL

*[stamp: CLERK OF COURTS HAMILTON COUNTY — JAN 2 5 1999 — JAMES CISSELL COMMON PLEAS COURTS]*

---

        Now comes the Defendant, by and through counsel, and hereby gives notice of
his intention to appeal the above captioned cause to the Court of Appeals of Hamilton
County, Ohio, First Appellate District from the final judgment, conviction and
sentence entered in this action on the 29th day of December, 1998 nunc pro tunc to the
9th day of September, 1997.

                              Respectfully submitted,

                              R. Bernard Mundy (0064058)
                              Attorney for Richard Klein, Jr.
                              2761 Madison Road, Suite 1
                              Cincinnati, Ohio  45209
                              (513) 841-9288

                    <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that a true and accurate copy of the forgoing document was
served upon the County Prosecutor, 230 E. 9th Street, Suite 4000, Cincinnati, Ohio
45202, via hand delivery on the same day as filed.

                              R. Bernard Mundy

ENTERED
APR - 6 1999
IMAGE 23

**COURT OF APPEALS**
**FIRST APPELLATE DISTRICT OF OHIO**

State of Ohio,                          :        Appeal No. C9900066
                                                  Trial No. B9700308
          Plaintiff-Appellee            :

VS.                                      :        ENTRY GRANTING MOTION
                                                  EXTENDING TIME TO FILE
Richard Klein, Jr.,                      :        APPELLANT'S BRIEF

          Defendant-Appellant           :

---

For good cause shown, the Court hereby grants Defendant-Appellant's Motion to
extend time to file Defendant-Appellant's brief. The time in which to file said brief is
extended to July 13, 1999. June 12, 1999

**IT IS SO ORDERED.**

_____
Judge

TO THE CLERK: 2

ENTERED UPON THE JOURNAL OF
THE COURT          4/6/99
THIS _____ DAY OF _____ COURT
BY _____
          PRESIDING JUDGE

exhibit No. 4

## EXHIBIT NO. 5

ROUGH DRAFTS OF SOME OF THE ASSIGNMENTS OF ERROR THAT COUNSEL
OMITTED FROM THE BRIEF, THESE ARE NOT FORMATTED ACCORDING TO RULE
BUT ARE ONLY ROUGH DRAFTS OF A SOME OF THE OMITTED ERRORS

## SECOND ASSIGNMENT OF ERROR

**COUNSEL WAS INEFFECTIVE WHEN HE ALLOWED, WITHOUT OBJECTION, CINCINNATI POLICE OFFICER'S TO TESTIFY TO LIES UNDER OATH, AND FAILED TO USE PERJURED TESTIMONY TO IMPEACH, AND FAILED TO RAISE THE ISSUE IN CLOSING ARGUMENT.**

### ISSUES PRESENTED FOR REVIEW AND ARGUMENT

**DO CINCINNATI POLICE OFFICERS HAVE A DUTY TO TELL THE TRUTH WHILE TESTIFYING IN A CRIMINAL TRIAL UNDER OATH.**

"WHEN CONSIDERING WHETHER THE STATE HAS DEPRIVED A PERSON OF DUE PROCESS IN A CRIMINAL TRIAL, THERE IS NO SUGGESTION THAT DIFFERENT "ARMS" OF THE GOVERNMENT ARE SEVERABLE ENTITIES, THEREFORE, THE CITY'S POLICE DEPARTMENT REPRESENTS THE STATE NO LESS THAN THE PROSECUTOR'S OFFICE, AND THE TAINT ON A TRIAL IS NOT LESS IF THE POLICE, RATHER THAN THE STATE'S ATTORNEY'S ARE GUILTY OF MISREPRESENTATIONS, at 120." "THERE IS NO INFRINGEMENT WHICH IS MORE SERIOUS THAN THE LYING OF A POLICE OFFICER WHICH SUBSTANTIALLY CONTRIBUTES TO THE CONVICTION AND LOSS OF FREEDOM OF A DEFENDANT." "IT IS HIS SWORN OBLIGATION TO ANSWER ALL QUERIES PUT TO HIM TRUTHFULLY AND FULLY, at 122." State v. Defronzo (1978), 59 Ohio Misc. 113, 394 N.E.2d 1027, [13 O.O.3d 377].

### ARGUMENT

In the case at bar, Cincinnati Police Officers Robert Heinlein, and Officer David Landesberg took an oath prior to taking the stand at trial, (T.P. 459, lines 9-11; T.P. 509, lines 16-18). In spite or this oath prior to testifying in trial, both detectives are guilty of perjury as defined by R.C. 2921.11, which states that perjury is a crime. Both detectives by their own admissions knowingly and intentionally lied under oath in this

**exhibit No. 5**

trial, while testifying, to miss-lead the jury in pertinent material facts rendering the jury's verdict and the outcome of the trial unreliable.

Detective Heinlein began this untruthful testimony at, (T.P. 525, lines 6-20), where he stated that while they were interviewing Ms. Richmond, "they received a call from the hospital and the doctor told him that the injury was an immersion burn and not a splash." and that, "they approached her with this information then at that time she decided to tell the truth." Then, Officer Heinlein stated that Ms. Richmond said that, "he took Matt, ran the water in the bath, took him into the bathroom, took his cloths off, put him in the tub, and from there she didn't see anything, she didn't hear anything, (T.P. 527, lines 8-13). Then he testified on cross-examination that, "Ms. Richmond had never stated anything about spraying at all, and this issue or immersion and spraying was never even brought up, and in fact there was never any conversation with the hospital or a doctor about spraying of immersing, (T.P. 539, lines 10-25; T.P. 540, lines 1-10). Then Detective Heinlein testified that Ms. Richmond stated this in her taped statement, (T.P. 543, lines 16-25). Then, detective Heinlein testified that Ms. Richmond did not state this in her taped statement, (T.P. 539, lines 12-14), Then, turned around again and testified that Ms. Richmond did state this in her taped statement, (T.P. 543, lines 16-25; T.P. 540, lines 1-25). Then, when lead by the prosecution in questioning, Detective Heinlein again lied, turned his story around and testified that Ms. Richmond did in fact state this in her[1] taped statement, (T.P. 550, lines 17-25; T.P. 551, lines 1-3). The true fact is that Ms. Richmond's taped

Detective Landesberg testified while under oath that, "we spent a lot of time examining whether or not there was any remote possibility that, in fact, because this child was disabled and could somehow be caught in this bath tub of hot water and be unable to get out, (T.P. 492, lines 18-25; T.P. 493, lines 22-23). The first problem with this testimony is that this officer wasn't even there during the water tests, (T.P. 548, lines 19-25); T.P. 549, lines 1-2). The second problem with this detectives testimony is that the part of the investigation that involved the testing of the water and Ms. Richmond's story lasted only "FIVE MINUETS", (T.P. 547, lines 9-21). When in fact these detectives didn't even do any investigating at all to determine whether or not Ms. Richmond's story was consistent with the injury's that Matthew Richmond suffered, (T.P. 540, lines 9-25; T.P. 541, lines 1-17; T.P. 546, lines 12-25; T.P. 547, lines 1-25; T.P. 548, lines 1-2). These detectives have drawn a conclusion based on nothing at all, (T.P. 504, lines 3-9). They had taken a bias position and testified that Ms. Richmond had nothing to do with the injury to her son, (T.P. 493, lines 16-17). When in fact, the whole time she had been showing them how she filled the tub with water, (T.P. 485, lines 5-6; T.P. 519, lines 21-25; T.P. 520, lines 23-25; T.P. 521, lines 1-3; T.P. 540, lines 1-5), and how she put him in the tub, (T.P. 513, lines 16-25; T.P. 523, lines 5-6), and how she found him in a pool of water, with an expressionless face, (T.P. 487, lines 3-25; T.P. 513, lines 21-22; T.P. 523, lines 10-15; T.P. 540, lines 1-10), and she kept stating that she was the one giving Matthew the bath when the injury occurred, (T.P. 392, lines 13-25; T.P. 408, lines 1-25; T.P. 410, lines 1-25; T.P. 425, lines 6-16; T.P. 503, lines 18-19). Not only did Ms. Richmond tell police that she was

**exhibit No. 5**



statements are devoid of any such statement. This is a total fabrication by the Cincinnati Police Department. Now, this is the head of the investigation in a very high profile case, with a lot of publicity, the cameras were all over the courtroom. It is beyond argument that this detective knew exactly what was in that tape that he made of Ms. Richmond, and the Prosecuting attorney also knew exactly what Ms. Richmond said on that tape. Since that tape is devoid of any and all statements even remotely resembling what this detective just testified to and these officers of this court knew it. It is beyond refute as to the credibility of Detective Heinlein's testimony, and his bias attitude in this case. This testimony was used to bolster the alleged confession that these detectives testified that the Defendant/Appellant made. That they didn't produce tapes for. In a high profile case such as this, it is beyond refute that even the most incompetent detective is going to make tapes if a suspect who is confessing to a hideous crime such as this, regardless of the individuals desire not to be taped. The Defendant/Appellant refused to sign the detectives notes for a reason, (T.P. 498, lines 1-9). It is simple to infer that these notes were not consistent with the Defendant/Appellants statements at the time, if in fact there were any statements made at all. The detectives fabrication is evidence that his sole intention was to gain a conviction even if he had to lie to the jury while under oath to get it. If this detective is willing to lie about issues of little probative value it can be inferred that he would be much more willing to lie about issues of even greater import. Defense counsel failed in his duty to bring this to the jury's attention, and counsel failed to take further measures to insure a fair trial.

**exhibit No. 5**

responsible but she told a lot of people that she was the one who was giving this bath when the injury occurred, (T.P. 503, lines 12-17), and maintained that admission, (T.P. 487, lines 3-25). What Ms. Richmond kept stating to these detectives is consistent with the nature of the injury, that Matthew was immersed, Although she continually mislead them in details to protect herself, the fact remains that she attempted to tell them her version of the truth that she was the responsible party. The detectives took a bias position in this case, then lied to get a conviction based on nothing but feeling, (T.P. 504, lines 8-10).

While no defendant can be guaranteed a perfect trial, each defendant must be guaranteed a fundamentally fair trial, for fairness in our dealings with the government is the cornerstone of our faith, trust and support in the government's system. Due Process of law is breached when government procedures pass beyond the line of tolerable imperfection and fall into the field of unfairness. Here, the Police department has perpetuated falsehoods upon the court at trial, and a new trial is required if the false testimony could, in any reasonable likelihood, have affected the judgement of the jury, (Crim. law. 919(1), Const. Art. 1 § 16; U.S.C.A. Const. Amend. 14.
United States v. Agurs (1976), 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed. 2d 342; Gigilo v. United States (1972), 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; Napue v. illinois (1959), 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

Evid. R. 603 requires that, "before testifying, a witness must declare his intention to relate the subject matter of his testimony truthfully." "The oath or affirmation, must be administered in the presence of an officer authorized to administer it, and it must be an unequivocal act by which the witness consciously undertakes the burden to testify truthfully." R.C. 2921.11, perjury is a crime.

**exhibit No. 5**

The Defendant/Appellant further asks relief from this court, regardless of the materiality of the testimony of Police, because the State of Ohio has infringed the integrity of both the court and the criminal justice system. There is no infringement which is more serious than the lying of a Police Officer while under oath which substantially contributes to the conviction and loss of freedom of a defendant. In the present case, a Police officer by his own admission, knowingly and purposely lied while on the witness stand, and under oath. It is his sworn obligation to answer all queries put to him truthfully and fully. This, an officer of the law failed to do. What this court is being asked to do by the prosecution is sustain a conviction based on perjured testimony, This Court should be perplexed as to why the State is satisfied to have this conviction stand under such erroneous circumstances. The State seems to fail to realize that its highest duty to the people of the State of Ohio is its participation in the systems quest for justice. The word justice is not synonymous with the word conviction, and perjury is a crime. Therefore, the dignity of the United States Government should not permit the conviction of any person on tainted testimony. The government of a strong and free nation does not need convictions based upon such testimony. It cannot afford to abide with them, This Court, the First District Court of Appeals should not permit a lesser standard in this case, and accordingly the Defendant/Appellant's conviction should be vacated. The State has not produced one shred of substantial credible evidence to gain a conviction or the Police would not have to lie to get a conviction and the prosection would not have knowingly aided and abetted this by re-soliciting this testimony during re-direct examination. It is reasonable to infer that if the

**exhibit No. 5**

Police are willing to lie about issues of little or no materiality they will be far more willing to lie about issues of greater import. Police investigation and conduct has fallen far below an objectable standard. Trial counsel's performance and the States performance also has fallen below a reasonable standard. The Police bias, prosecutors misconduct, ineffective counsel, and the co-defendants recanted confessions, and the totality of manipulated testimony in this case has more than merely tainted the truth finding process. We have the rules of evidence for a reason, "the purpose of these rules are to provide procedures for the adjudication of causes the end that the truth may be ascertained and the proceedings justly determined." This should be known by every first year law student. Because the jury will place great confidence and faithfulness in the police and prosecution, improper testimony and insinuations by police and prosecution will carry great weight. It is the duty of the States Attorney to govern impartially and who's interests in criminal prosecutions is not that it shall win a conviction but that justice shall be done. Prosecutors may prosecute with vigor-indeed, but while he may strike blows he is not at liberty to stride foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use very legitimate means to bring about just ones. The Trial Judge is an expert in law, he is aided by counsel on both sides who are also experts in law. With so many experts on board this ship the Defendant/Appellant respectfully requests to know why his right's were so blatantly violated. The law is[1] by the people and for the people, not by the judge and for the judge, not by the prosecutor and for the prosecutor. These are public servants, and I am a citizen of this

**exhibit No. 5**

public, therefore, this is to serve me. It is the prosecutors duty to protect me from this sort of injustice, this is his job. It is the trial counsels duty to protect my right's, this is his job. The Trial Courts obligation to control all proceedings, this is his job. It doesn't appear that these jobs are respectfully filled.

When the tainted testimonies are extracted the only evidence left to make an inference from is that Ms. Richmond is responsible for her sons injuries and death, as she has confessed. The State has had an opportunity to try the Defendant/Appellant fairly according to Rule. As experts there is no excuse for what has transpired. Therefore, the Defendant/Appellant respectfully requests on these grounds that this conviction be vacated in full.



COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO LEADING QUESTIONS BY PROSECUTION ELECTING THE OPINION OF THE DETECTIVES AS TO THE TRUTHFULNESS OF CO-DEFENDANT SHARON RICHMONDS TAPED STATEMENTS IMPLICATING THE DEFENDANT, AND COUNSEL FAILED TO PROPERLY CROSS-EXAMINE CO-DEFENDANT ON HER INITIAL TAPED CONFESSIONS, AND HER SECONDARY STATEMENTS IMPLICATING THE DEFENDANT, AND TRIAL COUNSEL FAILED TO SUBMIT HER TAPED STATEMENTS TO THE JURY SO THAT AN ACCURATE COMPARISON COULD BE MADE.

Trial Counsel was ineffective when he failed to object to leading questions, asked by prosecution, to Detectives Heinlein and Landesberg, about their opinion of truthfulness of Co-Defendant Sharon Richmond's statements implicating the Defendant, (T.P. 470 14-15; 492 16-18; 503 12-25; 504 3-10; 525 19-20; 543 3-25; 544 1-25).

Ms. Richmond has already given two admissions on tape to Police Detectives. Then after being in Police custody for over 7½ hours, (T.P. 467 9-20; 543 3-14), and being without sleep for over 36 hours, (T.P. 386 8-11; 387 15-20), and after receiving a phone call from the hospital, where she learned the seriousness of her sons injuries, (T.P. 525 5-20), and after she found out that she was to face criminal charges, (T.P. 494 2-18), and then after having a private conversation with Detective Heinlein, (T.P. 543 3-25), all of a sudden she didn't so it anymore. The Detectives did not base the change in their investigation on any facts, "JUST FEELING," (T.P. 504 7-10). The Detectives statements and Trial Counsels failure to object and have the statements stricken from the record undermined the truth finding process, and rendered the outcome of the trial unreliable.

State v. Boston (1998), 46 Ohio St.3d 108, 454 N.E.2d 120;
"THIS COURT FOUND THAT WITNESS STATEMENTS AND COUNSELS FAILURE TO OBJECT AND REQUEST THAT THE STATEMENTS BE STRICKEN FROM THE RECORD UNDERMINE THE FAIRNESS OF THE TRUTH FINDING PROCESS AND THUS CONSTITUTED PLAIN ERROR."
State v. Yarber (1995), 102 Ohio App.3d 185, 656 N.E.2d 1322;
"COUNSEL FAILED TO OBJECT TO IMPROPER LEADING QUESTIONS ASKED BY THE PROSECUTION AND TO QUESTIONS THAT WERE PREVIOUSLY ASKED AND ANSWERED. DURING CROSS-EXAMINATION COUNSEL REPEATEDLY ASKED QUESTIONS

**exhibit No. 5**

THAT SOLICITED THE SAME RESPONSE THAT HELPED THE PROSECUTION PROVE
THEIR CASE, THE ANSWER SOLICITED BY COUNSEL KEPT CONFIRMING TO THE
JURY THAT "IT HAPPENED," at 189.

2). Counsels cross-examination of Co-Defendant Sharon Richmond helped the
prosecution prove their case by eliciting responses from her that "SHE LIED" in
her admissions in her taped confessions to Detectives, confirming to the jury
that her admissions "WERE LIES," and her secondary statements implicating the
Defendant/Appellant were the truthful statements. Trial counsel continually
asked questions that were previously asked and answered, and that solicited the
same response. The determination as to the truthfulness of either of her
statements is an issue to be decided by the jury. For the State to inquire from
the Detectives their opinion as to the truthfulness of the secondary statements,
and counsels failure to object and then for counsels cross-examination of
Ms. Richmond soliciting the same response that, "SHE LIED" in here admissions to
police, is "an invasion of the fact finding province of the jury and is not
proper junction of a witness." The cross-examination of defense counsel helped
the State prove their case. The opinions of the Detectives should have been
objected to each and every time the statement was made. Once again trial
counsels cross-examination was insubstantial, and the responses elicited helped
the state prove their case, (T.P. 408 1-25; T.P. 409 1-25; T.P. 410 1-25;
T.P. 425 5-8; T.P. 426 7-18; T.P. 427 1-25; T.P. 430 10-12).

3). Trial counsel asked questions that were pertinent to the outcome of the
case and he failed to allow Ms. Richmond to answer. The answers would have
helped the jury to determine whether or not she was fabricating another story,
(T.P. 425 6-16; T.P. 427 16-18; T.P. 431 1-5).

4). Trial counsel failed to thoroughly cross-examine Ms. Richmond on her
prior inconsistent statements and failed to play the tapes of her admissions so
that the jury could have made an accurate comparison to her trial testimony and
the testimony of police detectives. This omission by counsel left Ms. Richmond
and the detectives at liberty to edit out any unfavorable statements that were
accurately recorded. Trial counsel was also at liberty to use transcripts of
these tapes as listening aids for the jury, and failed there also. This
materially damaged the defense since the tape recordings were an accurate
dependable source of Ms. Richmonds statements, The testimony of her statements
did not accurately reflect what she had said. Trial counsels strategy adversely

**exhibit No. 5**

affected the outcome of the trial, rendering its outcome of the trial unreliable.

COUNSEL WAS INEFFECTIVE WHEN HE DID NOT
EFFECTIVELY CROSS EXAMINE STATES EXPERT
WITNESS DR. GLEN WARDEN, AND WHEN HE FAILED
TO OBJECT TO INFLAMMATORY UNSUBSTANTIATED
ACCUSATION MADE BY DR. WARDEN, AND HE
FAILED TO OBTAIN AN EXPERT WITNESS REPORT
DISCLOSING THE DOCTORS THEORY THAT MATTHEW
RICHMOND WAS HELD IN THIS TUB OF HOT WATER.

States Expert Witness Dr. Glen Warden testified without objection by defense counsel, and without request by defense counsel for jury instruction regarding this particular opinion, that Matthew Richmond was "held in this tub of hot water and that there was no other way that this injury could have occurred," (T.P. 574 19-22; T.P. 585 16-25; T.P. 586 1-25; T.P. 587 1-25; 588 1-25).

A). First, an expert witness report was never disclosed to the defense that Dr. Warden was going to testify to this theory that Matthew Richmond was held. Expert witness Dr. Glen Warden did not present any underlying facts or data prior to the rendition of his opinion.
Evid. R. 705 requires disclosure of the underlying facts or data prior to the rendition of the expert's opinion;

State v. Whitt (1991), 68 Ohio App.3d 752, 589 N.E.2d 492;
"EXPERT WITNESS TESTIMONY WAS INADMISSIBLE UNDER RULE 705 BECAUSE NO FACTS WERE OFFERED IN SUPPORT OF THE EXPERTS OPINION."

B). Secondly, Dr. Wardens "HOLDING THEORY" was not supported by the results of any procedure, tests, or experiment as required by Evid. R. 702. The Doctors opinion as to whether Matthew was HELD is purely speculative;

Shumaker v. Oliver B. Cannon (1986), 28 Ohio St.3d 367, 504 N.E.2d 44;
"EXPERT TESTIMONY WAS NOT ADMISSIBLE BECAUSE HIS OPINION WAS SPECULATIVE AND PRETRIAL NOTICE WAS NOT GIVEN TO THE DEFENDANT AS TO THE CLAIM THAT THE EXPERT WAS TO TESTIFY TO."

State v. Davis (1989), 64 Ohio App.3d 334, 581 N.E.2d 604;
"EXPERT TESTIMONY NOT ADMISSIBLE WHERE THE EXPERT HAD NOT LAID A PROPER SCIENTIFIC FOUNDATION."

exhibit No. 5

Co-Defendant Sharon Richmond, (T.P. 605 3-10).

State v. Roqumore (1993), 85 Ohio App.3d 448, 620 N.E.2d 110;
EXPERT TESTIMONY CONCERNING THE CRIME SCENE WAS IMPROPERLY ADMITTED WHERE IT WAS NOT SHOWN TO BE SUFFICIENTLY RELIABLE AND THE SUBJECT WAS WITHIN THE UNDERSTANDING OF THE JURY."

EVID.R. 705: REQUIRES DISCLOSURE OF THE UNDERLYING FACTS OR DATA PRIOR TO THE RENDITION OF THE EXPERT'S OPINION;

State v. Whitt (1991), 68 Ohio App.3d 752, 589 N.E.2d 492;
"EXPERT WITNESS TESTIMONY WAS INADMISSIBLE UNDER RULE 705 BECAUSE NO FACTS WERE OFFERED IN SUPPORT OF THE EXPERT TESTIMONY."

Camden v. Miller (1986), 34 Ohio App.3d 86, 517 N.E.2d 253;
"EXPERT WITNESS TESTIMONY WAS ADMISSIBLE WHERE THE FACTS ON WHICH THE OPINION WAS BASED WERE ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE."

Sutten v. Industrial Com'n. (1984), 20 Ohio App.3d 343, 486 N.E.2d 844;
"OPINION TESTIMONY OF AN EXPERT WITNESS WAS ADMISSIBLE WHERE THE OPINION WAS ELICITED BY A HYPOTHETICAL QUESTION REVEALING ONLY PROVEN FACTS."

State v. Burrel (1993), 89 Ohio App.3d 737, 626 N.E.2d 605;
"DOCTORS OPINION WAS PROPERLY ADMITTED WHERE THE DOCTOR DISCLOSED THE UNDERLYING DATA THAT WAS THE FOUNDATION FOR HIS OPINION."

questioning. This statement was nothing more than an unsubstantiated accusation, calculated to mislead the jury.

State v. Cotton, (1996), Hamilton Co. WL 348026, (Ohio App. 1 Dist. 1996), Appeal No. C- 950288, Trial No. B-947502, June 26, 1996, at 5.

State v. Roberts (Mar. 6, 1996), Hamilton Co. App. No. C-950767.

2). Second, Dr. Warden became a hostile witness evading direct questioning by defense counsel when he testified to the following;

When asked by defense counsel if "one would pass-out when coming into contact with 140 degree water", (T.P. 597 14-23), defense counsel obviously was referring to the paralyzing effect from the sudden exposure to water that temperature, Dr. Warden evaded the subject by stating again "IT WOULD TAKE A LONG TIME," (T.P. 587 21), and states "THAT YOU WOULD SIMPLY GET OUT OF THE TUB," (T.P. 587 24-25). Trial counsels cross-examination was deficient, within only five minutes counsel was through questioning this witness and had not covered any issues. If the defense was referring to a normal 12 year old this statement would have had truth to it. But, Dr. Warden's insinuation is that this water would have no effect on the coordination or motor function of a child Matthew's size, and completely disregarding the facts of his seizure disorder, (T.P. 348 2-3; 348 22; 513 26-25; 523 1-15), his physical and mental condition, (T.P. 347 12-25), and the hyperactivity medication and its affects on coordination, (T.P. 348 25; 605 3-10).

This unsubstantiated accusation that a 12 year old handicapped child was "HELD" in a tub of scalding hot water was so inflammatory to the jury's emotions that it prevented them from properly weighing the actual evidence of a potential accident. The accusation was misleading in the absents of supporting evidence, and the Doctor failed to lay a proper foundation for this opinion based on something. Trial counsel was ineffective for not obtaining a pre-trail expert witness report on this subject and by not raising this issue prior to trial either by a pre-trail hearing, by briefings, and argument, or by objection and decisions during trial. The State erred in not presenting it with Discovery. In other words the state failed to prove this element of the crimes, which is the most significant element because it embraces the ultimate issue in the elements of, knowingly, and recklessly. The State has not proven beyond a reasonable doubt that this was not an accident, and that it was not done at the hands of

exhibit No. 5



an expert opinion must be based on facts or data admitted into evidence, and Evid. R. 705 requires that the expert designate the specific facts supporting his opinion prior to rendering his opinion. In the present case, no such data, facts, or evidence was admitted to support this "HOLDING THEORY." The testimony was highly inflammatory, invoking the emotions of the jurors. This testimony should have also been excluded under Evid. R. 403(A), which provides for the exclusion of prejudicial evidence if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, then the evidence is unfairly prejudicial. For the jury to hear that a 12 year old handicapped child was "HELD" in a tub of scalding hot water was excessively inflammatory, and appeal to an instinct to punish.

State v. Solomon (1990),59 Ohio St.3d 124, 507 N.E.2d 1118;
EXPERT OPINION MAY BE BASED UPON FACTS OR DATA ADMITTED INTO EVIDENCE." AND EVID.R. 705 REQUIRES THAT THE EXPERT DESIGNATE THE SPECIFIC FACTS SUPPORTING HIS OPINION PRIOR TO RENDERING AN OPINION."


Galayda v. Lake Hosp. Sys. Inc. (1994), 71 Ohio St.3d 421, 644 N.E.2d 298; "TRIAL COURT LIMITED TESTIMONY OF EXPERT WITNESS BECAUSE THE WITNESSES OPINION WAS EXPRESSED IN TERMS OF POSSIBILITY; THE SUPREME COURT NOTED THAT RULE 702 DETERMINES THE ADMISSIBILITY OF EXPERT TESTIMONY, AND EVID.R. 403 OPERATES TO EXCLUDE IT."

    D). Fourth, Dr. Warden's testimony was bias when he tailored it to conform to the states position on the issues. "Since the bias of a witness is proven through a witnesses words and conduct," (Evid.R. 616). It is beyond refute that Dr. Warden's position was bias, based on the following testimony.
    1). First, Dr. Warden testifies, "that it would take 1 to 5 seconds in 140 degree water to sustain 3rd degree burns, (T.P. 568 4-5). Then when lead in questioning by the state he insinuates that 1 to 5 seconds " is a long period of time. "Realistically a reasonable mind would conclude that 1 to 5 seconds is closer to instantly that "A LONG PERIOD OF TIME," (T.P. 573 17-20; 574 10-17). It is obvious that Dr. Warden aided and abetted the Prosecutor to mislead the jury with this line of questioning, and the jury gave undue weight to this statement. Prosecutors are not at liberty to substitute evidence for innuendo, the prosecution severally prejudiced the jury with this line of

EVID.R. 702 States that;

"A WITNESS MAY TESTIFY AS AN EXPERT IF ALL THE FOLLOWING APPLY:

A). THE EXPERTS TESTIMONY EITHER RELATES TO MATTERS BEYOND THE KNOWLEDGE OR EXPERIENCE POSSESSED BY LAY PERSONS OR DISPELS A MISCONCEPTION COMMON AMONG LAY PERSONS;

B). THE EXPERT IS QUALIFIED AS AN EXPERT BY SPECIALIZED KNOWLEDGE, SKILL, EXPERIENCE, TRAINING, OR EDUCATION REGARDING THE SUBJECT MATTER OF THE TESTIMONY."

C). THE EXPERT TESTIMONY IS BASED ON RELIABLE SCIENTIFIC, TECHNICAL, OR OTHER SPECIALIZED INFORMATION, TO THE EXTENT THAT THE TESTIMONY REPORTS THE RESULT OF A PROCEDURE, TEST, OR EXPERIMENT, THE TESTIMONY IS RELIABLE ONLY IF ALL OF THE FOLLOWING APPLY;

1). THE THEORY UPON WHICH THE PROCEDURE, TEST, OR EXPERIMENT IS BASED IS OBJECTIVELY VERIFIABLE OR IS VALIDLY DERIVED FROM WIDELY ACCEPTED KNOWLEDGE, FACTS, OR PRINCIPLES;

2). THE DESIGN OF THE PROCEDURE, TEST, OR EXPERIMENT RELIABLY IMPLEMENTS THE THEORY;

3). THE PARTICULAR PROCEDURE, TEST, OR EXPERIMENT WAS CONDUCTED IN A WAY THAT WILL YIELD AN ACCURATE RESULT."

C). Third, Dr. Wardens testimony was not based on any evidence offered at trial, it was not based on any evidence presented by him, and it was contrary to the evidence that was adduced at trial.

1). Contrary to Dr. Wardens opinion. The facts are that the water was at a temperature that would induce third degree burns in 1 to 5 seconds, rendering the incident a potential accident, (T.P. 568 4-6).

2). Dr. Warden also omitted all other pertinent evidence adduced at trail, and his reluctance to answer directly to defense counsel questions render his opinion bias, and therefore less credible and unreliable, (T.P. 588 18-25). The Doctor omitted facts like Matthew's seizure disorder that was described as a blank stare, (T.P. 348 2-3; T.P. 513 16-25; T.P. 523 1-15), and the part this potentially played in the incident. The Doctor stated that he did not know what would bring on one of these seizures, (T.P. 588 1-17). He also omitted in the weighing of his opinion was the medication that Matthew was on at the time of the incident, (T.P. 348 4-6). These were not normal conditions and this was not your normal, average child. Therefore, the potential for an accident was very high. An expert witness is required to lay a "PROPER SCIENTIFIC FOUNDATION FOR HIS OPINION", (State v. Davis), and Evid.R. 703 , requires that

**exhibit No. 5**

## TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO CINCINNATI POLICE TESTIMONY SUMMERIZING DEFENDANTS ORAL STATEMENTS PRIOR TO ARREST.

Trial counsel was ineffective when he, without objection, allowed Cincinnati Police Officer Detective Landesberg to testify summerizing defendants statements st Shriners Hospital prior to arrest, (T.P. 462 18-25; 463 1-25; 464 1-23). The testimony was hearsay, prejudicial, and improperly admitted into evidence attacking the Defendants credibility as to his veracity while Defendant exerted Fifth Amendment rights.

Evid.R. 608(B), States in pertinent part that, "a witness may be impeached ON CROSS-EXAMINATION, by interrogation as to specific prior instances of conduct and inconsistent statements probative of truthfulness. First, only prior acts involving an element of dishonesty or deceit are appropriate for interrogation, and Second, the trial judge must exercise discretion that specific acts of untruthful behavior may only be inquired into and ONLY ON CROSS-EXAMINATION of that witness, and it may not be established by extrinsic evidence."

Evid.R. 613(B), States that, "extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon. Even under Evid.R. 801(D), the prosecution was not at liberty to introduce this evidence through police testimony. It must be introduced on cross-examination of that witness. In the present case the statement was not an admission so was only probative as to the characteristics of veracity. This prior inconsistent statement can only be introduced through extrinsic evidence, (police notes), after the witness leaves the stand. Here, since the Defendant did not take the stand, the prior inconsistent statement from Shriners hospital was not introduced properly by prosecution, therefore, it was not admissible.Exercising Fifth Amendment Rights is not a waver of Rule 608(B), and 613 (B). Prosecution cleverly entered these Police Notes into evidence at the end of Dr. Wardens Testimony, Without stating on record the exhibit number, (T.P. 592 1-3). The notes were numbered in the suppression hearing, (T.P. 34 4-25), these are Police notes from C.S.I and exhibit number 1, (T.P. 10 16), are the notes taken at Shriners Hospital interview. This is Prosecutional Misconduct and reversible Plain Error.

**exhibit No. 5**

State v. Spinks (1992), 79 Ohio St.3d 720, 607 N.E.2d 1130; "Defendant failed to object at trial to police officers testimony summarizing defendant's oral statement at the time of arrest; any error was waived by the lack of objection."

Payton v. U.S. (DC Cir. 1955), 222 F.2d 794, "Tainted confession introduced into evidence without objection."

State v. Wayt (1992), 83 Ohio App.3d 848, 615 N.E.2d 1107; "Trial court erred improperly admitting into evidence police notes; although the State said that they were admitting the notes pursuant to Rule 801(D)(1)(b), to rebut ant inference of fabrication, the Court of Appeals found no inference of fabrication; admission of the notes violated Rules 612 and 803(5)."

State v. Spinks (1992), 79 Ohio St.3d 720, 607 N.E.2d 1130; "Defendant failed to object at trial to police officers testimony summarizing defendant's oral statement at the time of arrest; any error was waived by the lack of objection."

Payton v. U.S. (DC Cir. 1955), 222 F.2d 794, "Tainted confession introduced into evidence without objection.

State v. Wiles (1990), 59 Ohio St.3d 71, 571 N.E.2d 97;
"WHERE THE DEFENDANT FAILED TO OBJECT TO THE ADMISSION OF HEARSAY TESTIMONY AT TRIAL, THE COURT WILL CONSIDER THE ERROR ONLY IF IT CONSTITUTES PLAIN ERROR."

State v. Davison (1985), 17 Ohio St.3d 132, 477 N.E.2d 1141,
"ANY MOTION TO OBTAIN A JUDGEMENT SUPPRESSING EVIDENCE IS A "MOTION TO SUPPRESS" FOR PURPOSES OF THE RULES GOVERNING APPEALS, WHERE THE GRANTING OF THE MOTION WOULD ELIMINATE THE STATES ABILITY TO PROSECUTE."

State v. Callihan (1992), 80 Ohio App.3d 184, 608 N.E.2d 1136;
"A MOTION TO SUPPRESS, DULY MADE AND DILIGENTLY LITIGATED AT A PRETRIAL HEARING, SERVES AS THE "TIMELY OBJECTION" CONTEMPLATED BY THE DRAFTERS OF RULE 103(A)(1).'

exhibit No. 5
pg. 2



**THE TRIAL COURT ERRED WHEN IT ALLOWED POLICE OFFICERS TESTIMONY SUMMARIZING DEFENDANTS ORAL STATEMENTS AT THE TIME OF ARREST.**

While defendant was in custody of Cincinnati Police Detectives, officer Landesgerg and Heinlein he was read his Miranda rights, (T.P. 475 20-25). The Detectives both testified at the suppression hearing that they smelled the odor of alcohol on the breath of the defendant, (T.P. 36 15-25, T.P. 76 8-12), and the defendant had "bloodshot eyes," (T.P. 66 1-6). The defendant had a history of alcoholism as stated by his half brother James Lehmkuhl, (T.P. 72 22-25; 73 1-3). Defendant/Appellant contends that he was in fact intoxicated at the time of the police interrogation and under extreme pressure and troma due to the circumstances surrounding the injury. Since he had just finished drinking 5 beers (T.P. 37 19-25; T.P. 38 1-5; T.P. 65 16-25). At .03 per beer the Defendant/Appellant would have had an alcohol blood level of 1.5, which is .5 over the legal intoxication level mandatted by law for driving, therefore it is clear that the Defendant/Appellant was legally intoxicated at the time of this police interview, and this renders his statements involuntary. The statements were objected to in a pre-trial hearing motion to suppress. Although the evidence came out in the suppression hearing, Trial counsel was ineffective in not pursuing this issue and then presenting it to the jury at trial. The evidence is that the defendant had consumed at least an intoxicating amount of alcohol just prior to the interrogation, which brought him to a legal level of intoxication. Cincinnati Police failed to investigate exactly how intoxicated that the defendant was with a brethalizer alcohol test or a blood test prior to interrogation therefore materially damaging defendant's trial, (T.P. 65 18-25). The Police are part of the prosecutional machinery it is incumbent upon them to conduct a thorough investigation. And since defense counsel is an expert in law as is the trial court, State v. Simms (1983), 9 Ohio App.3d 302, 459 N.E.2d 1316, at 1319. It is incumbent upon defencse counsel to protect defendants rights throughout the course of the trial. Therefore, the Cincinnati Police, aided and abedded by the trial court, the prosecution and trial counsel allowed the defendants Due Process and equal protection rights to be violated.

pg. 1

**exhibit No. 5**



Beecher v. Alabama 389 U.S. 38, 88 S.Ct. 189;

"THE ALCOHOL LEVEL OF A DEFENDANT AT THE TIME THE CONFESSION IS OBTAINED BY POLICE RENDER IT INVOLUNTARY."

Payton v. U.S. (DC Cir. 1995), 222 F.2d 794,

"TAINTED CONFESSION INTRODUCED INTO EVIDENCE WITHOUT OBJECTION."

State v. Davison (1985), 17 Ohio St.3d 132, 477 N.E.2d 1141;

"ANY MOTION TO OBTAIN A JUDGEMENT SUPPRESSING EVIDENCE IS A "MOTION TO SUPPRESS" FOR PURPOSE OF THE RULES GOVERNING APPEALS, WHERE THE GRANTING OF THE MOTION WOULD ELIMINATE THE STATES ABILITY TO PROSECUTE."

State v. Callihan (1992), 80 Ohio App.3d 184, 608 N.E.2d 1136;

"A MOTION TO SUPPRESS, DULY MADE AND DILIGENTLY LITIGATED AT A PRETRIAL HEARING, SERVES AS THE "TIMELY OBJECTION" CONTEMPLATED BY THE DRAFTER'S OF RULE 103(A)(1)."

State v. Wiles (1990), 59 Ohio St.3d 71, 571 N.E.2d 97;

"THE DEFENDANT FAILED TO OBJECT TO THE ADMISSION OF HEARSAY TESTIMONY AT TRIAL, THE COURT WILL CONSIDER THE ERROR ONLY IF IT CONSTITUTES PLAIN ERROR."

State v. Spinks (1992), 79 Ohio St.3d 720, 607 N.E.2d 1130;

"DEFENDANT FAILED TO OBJECT AT TRIAL TO POLICE OFFICERS TESTIMONY SUMMARIZING DEFENDANTS ORAL STATEMENT AT THE TIME OF ARREST; ANY ERROR WAS WAIVED BY LACK OF OBJECTION."

## FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR
NEW TRIAL WHEN THE STATE UNEQUIVOCALLY FAILED TO
PROVIDE THE DEFENDANT WITH EXCULPATORY EVIDENCE

## ISSUES PRESENTED FOR REVIEW AND ARGUMENT

DOES THE PROSECUTING ATTORNEY HAVE A DUTY TO PROVIDE
THE DEFENDANT WITH EXCULPATORY AND IMPEACHING EVIDENCE
BEARING UPON GUILT OR PUNISHMENT

"It is the duty of the prosecuting attorney to
secure justice, not to merely seek convictions, it is
incumbent upon this office to provide an accused with
any and all exculpatory evidence known to the state,
Brady v. Maryland, (1963), 373 U.S. 85, 83 S.Ct. 1194,
1196-1197; State v. Simms, (1983), 9 Ohio App.3d 302,
459 N.E.2d 1316; State v. Tomblin, (1981), 3 Ohio
App.3d 17, 443 N.E.2d 529; State v. Joseph (1995), 73
Ohio St.3d 450, 653 N.E.2d 258.

## ARGUMENT

The State failed in its duty to provide Defendant/Appellant
with exculpatory evidence on two critical issues. First,
Ms. Richmond was promised that the State would take no position at
her sentencing hearing and remain silent in regards to her
sentencing, (T.P. 749, lines 1-25; T.P. 751, lines 10-25).

Secondly, the Defense was never provided with any information
whatsoever regarding the significance or insignificance of the
delay in seeking medical treatment for Matthew Richmond's
injuries. (T.P. 15, lines 18-23; T.P. 583, lines 1-25; T.P. 584,
lines 1-25). This is important evidence since it embraces the

exhibit No. 5

ultimate issue of whether Matthew Richmond died as a result of Ms. Richmond's failure to seek medical treatment, or whether " the dye was truly cast in terms of him dieing." Which is the difference in responsibility for the death, and who is responsible.

In denying Defendant/Appellants motion for new trial, the Trial Court stated that the Co-Defendant's plea agreement was nothing more than "SEMANTICS," (T.P. 378, lines 2-20). The critical issue is that the Prosecutor stated on direct examination of Ms. Richmond that "I BELIEVE YOU WERE TOLD AT THAT TIME THAT JUDGE NIEHAUS AT SOME POINT IN TIME WOULD MAKE A SENTENCE ON YOU, AND THAT WE ARE GOING TO LET HIM DETERMINE THE APPROPRIATE SENTENCE: IS THAT CORRECT?" (T.P. 378, lines 9-20). It is the States position that this is the equivalent to disclosing to the defense the exculpatory nature of the plea agreement. However, the import of Ms. Richmond's agreement with the State cannot be disregarded as "SEMANTICS." The word game that the State played with the jury did not disclose the true nature of the plea agreement. Defense could not present Ms. Richmond"s motive to fabricate a lie, and impeach her testimony implicating the Defendant/Appellant. The State expected her cooperation in the conviction of the Defendant/Appellant for a reason, (T.P. 13, lines 9-21).

Ms. Richmond had already made numerous admissions as to being the individual responsible for giving the bath at the time of the injury, including two taped statements to the Police implicating herself, (T.P. 392, lines 13-25; T.P. 403, lines 17-25; T.P. 408, lines 1-25; T.P. 410, lines 1-25; T.P. 425, lines 6-16). Defendant/Appellant has the right to be armed with the deal that Ms. Richmond made with the State that the State expected her

cooperation in return for, (T.P. 13, lines 9-21).

There is evidence that the State induced Ms. Richmond to lie, (T.P. 494, lines 2-18), and evidence to enter into an illegal plea bargain, (T.P. 8, lines 14-15; T.P. 13, lines 9-21), Simms, at 1319. The purpose for inquiry into plea bargaining arrangements with a witness is to show possible bias and motive to fabricate that would affect the witnesses credibility as to their testimony, and Ms. Richmond had plenty of Motivation to fabricate a story to evade prosecution for the injury of her son, as stated she had already confess to being the responsible individual. But, the important consideration is what she believed about the plea bargain as opposed to standing trial that might induce testimony that is untruthful. The potential of probation was stated of record by the judge and she was told that her sentence would be based on her testimony at the trial of her Co-defendant. A witness who is given a deal that is to good to refuse may fabricate testimony to satisfy the State and obtain the advantage of a favorable plea bargaining deal, and in this case Ms. Richmond was informed of the possibility of probation, but obviously not if she implicated herself again at trial, (T.P. 13, lines 18-21), and her sentence would be based on her testimony, (T.P. 13, lines 14-15). There was no inquiry by trial counsel at trial of whether she was told that she could potentially receive probation. The important consideration is what Ms. Richmond believed that might induce her to lie to satisfy the State and reduce her potential prison term. Trial counsels failure to investigate Ms. Richmond's plea hearing transcript, and cross examine her on the issue, and the States failure to fulfill their obligation of disclosure severally materially prejudiced the Defendant/Appellant and prevented a Constitutionally fair trial. It

**exhibit No. 5**

A 41

was later found that Ms. Richmond presented this issue of her cooperation to the Court of Appeals once again attempting to gain favor and receive a reduced sentence. Ms. Richmond obviously believes that she deserves consideration of a lesser sentence, "for aiding the prosecution in the prosecution of the Defendant/Appellant." Once again Ms. Richmond has given numerous admissions of responsibility along with two taped statements to Police while in their custody. Her motive to fabricate to evade further indictment and incarceration is a major issue that the jury should have had the opportunity to weigh in their decision. The trial court erred in not bringing Ms. Richmond back from the adult penitentiary for inquiry into her understanding of the plea bargain arrangement and the benefit it had in regards to probation, sentencing, and indictment. The trial court denied the Defendant/Appellant of a compleat record, therefore, materially damaging the trial as well at this appeal. There is further evidence that Ms. Richmond had a deal, her attorney contacted Defendant/Appellants attorney after Ms. Richmond's sentencing hearing and stated that she had an agreement with the State, (T.P. 753, lines 4-25; T.P. 773, lines 7-24; T.P. 780, lines 15-21). Defendant/Appellant could not have received a fair trial without this evidence. Ms. Richmond's lied on the stand and stated that there was no plea bargain beneficial to her, then her attorney contacts the Defendant's attorney and says there was. Even though the State is arguing that the agreement came out at trial in time to use for impeachment, this is not true since all that was stated is that we are going[1] to have the judge sentence you. This was not the agreement.

The second issue is that the State failed to disclose evidence of the significance or insignificance of the delay in seeking medical treatment.

In denying the Defendant/Appellant's motion for mew trial, Head prosecutor Joe Deters stated during Ms. Richmond's plea hearing that the delay in seeking medical treatment did not contribute to Matthew's death, "JUDGE IT IS IMPORTANT TO NOTE THAT AFTER THE BURN WAS ADMINISTERED TO MATTHEW RICHMOND, BASICALLY THE DYE WAS CAST IN TERMS OF HIM DIEING. HER FAILURE TO SEEK MEDICAL TREATMENT AFTER THE BURN WAS ADMINISTERED WOULD NOT HAVE CHANGED WHAT WOULD HAVE HAPPENED TO HIM," (T.P. 15. lines 18-23). Contrary to Mr. Deters testimony to the court, Dr. Glen Warden testified that this delay in treatment was the cause of death, that Matthew Richmond died of "PULMONARY LUNG DAMAGE," and the delay in medical treatment was the cause of this lung damage, (T.P. 577, lines 11-25; T.P. 578, lines 1-17; T.P. 582, lines 11-13; T.P. 583, lines 22-25; T.P. 584, lines 1-8). Dr. Warden also testified that Matthew's chances of survival was 60% to 65%, (T.P. 575, lines 14-21), and that Matthew Richmond upon arrival at the hospital, after the delay was give a prognosis of only a 10% chance of survival, (T.P. 579, lines 15-16), and this was due to Ms. Richmond's delay in seeking medical treatment. Now, head prosecutor Joe Deters was aware of some information that he obtained somewhere prior to the trial of the Defendant/Appellant that this delay in treatment had nothing to do with the death of Matthew Richmond, or he would not have stated it on record as evidence. Prosecutor Joe Deters also was quoted on several occasions by Cincinnati news papers stating the same thing during the trial of Defendant/Appellant, even after he stated that he had

exhibit No. 5

simply miss-spoken. The significant factor is that he stated it on record and entered it as evidence and that someone lead him to believe that this statement was the truth. It is beyond refute that Mr. Deters knew something that made him believe that this delay had nothing to do with the death of Matthew Richmond, or he was lying to give favoritism to Ms. Richmond in trade for her deal. For the State of Ohio to present totally contradictory evidence, misrepresenting facts that are pertinent to the guilt and punishment of an accused, is simply inexcusable Prosecutorial misconduct. Ms. Richmond, being the parent and sole guardian of her child is solely responsible for his care. For Ms. Richmond to knowingly delay treatment for her child and complicate his injury so drastically that his chances of survival plummeted from a 65% chance of survival to less than a 10% chance of survival, and then for the State of Ohio to misrepresent these facts is a material demarcation of the truth finding process, totally denying the Defendant/Appellant the right to a fair trial. Just the mere fact that the mothers delay in treatment ultimately caused her child's death since a 65% chance of survival was far better than even compared to the 10% survival rate due to the delay. The State here has totally disregarded its duty to protect its citizens, the Defendant/Appellant has not received equal protection and Due Process due to these circumstances. The Defendant/Appellant was so severely materially prejudiced by these prosecutors tactics and the States bias position in this case that this Court should order to vacate sentence, or at minimum order a new trial.

1). The word game that the prosecution played with the issue in trial at, (T.P. 378, lines 9-20), to cover up the deal that was

**exhibit No. 5**

made to Ms. Richmond that the State expected her cooperation for, is evidence that the nondisclosure was willful and intentional.

2). Foreknowledge of the information would have allowed the defense to properly prepare for cross-examination on the subject. The jury still has not had the opportunity to properly weigh the benefits that Ms. Richmond received and the effect that this had on the credibility of her testimony against the Defendant/Appellant. Once again, Ms. Richmond has made numerous admissions.

3). The State still has not disclosed the true nature of the plea agreement, and the prejudicial effect materially damaged the defense.

exhibit No. 5



**<u>EXHIBIT NO. 6</u>**

APPEAL BRIEF FILED BY APPELLATE COUNSEL BERNARD MUNDY
FILED JUNE 14, 1999

**exhibit No. 6**