**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**RICHARD KLEIN,**

          **Petitioner,**        **Case No. C-1-01-794**

          **v.**                **Judge Beckwith**

**HAROLD CARTER, WARDEN,**      **Magistrate Judge Black**

          **Respondent.**

**<u>RESPONDENT'S AMENDED ANSWER/RETURN OF WRIT</u>**

The Respondent denies each of the allegations made by the Petitioner except those expressly admitted herein.

The Petitioner, Richard Klein (hereinafter "Klein"), is state prisoner number 350-022. He is presently incarcerated at the Ross Correctional Institution.

Klein has brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254.

Hereinafter, the Respondent shows cause why the writ should not be granted.

## FACTUAL BACKGROUND

The Hamilton County Court of Appeals set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Klein has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); <u>Warren v. Smith</u>, 161 F.3d 358, 360-61 (6th Cir. 1998). The facts set forth by the appellate court are:

> Defendant-appellant, Richard Joseph Klein, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of involuntary manslaughter, felonious assault, and three counts of endangering children. n1 He was convicted of those offenses following a jury trial, and the trial court sentenced him to consecutive periods of incarceration totaling thirty-one years. On appeal, Klein asserts six assignments of error. Because we find the assignments to lack merit, we affirm the judgment of the trial court.

> - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -

> n1 The indictment included charges under three separate subsections of the child-endangering statute: administering excessive corporal punishment on the victim under R.C. 2919.22(B)(3), torturing or cruelly abusing the victim under R.C. 2919.22(B)(2), and creating a substantial risk to the safety or health of the victim by violating a duty of care under R.C. 2919.22(A). The violations of subsections (B)(2) and (3) of R.C. 2919.22 were charged as felonies of the second degree, because serious physical harm was alleged. The violation of R.C. 2919.22(A) was charged as a felony of the third degree for the same reason.

> - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - -

II.    FACTS

> Sharon Richmond and her twelve-year-old son, Matthew, resided with Klein. Matthew was developmentally delayed and suffered from periodic seizures. Even though Matthew was twelve

years of age, he was only three and one-half feet tall and weighed only sixty-five pounds.

The record indicates that Matthew also suffered periods of incontinence. Prior to January 1, 1997, Klein had disciplined Matthew for incidents of incontinence by immersing the child in a tub of cold water. During the evening of January 1, 1997, Matthew suffered another incident, and Klein took him into the bathroom while Richmond remained in another room. Approximately twenty-five minutes later, Klein emerged from the bathroom and reported to Richmond that Matthew had been accidentally burned.

Neither Klein nor Richmond sought immediate medical treatment for Matthew. Instead they treated Matthew's burns with cold, wet sheets and Noxzema skin lotion. The next day, Richmond summoned paramedics when she discovered that Matthew's breathing had become rapid and shallow. Matthew was initially taken to Children's Hospital on January 2, 1997. Later that day he was transferred to Shriners Burns Hospital. He died at Shriners eleven days later.

Matthew's treating physician at Shriners, Dr. Glenn Warden, testified that Matthew had suffered third-degree burns covering seventy-four percent of his body. Warden stated that the injuries were consistent with Matthew having been immersed in twelve inches of 140-degree water for five seconds. n2 According to Dr. Warden, Matthew died of pulmonary lung damage secondary to the burns. The doctor further opined that the delay in seeking medical treatment also contributed to Matthew's death.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - -

n2 Investigating police officers measured the hot-water temperature at Klein's residence at 140 degrees.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - -

Richmond and Klein had initially told the authorities that Matthew was accidentally burned while Richmond was bathing him. They maintained that Matthew turned on the hot-water faucet when Richmond momentarily left him unattended. Later, Richmond recanted this account and told investigating officers that Matthew had suffered his injuries at Klein's hands. Armed with this account, the officers accompanied Richmond to Klein's residence. Richmond's attempts to open the front door of the

residence were to no avail because it had been nailed closed.  The officers then encountered Klein at the rear of the residence, and he was taken into custody.

Further investigation revealed that Klein had left a note for Richmond in which he claimed that he did not intend to harm Matthew and that his injuries had resulted from an accident. Klein gave the same account to investigating officers.  He stated that he had accidentally burned the child while he was cleaning him with a hose that was attached to the faucet.

Richmond ultimately entered a plea of guilty to one count of child endangering.  She was sentenced to a term of incarceration for that offense.

(Exhibit 22, Appellate Court Opinion, p. 2-4)

## STATE CONVICTION

On January 13, 1997, the Hamilton County Grand Jury issued an indictment charging Klein with one count of felonious assault, and three counts of endangering children.  (Exhibit 1)  The state subsequently dismissed that indictment and obtained a new indictment charging Klein with one count of murder, one count of involuntary manslaughter, one count of felonious assault, and three counts of endangering children.  (Exhibit 2)

A jury found Klein not guilty of murder but found him guilty of involuntary manslaughter, felonious assault, and three (3) counts of endangering children.  (Transcript ("T."), p. 700-1)  He was ordered to serve ten years for involuntary manslaughter, eight years for felonious assault, eight years for endangering children and five years for endangering children, all sentences to be served consecutively.  The court found that counts four and five of the indictment, both charging Klein with endangering children, merged for sentencing purposes.  (T., p. 729)

4

The victim was Matthew Richmond, the son of Sharon Richmond, Klein's live-in girlfriend who was also charged in Matthew's death. (T., p. 345, Exhibits 1 and 2) Mathew was twelve years old, three and one-half feet tall, and weighed about sixty-five pounds. (T., p. 350) He was mentally handicapped. He was developmentally delayed and suffered from a seizure disorder. (T., 304, 347) He communicated in one-word utterances and had difficulty staying focused in school. (T., p. 305). He had some physical limitations, but generally was very active and was one of the more physically able students at his school. (T., p. 304, 328, 347)

Matthew died from burns he received when Klein put him in a bathtub filled with scalding hot water to punish him for having a bowel movement in his pants. (T., p. 373-5) Klein and Richmond did not seek medical attention for Matthew until the following day. (T., p. 389-90) Eventually, Matthew was taken to the hospital. He had third degree burns over 75 per cent of his body. (T., p. 575) Once at the hospital, Matthew lingered for the next eleven days during which time he was administered fluids, was put on a ventilator to enable him to breathe, had incisions made through his dead skin to help him breathe better and underwent skin grafts. (T., p. 581-3) He died on January 13, 1997. The cause of death was pulmonary lung damage secondary to a 74 percent total body surface area burn. (T., p. 583-4)

Initially, Sharon Richmond told authorities that she had put Matthew in the bathtub, but eventually she told police that Klein had put him in the hot bathtub. (T., p. 390-398, 471, 526) Klein admitted to the police that he had

caused the burns. (T., p. 477, 534) He stated that he wanted the bath to be uncomfortable for Matthew in order to teach Matthew not to go in his pants. (T., p. 478, 535)

Klein filed several pre-trial motions. He filed a motion to suppress his statements. (Exhibit 3) The trial court held a hearing. The testimony at the hearing appears on pages 21-81 of the Transcript. The motion was overruled. (T., p. 81) Klein's counsel also filed a motion in limine to exclude photographs of Matthew from evidence and a motion to dismiss. (Exhibits 4 and 5) They were both overruled.

## MOTIONS FOR ACQUITTAL AND FOR NEW TRIAL

Klein filed a Motion for Acquittal and a Motion for New Trial. (Exhibits 6 and 7) The State's response is Exhibit 8. Klein's counsel filed further pleadings. (Exhibits 9 and 10) The court denied both motions. (Exhibits 11 and 12) The appeal from the motions was part of Klein's direct appeal from his convictions.

## DIRECT APPEAL

Klein's first appeal was dismissed for lack of a final appealable order because the original sentencing entry did not comply with Ohio Criminal Rule 32(B). (Exhibit 13) The trial court subsequently issued a nunc pro tunc judgment entry from which Klein appealed. (Exhibit 14)

## REINSTATED DIRECT APPEAL

Klein, represented by new counsel, appealed from the nunc pro tunc entry and raised seven assignments of error as follows:

I.      The Trial Court erred in denying the Defendant's Motion for a New Trial when the State failed to provide the Defendant with exculpatory evidence.

II.     The Defendant-Appellant received ineffective assistance of counsel.

III.    The Trial Court erred to the prejudice of the Defendant-Appellant when it overruled his motion for new trial.

IV.     The Trial Court erred to the prejudice of the Defendant-Appellant when, at the sentencing, it fashioned a sentence imposing consecutive commitments upon Defendant-Appellant on all but one count for which he was convicted.

V.      The Trial Court erred to the prejudice of the Defendant-Appellant when it denied his Crim. R. 29 motions.

VI.     The Trial Court erred to the prejudice of Defendant-Appellant by admitting gruesome slides and photographs into evidence.

VII.    The Trial Court erred to the prejudice of the Defendant-Appellant when it wrongfully included a complicity charge to the jury.

(Klein's Brief, Exhibit 15)  The State's Brief is Exhibit 16.

On September 21, 1999, Klein filed a *pro se* Motion for Leave to File Late Amended and Supplemental Brief.  (Exhibit 17)  He filed an Amended and Supplemental Brief on the same date.  (Exhibit 18)  The court overruled the motion for leave to file a late amended and supplemental brief and ordered the brief stricken from the record.  (Exhibit 19)  Klein filed a motion asking the court to reconsider it.  (Exhibit 20)  The court denied his motion.  (Exhibit 21)

On December 3, 1999, the Hamilton County Court of Appeals issued its Opinion affirming Klein's convictions.  (Exhibit 22)

On January 11, 2000, Klein filed another Amended and Supplemental

Brief in the appellate court.  (Exhibit 23)  The court struck the brief for failing

to comply with the Rules of Appellate Procedure.  (Exhibit 24)

Klein did not appeal to the Ohio Supreme Court.

## STATE HABEAS CORPUS

On August 2, 2000, Klein filed an application for a writ of habeas corpus

as an original action in the Warren County Court of Appeals.  (Exhibit 25)

Klein's application set forth three grounds for relief:

    I.      The Trial Court failed to file a judgment of conviction leaving Appellate Court without jurisdiction to review case, causing dismissal of appeal, and violating Petitioner's due process and speedy trial rights.

    II.    The Trial Court was without jurisdiction to place of record a nunc pro tunc judgment of conviction after a 19 month delay and the nunc pro tunc order is an invalid judgment.

    III.    The Trial Court is divest of jurisdiction to impose sentence.

Respondent filed a motion to dismiss.  (Exhibit 26)  Klein's memorandum in

opposition is Exhibit 27.  On October 6, 2000, the Court of Appeals granted

Respondent's motion to dismiss.  (Exhibit 28)

Klein appealed to the Ohio Supreme Court asserting two propositions of

law as follows:

    I.      When a court exceeds its power in entering a purported nunc pro tunc order that order is invalid.

    II.    Delay of 18 months between notice of appeal and affirmance of judgment by state court violates due process and Sixth Amendment speedy trial rights.

(Exhibit 29, Klein's Brief)  Respondent filed a motion to strike Klein's brief

because he had failed to serve Respondent as required by the Supreme Court's

Rules. (Exhibit 30) Klein filed a motion to overrule Appellee's motion to strike his brief. (Exhibit 31) Once again, it was necessary for Respondent to file a motion to strike Klein's motion because he had not served Respondent. (Exhibit 32) The State eventually filed its Merit Brief on February 26, 2001. (Exhibit 33) Klein's Reply Brief is Exhibit 34. In an Entry filed March 21, 2001, the Supreme Court dismissed the case *sua sponte*. (Exhibit 35)

## RULE 26(B) APPLICATION FOR REOPENING

On January 2, 2001, Klein filed a Motion for Delayed Reopening of his Appeal. (Exhibit 36) He filed an appeal brief on the same date in which he asserted the following assignments of error:

I.   The Trial Court erred in denying Klein's motion for new trial when the State failed to provide defense with exculpatory evidence, in violation of Klein's due process, confrontation, and compulsory process rights.

II.  The Trial Court erred when the State presented false misleading (sic) evidence through police testimony which prejudicially effected the defense in violation of due process rights.

III. The Trial Court erred when the State presented Klein's alleged confession to the jury in violation of Fourth, Fifth, and Fourteenth Amendment due process rights.

IV.  The Trial Court erred when the State presented highly inflammatory, inadmissible, prejudicial, opinion testimony of police in violation of Klein's due process rights.

V.   The Trial Court erred when the State failed to prove beyond a reasonable doubt the essential element of reckless (sic) in the charges of endangering and knowingly in the charge of felonious assault in violation of Klein's due process rights.

VI.  The Trial Court erred when the State presented highly inflammatory inadmissible hearsay testimony in violation of due process rights.

VII.    The Trial Court erred when it sentenced Klein to maximum consecutive terms of incarceration for four offences (sic) arising out of a single incident and consecutive sentences exceeding the maximum prison term allowed by Division (A) for the most serious offense R.C. 2953.085(C).

VIII.    Trial counsel was ineffective by his failure to make appropriate objections, failure to challenge prejudicial inadmissible evidence, failure to investigate, failure to properly cross-examine witnesses, and failed to assert other rights in violation of the Sixth and Fourteenth Amendments.

(Exhibit 37, Brief)  The State's amended memorandum in opposition is Exhibit 38.  On July 27, 2001, the court denied Klein's Rule 26(B) Application, finding that it was untimely and that he had failed to show good cause for the delay in filing.[1]  (Exhibit 39)

Klein appealed the denial of the Rule 26(B) Application to the Ohio Supreme Court.  (Exhibit 40)  He asserted ten propositions of law as follows:

I.    Is double jeopardy, due process and equal protection of the law denied when a court imposes five maximum consecutive sentences R.C. 2953.08A(1), ". . . arising out of a single incident. . ." R.C. 2953.08A(1)(b); " . . .and the consecutive sentences exceed the maximum prison term allowed for the most serious offense. . ." (sic)

II.    Prisoners have a constitutional right of access to the courts; the state nor its officers may abridge nor impair this right. (sic)

III.    Defendants have a right to an advocate in mandatory appeals; counsel has an ethical responsibility of constitutional dimension to argue zealously those issues contained of record, and to raise arguable issues consistent with the law.

---

[1] Ohio Appellate Rule 26(B) provides that an application for reopening is to be filed within ninety days from the journalization of the appellate judgment sought to be reopened unless the applicant shows good cause for filing at a later time.

IV.  The court of appeals abused its discretion when it struck appellant's pro se brief which was, in fact, timely filed denying due process, access to the courts and an adequate meaningful review on appeal in violation of federal and state Constitutional rights.

V.  Due process requires the prosecution to disclose exculpatory evidence to defense when it is material to guilt or punishment.

VI.  A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.

VII.  If the totality of the circumstances reveals that the statement was the direct result of the exploitation of the Fourth Amendment violation, the statement and any additional evidence thereafter is inadmissible.

VIII.  Prosecutor's duty is . . . to refrain from improper methods calculated to produce wrongful convictions.

IX.   The due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

X.  Trial counsel has an ethical responsibility of constitutional dimension to zealously represent his client's interests (1A.B.A. Standards [1982 Supp.] No. 4-4.1), consistent with is a duty to conduct reasonable investigation, present pertinent exculpatory evidence, conduct appropriate cross-examination, and to assert any other rights defendant may possess.  (sic)

(Exhibit 41, Memorandum in Support of Jurisdiction)   The State's Memorandum in Response is Exhibit 42.   On October 24, 2001, the court dismissed the appeal.  (Exhibit 43)

## FEDERAL HABEAS CORPUS

On January 11, 2001, Klein filed his first habeas petition in this Court under Case No. C-1-01-10. That petition was dismissed without prejudice for failure to exhaust, and the statute of limitations was tolled. (Exhibit 44)

On November 16, 2001, Klein filed a new habeas petition in the instant case. (R. 1) On February 11, 2003, he filed an amended petition. (R. 15) On June 10, 2003, he filed a revised amended petition. (R. 27) On July 21, 2004, he filed another amended petition, his fourth petition, third amendment, which is the current petition pending before this Court. (R. 53) His grounds for relief are as follows:

> Ground One: The First District Court of Appeals unreasonably struck Petitioner's timely filed pro se appeal brief and denied replacement appellate counsel which denied Petitioner due process, equal protection, an adequate and meaningful review, right of access to the courts, and effective assistance of appellate counsel.

> Ground Two: Appellate counsel and the clerk of courts failed to give proper notice of appellate court's December 3, 1999, judgment entry affirming conviction. The court of appeals, in denying Petitioner access to the courts, denied Petitioner federally mandated due process, equal protection, an adequate and meaningful appeal, and effective assistance of appellate counsel.

> Ground Three: The Court of Appeals, in denying Petitioner's application to reopen pursuant to App.R. 26(B), denied Petitioner of clearly established federal Constitutional rights of due process, equal protection, effective assistance of appellate counsel, and the right of access to the courts.

> Ground Four: Petitioner was denied due process, equal protection and effective assistance of appellate counsel on an appeal as of right.

Ground Five:   Petitioner was denied due process when the prosecutors failed to disclose three (3) forms of exculpatory evidence.

Ground Six:   The state knowingly presented false, perjured and vouching testimony in violation of Petitioner's due process rights.

Ground Seven:  The State violated Petitioner's Fifth and Fourteenth Amendment rights when it presented at trial detectives' testimony of alleged statements made by Petitioner during interrogation, and Petitioner was denied a fair hearing and reliable determination of voluntariness.   Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 1781 (1964).

Ground Eight of Petitioner's former petitions has been omitted from the instant petition.

Ground Nine:   Detectives made an unlawful warrantless arrest without probable cause, and prosecutors presented alleged admission stemming from this unlawful arrest at trial in violation of Petitioner's Fourth and Fourteenth Amendment rights.

Ground Ten:  Insufficiency of the evidence.

Ground Eleven:  Ineffective Assistance of Trial Counsel.

Ground Twelve:  The State took two dramatically opposed positions on evidence against Petitioner and co-defendant Richmond in violation of Petitioner's due process rights.

Ground Thirteen:  By imposing multiple punishments for what is indisputably one offense, the trial court violated the Fifth Amendment Double Jeopardy Clause.

Ground Fourteen:   Unjustified and lengthy delay between the finding of guilty and court of appeals' resolution of appeal denied Petitioner due process and speedy trial and appeal rights.

Ground Fifteen:  Petitioner was denied due process on appeal as of right to the Ohio Supreme Court when the court dismissed Petitioner's timely filed merit brief.

## ARGUMENT

### I.    DENIAL OF ACCESS TO COURTS

As a preliminary matter, Respondent notes that in many of Klein's grounds for relief (grounds one, two, and three) he claims that he was denied access to the courts.  He cannot get relief on this claim in a federal habeas action.

A federal district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. §2254(a).

Denial of access to the courts is not a claim that is cognizable in habeas corpus because it does not challenge the fact or duration of a petitioner's custody.  Claims relating to a denial of access to the courts are cognizable in a §1983 action.

### II.    PROCEDURAL DEFAULT

With the possible exception of the claims in which Klein complains about procedural decisions made in state court with regard to his Rule 26(B) action and his state habeas action (Grounds Three and Fifteen), Klein's claims are procedurally defaulted.  The claims in which he complains about those various procedural decisions are not cognizable in a habeas corpus action.  See discussion below.

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. §2254, he must exhaust his state court remedies by

14

fairly presenting all of his constitutional claims to the highest state court, and to all appropriate state courts prior to that, so that the state is given the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  28 U.S.C. §2254 (b) and (c); O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, 1731 (1999); Duncan v. Henry, 513 U.S. 364 (1995); Lyons v. Stovall, 188 F.3d 327, 331 (6th Cir. 1999).  A habeas corpus petition which contains any issue which is not exhausted must be dismissed.  Coleman v. Thompson, 501 U.S. 772, 731 (1991);  Hannah v. Conley, 49 F.3d 1193, 1195 (6th Cir. 1995).

Procedural default occurs when the petitioner fails to fairly present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error.  A federal habeas court is barred from hearing issues that could have been raised and litigated in the state courts, but were not, and which now may not be presented to those state courts due to procedural default or waiver.  Gray v. Netherland, 518 U.S. 152, 162 (1996). The habeas petitioner has the burden of overcoming this bar by showing cause for the default and actual prejudice.  Sawyer v. Whitley, 505 U.S. 333, 338 (1992).  Normally, a federal habeas court will consider default in the state courts to have occurred if the last "reasoned state judgment rejecting a federal claim" makes a plain statement of such state procedural default.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  No such statement is necessary if the

relevant issues were not presented at all to the state court(s).  <u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989).

Before an alleged federal constitutional error may be reviewed in federal habeas corpus, a petitioner must exhaust his state court remedies by affording the state courts "a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary."  <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257 (1986).  In order to meet the requirements for exhaustion, "the federal claim [must be] fairly presented to the state courts . . ."  <u>Duncan v. Henry</u>, 513 U.S. at 365.

A federal law or constitutional issue is fairly presented to the state courts when:

1) It sets forth all essential factual allegations asserted in the federal petition, and

2) It places before the state courts essentially the same legal doctrine asserted in the federal petition.

<u>Morgan v. Jackson</u>, 869 F.2d 682, 684 (2nd Cir. 1989), *cert denied*, 493 U.S. 920 (1989).

The federal issue as presented in the state court must rely on pertinent federal cases employing constitutional analysis, or state cases using a constitutional analysis in similar factual situations, or must specifically assert particular constitutional claims.  <u>Pierson v. O'Leary</u>, 959 F.2d 1385, 1393 (7th Cir. 1992).

Failure to fairly present the federal claim, especially if the petitioner is now barred from returning to the state courts with it, waives the claim for the

purposes of federal habeas corpus review.  Gray v. Netherland, 518 U.S. at 162.

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule.  Reynolds v. Berry, 146 F.3d 345, 347 (6th Cir. 1998).  First, the Court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.  Second, the Court must determine whether the state courts actually enforced the state sanction.  Third, it must be determined whether the state procedural rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.  Finally, if the Court has determined that a state procedural rule was violated and that the rule was an adequate and independent state ground, then petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  The habeas petitioner bears the burden of overcoming the procedural bar by showing cause and actual prejudice.

In order to show cause, petitioner must prove "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule."  Coleman v. Thompson, 501 U.S. at 722, 753 (1991); Shorter v. Ohio Dept. of Rehab. And Corrections, 180 F.3d 723, 725 (6th Cir. 1999).  Prejudice exists where, but for error, the defendant (petitioner) "might

not have been convicted, " <u>Reed v. Ross</u>, 486 U.S. 1 (1984), or the errors undermined the accuracy of guilt, <u>Smith v. Murray</u>, 477 U.S. 527, 538-539 (1986).  In <u>Coleman</u>, 501 U.S. at 748, the Court stated that the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct "a fundamental miscarriage of justice."  A fundamental miscarriage of justice is usually interpreted to mean that an innocent person was convicted.  <u>Sawyer v. Whitley</u>, 505 U.S. at 339, n. 6.

### A.    Claims that either were or could have been raised on direct appeal

### 1.    Claims that were raised on direct appeal

Any claims that Klein raised on direct appeal are procedurally defaulted because Klein did not file an appeal to the Ohio Supreme Court.  He claims that he was not notified of the appellate court judgment in time to file a timely appeal.  According to him, he was notified of the decision on February 27, 2000, after the 45 days during which he could have filed a timely notice of appeal in the Supreme Court expired.  (Petition, p. 4)  However, if he had diligently prepared and filed a motion for a delayed appeal as soon as possible thereafter, the motion might have been granted.

He can still file a motion for a delayed appeal, but he has refused to do so.  When Respondent filed a motion to dismiss this case for failure to exhaust because Klein still has the option of filing said motion in the Ohio Supreme Court, Klein claimed that he did not need to do so because he had presented his claims in other pleadings.  (See R. 10 and 11)  Although true that he did raise the same claims in other proceedings, the claims cannot be considered in

those proceedings.  Raising claims in a proceeding in which they will not be considered based on a state's procedural rules does not present them to the state courts in the manner required by state law and does not properly exhaust the claims.  Castille v. Peoples, 489 U.S. 346 (1989); Drake v. Wyrick, 640 F.2d 912 (8th Cir. 1981).

### a.    Rule 26(B) Application Claims

Klein presented many of his direct appeal claims in his Rule 26(B) Application, but the only claims that can be heard in a Rule 26(B) application are claims alleging "ineffective assistance of appellate counsel."[2]  Klein's direct appeal claims cannot be considered in a Rule 26(B) proceeding, and the claims are not exhausted because Klein did not present them to the state courts in the manner required by state law.

In the event Klein argues that he was raising the underlying claims as ineffective assistance of counsel claims, the underlying claims are nonetheless procedurally defaulted.  A procedurally defaulted claims is not resurrected for a merits review simply because it is raised as a basis for ineffective assistance of counsel.  Lott v. Coyle, 261 F.3d 594 (6th Cir. 2001).  In Lott, the petitioner procedurally defaulted a claim of error with respect to a jury waiver because he

---

[2]    Rule 26(B)(1) of the Ohio Rules of Appellate Procedure states that "[a] defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence based on a claim of ineffective assistance of appellate counsel."

failed to raise it on direct appeal.  He later asserted the jury waiver claim in an application to reopen his direct appeal, claiming that his appellate counsel was ineffective for failing to raise the claim on direct appeal.  In his subsequent habeas case, he argued that the claim was preserved for a merits review.  The Sixth Circuit rejected his argument:

> First, that a court, in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error for purposes of determining the existence of <u>Strickland</u> prejudice is not dispositive of the question whether a procedurally defaulted claim has been resurrected.  As the district court correctly observed:
>
> > The fact that the state court engaged in that analysis, as they must under <u>Strickland</u>, does not, however, serve as evidence that those courts excused the procedural default.  To hold otherwise would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel.

<u>Lott</u>, 261 F.3d at 612.

Respondent would further point out that any claims raised Klein's Rule 26(B) Application are procedurally defaulted anyway.  The state court refused to consider the merits of the claims because the 26(B) Application was untimely, finding that Klein had failed to show good cause for the untimely filing.  (Exhibit 39)

### b.    State Habeas Petition Claims

Klein raised another of his direct appeal claims in his state habeas petition, but the petition was dismissed precisely because Klein had an adequate remedy by way of direct appeal.  (Exhibit 28, p. 3)  In Ohio, a writ of

habeas corpus is a narrow remedy.  It is generally available only to challenge the jurisdiction of the trial court and is available only of the petitioner is entitled to immediate release from confinement.    State ex rel. Jackson v. McFaul (1995), 73 Ohio St.3d 185; Wireman v. Ohio Adult Parole Authority (1988), 38 Ohio St.3d 322; R. C. 2725.01, *et. seq.*  The Ohio Supreme Court has recognized that habeas may be used to challenge non-jurisdictional errors, but only if there is no other adequate legal remedy.    State ex rel. Jackson v. McFaul (1995), 73 Ohio St.3d.

Most errors that occur in criminal proceedings can be challenged on direct appeal.  If a direct appeal is or was available, relief in habeas corpus is not available.  Davie v. Edwards (1997), 80 Ohio St.3d 170.  As long as the petitioner had adequate legal remedies for the issues of which he complains through direct appeal and petitions for post-conviction relief, the issues may not be addressed in a petition for habeas corpus.  Cornell v. Schotten (1994), 69 Ohio St.3d 466.

In Klein's state habeas petition, he tried to claim that he was attacking the jurisdiction of the trial court.  However, as the state appellate court found, the Hamilton County Court of Common Pleas had jurisdiction to convict him for the offenses of involuntary manslaughter, felonious assault and endangering children.  (Exhibit 28, p. 3)

Respondent would further point out that any claims raised Klein's state habeas petition are procedurally defaulted anyway.  When Klein appealed the denial of the state habeas petition to the Ohio Supreme Court, he did not serve

the opposing party as required by the court's rules.  Rule XIV, Section 2(A) of the Rules of Practice of the Supreme Court of Ohio.  However, he stated in his brief filed with the court that he had served all parties by mail on January 16, 2001.  (Exhibit 29, p. 13)  When undersigned counsel (who represented Respondent in the state habeas action) learned that a brief had been filed (by calling the clerk of courts), she filed a motion to strike the brief for Klein's failure to serve it.  (Exhibit 30)  Klein responded to the motion with a myriad of excuses as to why the brief had not been served.  (Exhibit 31)  Since he had previously asserted to the court that the brief was mailed to all parties on January 16, 2001, he had obviously lied to the court.  The court *sua sponte* dismissed the appeal and refused to consider the merits of Klein's claim. (Exhibit 35)

Klein did not present his direct appeal claims to the state court in the manner required by state law, and those claims are not preserved for federal habeas review.

As indicated above, Klein can still file a motion for a delayed appeal.  Had he filed the motion as soon as possible after being notified of the appellate court decision, the motion might have been granted.  However, at this late date (four and one half years after the appellate judgment of conviction), it is unlikely that the motion would be granted, and the claims would be procedurally defaulted anyway.

### c.    Specific claims

### I.    Fifth Ground for Relief

In Klein's Fifth Ground for relief, he claims that the State failed to disclose certain exculpatory evidence.  He asserts that there are three pieces of exculpatory evidence that allegedly were not disclosed by the State.[3]  This claim was raised in his direct appeal, both by his attorney in the initial brief and by Klein in his *pro se* amended and supplemental brief which was stricken.  The only way to properly exhaust this claim is to raise it in a direct appeal to the Ohio Supreme Court.  Klein did not do that, and it is procedurally defaulted. (Klein raised the claim in his Rule 26(B) Application, where it cannot be considered.)

### II.    Sixth Ground for Relief

In Klein's Sixth Ground for Relief, he claims that the State presented perjured vouching testimony.  The claim was raised in Klein's *pro se* amended and supplemental brief filed in his direct appeal.  The only way to properly exhaust the claim is to raise it in a direct appeal to the Ohio Supreme Court. Klein did not do so, and it is procedurally defaulted.  (Klein raised the claim in his Rule 26(B) Application where it cannot be considered.)

---

[3] One of his allegations involves the testimony and failure to obtain an expert report from Dr. Glenn Warden, to whom Klein keeps referring as the State's expert.  (Petition, p. 49)  Although Dr. Warden probably could have been qualified as an expert, he did not testify as an expert witness but as the treating physician.  He was the physician who treated Matthew Richmond for his burns.  (T., p. 563-5)

### III.    Tenth Ground for Relief

In his Tenth Ground for Relief, Klein claims that there was insufficient evidence to convict him.  This claim was raised in Klein's direct appeal, both by his attorney in his initial brief and by Klein in his *pro se* amended and supplemental brief.  The only way to properly exhaust the claim is to raise it in a direct appeal to the Ohio Supreme Court.  Klein did not do so, and it is procedurally defaulted.  (Klein raised the claim in his Rule 26(B) Application where it cannot be considered.)

### IV.    Eleventh Ground for Relief

In his Eleventh Ground for Relief, Klein asserts various claims of ineffective assistance of trial counsel.  Many of the various claims were raised in Klein's direct appeal either in his attorney's brief or by Klein in his *pro se* amended and supplemental brief.  The only way to properly exhaust the claims is to raise them in a direct appeal to the Ohio Supreme Court.  Klein did not do so, and the claims are procedurally defaulted.  (Klein raised many of the them in his Rule 26(B) Application, where they cannot be considered.)

### V.    Fourteenth Ground for Relief

In Klein's Fourteenth Ground for Relief, he claims there was an inordinate delay between his sentencing and his appeal (because of the initial dismissal of his appeal due the trial court's failure to file a final appealable order and the subsequent nunc pro tunc order).  See Exhibits 13 and 14.  Klein raised this claim in his *pro se* amended and supplemental brief in his direct appeal.  The only way to properly exhaust the claim is to raise it in a direct

appeal to the Ohio Supreme Court.  Klein did not do so, and the claim is procedurally defaulted.

### 2.    Claims that could have been raised on direct appeal

Any claims that could have been raised in the direct appeal but were not are procedurally defaulted.

In Ohio, a claim must be presented at the first opportunity to do so.  The failure to raise the claim at the first opportunity generally waives it for further review.   See, e.g., Berger v. Berger (1981), 3 Ohio App.3d 125, 443 N.E.2d 1375.  Under Ohio law, "fair presentation" of a claim generally requires that the claim be brought to the attention of the courts on direct appeal.  Thus, when a claim was, or could have been, raised on direct appeal, it is barred under the doctrine of res judicata.  State v. Perry, 10 Ohio St.2d 175 (1967).

The "Perry Rule"/res judicata bar has been explicitly recognized by the Sixth Circuit numerous times as an adequate basis for a procedural default. Norris v. Schotten, 146 F.3d 314 (6th Cir. 1998);  Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998);  Rust v. Zent, 17 F.3d 155, 161 (6th Cir. 1994).  See also Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) ("Because Rust failed to raise his constitutional issues in his direct appeal, and because Rust's procedural default constituted an 'adequate and  independent' state ground on which the state relied to foreclose judicial review of his constitutional claims, we may not consider Rust's constitutional claims unless he can show cause to excuse his failure to present the claims in state court and actual prejudice to his defense at trial or on appeal.").

The exhaustion requirement is satisfied if it is clear that claims are procedurally barred under state law. Gray v. Netherland, 518 U.S. 152, 160-161 (1996). In the Sixth Circuit, a claim is exhausted because it is barred under Ohio law if it is based on the record and was not raised on direct appeal. Caldwell v. Russell, 181 F.3d 731, 739, fn. 8 (6th Cir. 1999) ("Caldwell has exhausted his available state court remedies related to his evidence sufficiency contention, because he cannot now seek post-conviction relief in the Ohio Courts for any claim which he could have asserted in his prior direct appeal.").

### a. Specific claims

### I. First Ground for Relief

In Klein's first ground for relief, he claims that the court struck his timely filed brief.[4] (He is referring to Exhibit 18, his Amended and Supplemental Brief

---

[4] Klein claims the court originally granted his motion to file a supplemental brief. (Respondent does not have a copy of that order, but has attached the appellate court's docket sheet as Exhibit 45) According to Klein, the amended brief was to be filed by September 7, 1999. The brief was filed on September 21, 1999. (Exhibit 18) His motion for leave to file it was denied and the brief was stricken, without explanation. (Exhibit 19) Klein claims his brief was timely filed and blames the prison officials for its being late. That contention is completely without merit. First of all, Klein claims that he gave the brief to the prison officials for mailing on September 7, 1999, the day it was due. The brief was already late then. It obviously could not have gotten to the court on time or even been mailed on September 7, 1999. Whenever an inmate mails an item that requires extra postage, he or she fills out a cash withdrawal slip which is sent to the prison cashier who subtracts the postage from his account and then forwards the envelope to the prison mail room for mailing the next day. Klein's brief could not possibly have been mailed before September 8, 1999, at which time it was already late. Further, Ohio does not recognize the prison "mailbox rule." State ex rel. Tyler v. Alexander, (1990) 52 Ohio St.3d 84. See Adams v. Lemaster, 223 F.3d 1177 (10th Cir. 2000), which holds that the federal mailbox rule is a procedural rule, not a constitutional right.) Second, Klein clearly knew the brief was late because he filed a "Motion for leave to file

filed in the appellate court in his direct appeal.)  This claim should have been presented to the Ohio Supreme Court in a direct appeal from the appellate judgment affirming his convictions.  Instead, Klein raised it in his Rule 26(B) proceeding, where it cannot be considered.  It is procedurally defaulted.

## II.    Second Ground for Relief

His Second Ground for Relief, in which he complains about the court's failure to give him notice of its judgment affirming his convictions, should have been raised in the Ohio Supreme Court.  The claim has no merit anyway, because the court sends copies of its decisions and orders to a party's attorney of record, not directly to the party.

Klein also alleged that his appellate attorney was ineffective for failing to give him notice of judgment.  That claim will be discussed at p. 28 below in subsection II(B), "Claims that were properly raised in a Rule 26(B) Application, *i.e.*, Ineffective Assistance of Appellate Counsel Claims."

## III.    Seventh Ground for Relief

In his Seventh Ground for Relief, Klein claims that the trial court erred by admitting his confession into evidence.  The claim should have been raised in the direct appeal, but was not.  Instead, Klein raised it in his Rule 26(B) Application, where it cannot be considered.  Therefore, it is procedurally defaulted.

In his *pro se* amended and supplemental brief filed in his direct appeal, Klein claimed that his trial attorney was ineffective for allowing the confession

---

*late* Amended and Supplemental Brief" (emphasis added) on September 21, 1999, the same date he filed the amended brief.  (Exhibit 17)

to be admitted.  (Trial counsel filed a motion to suppress the confession, which was overruled, but Klein claimed he was ineffective for not raising the right arguments at the suppression hearing.)  The ineffective assistance of counsel claim is procedurally defaulted because Klein did not appeal it to the Ohio Supreme Court.

A procedurally defaulted claim is not resurrected for a merits review simply because it is raised as a basis for ineffective assistance of counsel. Lott v. Coyle, 261 F.3d 594 (6ᵗʰ Cir. 2001).  In Lott, the petitioner procedurally defaulted a claim of error with respect to a jury waiver because he failed to raise it on direct appeal.  He later asserted the jury waiver claim in an application to reopen his direct appeal, claiming that his appellate counsel was ineffective for failing to raise the claim on direct appeal.  In his subsequent habeas case, he argued that the claim was preserved for a merits review.  The Sixth Circuit rejected his argument:

> First, that a court, in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error for purposes of determining the existence of Strickland prejudice is not dispositive of the question whether a procedurally defaulted claim has been resurrected.  As the district court correctly observed:
>
> > The fact that the state court engaged in that analysis, as they must under Strickland, does not, however, serve as evidence that those courts excused the procedural default.  To hold otherwise would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel.

<u>Lott</u>, 261 F.3d at 612.

## V.    Ninth Ground for Relief

In his Ninth Ground for Relief, Klein claims that his Fourth Amendment rights were violated by his warrantless arrest.  The claim could have been raised in Klein's direct appeal but was not.  Therefore it is procedurally defaulted.

Claims alleging Fourth Amendment violations are not cognizable in habeas corpus.  <u>Stone v. Powell</u>, 428 U.S. 465 (1976).  Klein is actually arguing about the admission of his statements into evidence, which is the same claim raised in his Seventh Ground for Relief.

## VI.    Eleventh Ground for Relief

In his Eleventh Ground for Relief, Klein claims that his trial counsel was ineffective for various reasons.  Many of those specific claims were raised in his direct appeal, either by Klein's attorney in his brief or by Klein in his *pro se* amended and supplemental Brief.  Those claims are procedurally defaulted because Klein failed to appeal to the Ohio Supreme Court.

The specific ineffective assistance of trial counsel claims that were not raised in the direct appeal, for example, failure to object during closing argument and failing to conduct an investigation into the cause of (Matthew's) death, are procedurally defaulted because they could have been raised in the direct appeal.

## VII.   Twelfth Ground for Relief

In his Twelfth Ground for Relief, Klein complains that the State took two dramatically opposed positions on evidence against himself and his co-defendant, Sharon Richmond.   This claim could have been raised in Klein's direct appeal, but was not.   Therefore, it is procedurally defaulted.

## VIII.  Thirteenth Ground for Relief

In his Thirteenth Ground for Relief, Klein complains that the trial court imposed consecutive sentences in violation of right to be from multiple punishments under the Double Jeopardy Clause.   This claim could have been raised on direct appeal but was not.   Therefore, it is procedurally defaulted.

In the appeal brief filed by Klein's attorney, he argued that the trial court's imposition of consecutive sentences was error under state law but he did not raise it as a federal constitutional claim.   Therefore, it is procedurally defaulted.

If this Court finds that the claim was raised as a federal constitutional claim, it is procedurally defaulted nonetheless because Klein did not appeal to the Ohio Supreme Court.

### B.   Claims that were properly raised in a Rule 26(B) Application, *i.e.*, Ineffective Assistance of Appellate Counsel Claims

In Klein's Fourth Ground for Relief, he claims that his appellate attorney was ineffective for various reasons.

Klein presented this claim in a Rule 26(B) Application, which is the proper forum in which to raise the claim.  (In fact, this claim is the only claim

that can be properly raised in a Rule 26(B) Application. See Ohio App. R. 26[B][1].) Nonetheless, the claims are procedurally defaulted because the state court dismissed the application as untimely and found that Klein had failed to show good cause for his untimely filing. The Sixth Circuit has ruled that Ohio Appellate Rule 26(B) is an adequate and independent state procedural bar which forecloses federal habeas review of claims presented in that action if the Rule 26(B) Application is dismissed by the state court as untimely. Monzo v. Edwards, 281 F.3d 568 (6th Cir. 2002).

Klein claims that he was not notified of the appellate decision affirming his convictions until shortly before the 90-day filing deadline expired and implies that, therefore, he could not file the 26(B) application on time. If true, he should have prepared an application which complied with the rules and promptly filed it explaining the reason for the delay. Instead, he delayed another 90 days and then, according to him, tried to file a Rule 26(B) application which did not comply with Ohio's rules and was rejected sometime in May of 2000.

Under his second ground for relief (R. 53, Amended Petition, p. 8-10), Klein complains that the reason for his failure to comply with the rules was his indigence as it related to the cost of copying and mailing his application. He argues that the court should have taken his application and made the necessary copies for him, citing Ohio Crim. R. 32(B)(3)(c), which states that if the defendant is unable to pay the costs of documents necessary to an appeal, the documents will be provided. Klein's reliance on Rule 32 is misplaced. The

rule refers to a defendant's first appeal as of right following a conviction, not later discretionary appeals such as an appeal to the Ohio Supreme Court or a Rule 26(B) proceeding.  Subsections (B)(1) and (B)(2) of Rule 32 proscribe the trial court's responsibilities "After imposing sentence in a serious offense." Subsection (B)(3) refers to "a right to appeal or a right to seek leave to appeal...under division (B)(1) or (B)(2) of this rule."

Even after the appellate court rejected his Rule 26(B) Application for his failure to comply with the court's rules, Klein delayed another eight months before he filed a Rule 26(B) Application that complied with Ohio's rules.  In the meantime, he filed and prosecuted his state habeas petition in which he raised a claim that could not even be heard in that action.  (Exhibit 25, state habeas petition filed August 2, 2000)   Instead of wasting his resources on a state habeas petition (which has no filing deadline), he should have diligently worked on preparing a Rule 26(B) Application which complied with Ohio's rules.  Had he made diligent efforts to file the application promptly, the court might have found good cause for his untimeliness.  As it was, however, he was simply not diligent, and the court did not excuse his failure to file timely.

**III.   Non-cognizable claims – Third and  Fifteenth Grounds for Relief**

In his Third Ground for Relief, Klein complains that the state refused to review the claims in his Rule 26(B) Application.  The Application was dismissed by the state court as untimely.

In his Fifteenth Ground for Relief, he complains that the Ohio Supreme Court refused to consider his appeal of his state habeas case.  In that case,

Klein failed to serve the opposing party (Respondent, who was represented by undersigned counsel) with a copy of his brief.  His brief contained a certificate of service, which he signed, in which he asserted to the court that he had served "all parties."  (Exhibit 29, p. 13)  When undersigned counsel learned that a brief had been filed (by calling the clerk of courts), she filed a motion to strike the brief.  (Exhibit 30)  Klein responded to the motion with a myriad of excuses as to why the brief had not been served.  (Exhibit 31)  Since he had previously asserted to the court that the brief was served on all parties, he had obviously lied to the court.  The court *sua sponte* dismissed the appeal and refused to consider the merits of Klein's claim.

Klein is asking this Court to review decisions made by the Ohio courts based on Ohio law.  Federal habeas relief is not available for errors of state law as "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).  Accordingly, alleged errors involving a state court's interpretation of its own procedural rules are not cognizable in federal habeas corpus review.  Simpson v. Jones, 238 F.3d 399, 406-7 (6th Cir. 2000); Allen v. Morris, 845 F.2d 610, 614 (6th 1988).  As the Sixth Circuit explained, in Oviedo v. Jago:

> Whether or not the [state court] complied with the procedural requirements of [state] law is not a matter for this court to decide on a petition for habeas corpus relief.  The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure.

809 F.2d 326, 328 (6th Cir. 1987); see also Johns v. The Supreme Court of Ohio, 753 F.2d 524, 527 (6th Cir. 1985).

These claims lie beyond the scope of federal habeas review as they involve the application of Ohio's procedural rules. They are not cognizable in habeas corpus as they do not directly attack Klein's convictions, but the state court's procedures.

In <u>Kirby v. Dutton</u>, 794 F.2d 245 (6th Cir. 1986), the Sixth Circuit reasoned that habeas corpus, under 28 U.S.C. §2254, is only available to challenge the constitutionality of a petitioner's detention. Id., at 246. Building upon that premise, the Sixth Circuit concluded that claims of constitutional errors occurring during state collateral proceedings are not cognizable under §2254, as long as those claims address collateral matters and not the underlying state conviction giving rise to the petitioner's incarceration. <u>Id.</u>, at 247.

A federal habeas court cannot grant habeas corpus relief "to correct alleged errors in state (habeas) proceedings." <u>Trevino v. Johnson</u>, 168 F.3d 173 (5th Cir). Errors in state post-conviction proceedings will not, in and of themselves, entitle at petitioner to federal habeas relief. Morris v. Cain, 186 F.3d 581 (5th Cir. 1999). Due process challenges to state habeas proceedings necessarily fail "because infirmities in state habeas proceedings do not constitute grounds for relief in federal court." <u>Hallmark v. Johnson</u>, 118 F.3d 1073 (5th Cir. 1997).

Petitioner's claim that he was denied due process and equal protection in state post-conviction proceedings is not cognizable in federal habeas corpus. Federal habeas corpus permits a petitioner to challenge a petitioner's custody

upon the basis that the detention is in violation of the Constitution, laws, or treaties of the United States.  28 U. S. C. §2254(a).  The Sixth Circuit has held that an allegation of a denial of due process or equal protection in state post-conviction proceedings is not related to the issue of the petitioner's custody. Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986);  see also Roe v. Baker, 316 F.3d 557, 571-2 (6th Cir. 2002).  Moreover, "error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief."  Alley v. Bell, 307 F.3d 380, 387 (6th Cir. 2002)(citing Kirby v. Dutton, 794 F.2d at 247).

Federal courts have repeatedly held in many contexts that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 749 (1991); see also Simpson v. Jones, 238 F.3d 399, 406 (6th Cir. 2000).  Thus the procedural default doctrine is a federal doctrine and there is no absolute federal due process right to have a claim heard on the merits in a state court when the person with the claim has failed to abide by appropriate state rules for presenting such a claim.

The United States Supreme Court has never held that the Constitution is violated when a court applies time limits and filing deadlines to its procedures. In fact, the Supreme Court itself imposes a 90-day filing deadline for filing appeals and/or petitions seeking certiorari review.  Also, in federal court

convicted defendants have ten days to file an appeal to the circuit courts. Further, there is a statute of limitations that applies to federal habeas corpus actions. Without time limits and filing deadlines, convicted prisoners could file any action whenever they felt like it, years after a conviction, which would completely abrogate a court's interest in the finality of its judgments.

The Sixth Circuit has ruled that Ohio Rule 26(B) is an adequate and independent state procedural bar which forecloses federal habeas review of constitutional claims presented in that action if the Rule 26(B) Application is dismissed by the state court as untimely. <u>Monzo v. Edwards</u>, 281 F.3d 568 (6th Cir. 2002). Obviously, a habeas petitioner's due process rights are not violated if the state appellate court dismisses his Rule 26(B) Application as untimely.

## <u>CONCLUSION</u>

For the foregoing reasons, Klein's federal habeas petition should be denied, and this case should be dismissed.

Respectfully submitted,

Jim Petro
Ohio Attorney General


<u>S/Diane Mallory</u>
Diane Mallory (0014867)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was mailed by regular, first-class mail to Richard Klein, #350-022, Ross Correctional Institution, P. O. Box 7010, Chillicothe, Ohio 45601, on the 14th day of December, 2004.

S/Diane Mallory