UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD J. KLEIN III,
    Petitioner,

                              Case No. C-1-01-794

    vs.                          JUDGE BECKWITH

                              M.J. BLACK

HAROLD CARTER, Warden,
    Respondent.

## PETITIONER'S TRAVERSE/RESPONSE TO RESPONDENT'S ANSWER/RETURN OF WRIT

(References Petitioner's Exhibits in (Doc. 53) and "Petitioner's Supplemental Exhibit "Q").

Respectfully submitted,

Richard J. Klein III 350-022
Petitioner/pro se
R.C.I. P.O. Box 7010
Chillicothe, Ohio 45601

## CERTIFICATE OF SERVICE

Petitioner hereby certifies that a true copy of the foregoing has been served upon counsel for Respondent Assistant Ohio Attorney General Diane Mallory at 150 East Gay Street Columbus Ohio 43215 by regular U.S. Mail on this 21st day of January, 2005.

Richard J. Klein III 350-022

FACTUAL BACKGROUND &

LOSS OF CHOICE ATTORNEY

(1) Klein should have his Federal claims reviewed in this Federal District Court for the following reasons. In August of 1997 Klein retained a high dollar attorney to represent him on appeal. On December 4, 1998, the First District Court of Appeals dismissed Klein's appeal without a hearing on the grounds that it was without jurisdiction because the trial court failed to place of record a valid judgment which could be appealed. (see Respondent's Exhibit 13, Ct. of App. Dec. 4, 1998 decision [Respondent's Exhibits hereinafter R. Exhibit]). This dismissal caused Klein to lose his "choice attorney" because Klein could not afford the additional expense of additional cost of litigation caused by this dismissal. Then On December 29, 1998, the trial court placed of record a nunc pro tunc judgment. (R. Exhibit 14). Neither, Klein nor his retained attorney (Lawson & Gains) was properly notified that this had transpired. Instead, a court appointed its own attorney without Klein's knowledge and heavily against Klein's will. It still is not clear how this other attorney got on Klein's case, but Klein possessed the Federally protected right to his choice of attorney's and that attorney was not the one. Five (5) months had passed before Klein learned that this dismissal without a hearing had occurred and that another attorney was now appointed in Klein's retained attorney's place. The appointed attorney did not perfect, draft, and submit in his brief Klein's most powerful Federal Constitutional claims which are the claims now being advanced in Klein's Federal habeas corpus petition. Instead, the appointed attorney drafted a severally deficient brief. That brief was so severally factually and legally deficient that it appeared to have been deliberately obfuscated. Klein knew of and agreed to the claims discussed with his retained attorney both in person and over the telephone, but the appointed attorney's brief did not contain those claims. On June 14, 1999, (two days late) the appointed attorney submitted his appeal brief; then two weeks afterward Klein first received and discovered how severally deficient that attorney's brief was as fully set forth in Klein's habeas corpus petition. (See Ineffective assistance of Appellate Counsel Fourth Ground For Relief Habeas Corpus petition pgs. 12 through 36). Not only did that brief not contain Klein's most powerful Federal Constitutional claims, but it was severally factually and legally deficient

-2-

containing weak, frivolous, no-merit claims in which the court expressed were
either not supported by any evidence in record or were meritless claims. The
brief was so factually and legally deficient that Klein was forced to request
replacement counsel to amend and cure the deficiencies and to perfect Klein's
more powerful Federal claims. The dismissal caused all of this to occur.

(2) The courts dismissal violated Klein's Federally protected rights on an
appeal as of right, of (1) Federally protected right to choice of attorney's
or appointment of the equivalent; (2) the right to a quick and speedy appeal;
(3) the Federally protected right to effective assistance of counsel; (4) the
Federally protected right to an adequate, effective, and meaningful review
(full and fair hearing) on a state created appeal as of right; (5) the Court's
failure to either provide replacement counsel to cure the deficiencies in the
appointed attorney's brief and perfect and draft into that brief Klein's more
powerful Federal claims or order the appointed attorney to do it violated
Klein's Federally protected rights; and (6) the Court's failure to review
Klein's more powerful Federal claims on an appeal as of right was in violation
of several points of Due process of Law. (as fully set forth below).

<u>MOTION TO FILE AMENDED AND SUPPLEMENTAL BRIEF</u>

(3) On July 27, 1999, as soon as Klein received a copy of the appointed
attorney's brief and before the Court ruled on the appeal, Klein filed his pro
se "Motion to File Amended, and Supplemental Brief and Extension of Filing
Date." (<u>Petitioner's Exhibit A [hereinafter P. Exhibit</u>]). Klein made several
specific requests in an attempt to cure the deficiencies in the appointed
attorney's brief and to obtain a Constitutionally adequate, effective, and
meaningful review on an appeal as of right. First, Klein specifically
requested to have a replacement attorney to perfect Klein's more powerful
Federal claims specifically to "exhaust remedies" on them. (<u>P. Exhibit A, pgs.
3-4</u>). Klein pointed out some of counsel's deficiencies and requested a cure to
remedy them but this did not occur. On August 13, 1999, the Court granted
Klein's motion (<u>P. Exhibit B</u>) but failed to either order the appointed
attorney to amend or fix, his deficient brief and perfect Klein's Federal
claims and failed to appoint an attorney who would, preferably, Klein's
previously retained attorney or the equivalent. The Court's failure to take
action to cure the deficiencies and have Klein's Federal claims perfected and
submitted in his behalf denied Klein of enumerated Federal rights.

-3-

The Court's review of what it knew was a factually and legally deficient appeal brief was in violation of Due Process of Law.

FEDERALLY PROTECTED RIGHTS TO "CHOICE" OF ATTORNEY AND
EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AND
FULL AND FAIR HEARING, ADEQUATE, EFFECTIVE, AND MEANINGFUL APPEAL AS OF RIGHT

(4) The Court's August 13, 1999, entry granting the filing of a supplemental brief did not cure or remedy the problems because (1) it forced Klein to proceed pro se leaving Klein without the aid of a competent attorney to perfect and properly submit his more powerful Federal claims; (2) it failed to cure the deficiencies caused by the appointed attorney; (3) it caused an inadequate review and created a factually deficient record due to the factual and legal deficiencies in the appointed attorney's brief; (4) it denied Klein of choice counsel; and (5) it denied Klein of effective assistance of counsel. The Court forced Klein to proceed pro se heavily against his will, his skills, his abilities, and the Court's order was contrary to and unreasonable application of Federal Law as established by the United States Supreme Court. The issue is, that Klein informed the Court of some of the factual and legal deficiencies in counsel's brief and requested replacement counsel prior to its ruling on the appeal and the Court failed to appropriately remedy the problem forcing Klein to proceed pro se to draft and submit his more powerful Federal claims was in direct violation of numerous Constitutional rights. Klein possessed the Federally protected right to his choice of attorney's preferably his previously retained attorney. Wilson v. Mintzes, 761 F.2d 275 (6th Cir. 1985); Bland v. California, 20 F.3d 1469, 1475-78 (9th Cir. 1994). And, Federally protected right to effective assistance of appellate counsel and Due Process of Law on a State created appeal as of right. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830 (1985). And, Klein possessed the Federally protected right to an adequate, effective, and meaningful appeal on an appeal as of right. Douglass v. California, 372 U.S. 353, 83 S.Ct. 814 (1963). The courts in Bland and Wilson specifically relied upon the Sixth and Fourteenth Amendment based upon United States Supreme Court precedent in reaching their conclusion that the denial of an individual's rights to his or her choice of attorney's implicates his Federal Due Process protection and is grounds for granting habeas relief. In granting habeas relief, the Federal Court of Appeals in Bland, "...made it clear that the problem was not in giving the

-4-

indigent defendant his particular choice of counsel; rather, the problem was the court's failure to make an adequate inquiry to determine whether there was irreconcilable conflict." Bland, at 1477. "In confronting a somewhat similar situation, the Sixth Circuit declined to require a showing of prejudice. See Wilson v. Mintzes..." Bland, at 1478. Therefore, the courts here demonstrate that habeas relief can be granted on this issue alone. The issue is not whether Klein suffered a prejudicial effect. The issue is whether the Court of Appeals provided Klein with an adequate remedy, his choice attorney, preferably his previously retained attorney, or an attorney who would diligently represent Klein's interests in the case, but the Court did not provide an adequate inquiry or determination. Nevertheless, Klein can, in fact, demonstrate extreme prejudicial effect. (See Fourth Ground for Relief). And, Klein lost his "choice" attorney when the first appeal was dismissed for lack of jurisdiction because the trial court failed to place of record a final appealable order because Klein could no longer afford the additional expense of the additional litigation caused by the dismissal. The attorney that the court took liberty in appointing not only submitted a factually and legally deficient brief but also failed to perfect, draft, and submit Klein's most powerful Federal claims which were heavily supported by the record. The Court of Appeal repeatedly stated that counsel's claims were not supported by evidence of record and that they were meritless. "Where there has been a complete disregard of the defendant's right to choose his own counsel, prejudice will be assumed." And, "...reversal is automatic when defendant deprived of right to counsel of his choice." Bland, at 1478. The Sixth Circuit reached the same conclusion in Mintzes at 286. Therefore, habeas relief can be awarded on this issue alone. The damage to Klein's appeal was catastrophic. It was the decimal equivalent of not receiving an appeal at all. Klein's "choice attorney" would have fully exhausted remedies on Klein's more powerful Federal claims and would have done so professionally and "properly." Klein cannot be held to a procedural default because Klein does not qualify as a competent attorney as guaranteed by the United States Constitution. The Courts choice to force Klein to proceed pro se in its August 13, 1999, entry caused it to step directly into the path of a train of Federal precedent establishing otherwise. Most importantly, the appointed attorney's appeal issues do not count in this habeas action because those are not the claims now being advanced, and,

because, Klein possessed the Federally protected right to have his "choice attorney" draft his choice of the more powerful Federal Constitutional claims and timely submit them in Klein's behalf by a competent attorney which Klein obviously is not. This is why the Appellate Court's December 3, 1999, decision does not apply in this habeas action because it was rendered on a factually deficient appeal brief creating a factually deficient record in which the State cannot now stand on, and that decision does not contain an appellate court's determination of the more powerful Federal claims advanced in Klein's habeas petition. Regardless of the existence of prejudice, Klein possessed the right to have those choice claims perfected by his "choice attorney," a competent attorney which Klein is not, and submitted in Klein's behalf. Klein was Constitutionally entitled to an adequate cure and remedy for this problem advanced in Klein's motion to amend and the Court's decision to force Klein to proceed pro se was not an adequate remedy at law. Klein also possessed the Federally mandated right to an adequate, effective, and meaningful review of his more powerful Federal claims on a first appeal as of right. Therefore, the Appellate Court's December 3, 1999, decision has no application in this habeas action because (1) it does not contain a decision on Klein's more powerful Federal Constitutional claims; (2) because it is based upon a factually and legally deficient record (appeal brief); (3) because Klein possessed the right to have his "choice attorney" draft and submit his choice Federal claims because it was the Court's fault that Klein lost his choice attorney in the first instance; (4) because the Court failed to fashion a Constitutionally adequate remedy; (5) because Klein, after being forced to proceed pro se, still does not qualify as being a Constitutionally adequate, effective, and competent attorney on a first appeal as of right. A single reading of the appointed attorney's brief demonstrates how pathetic, immaterial, factually, and legally deficient it was even without specifics to point out the factual deficiencies. There was no way the Court of Appeal's could have read the record in comparison with the appointed attorney's brief and then allowed that appeal to proceed on that brief; therefore, the Court of Appeal failed to engage in an adequate inquiry and habeas relief should be granted on this very issue alone. Klein's indigency was previously established on record (See R. Exhibit 45, 1/25/99 entry, poverty affidavit submitted). Therefore, Klein could not re-retain his choice attorney. Nevertheless, Klein had

-6-

already retained a high dollar attorney to represent him in that appeal who
was no longer part of the litigation (case) due to the dismissal of the first
appeal; therefore, Klein was still entitled to his "choice attorney" at states
expense since it was the State that caused the dismissal.

<u>KLEIN FORDCED TO PROCEED PRO SE</u>

(5) Klein then filed several other motions (<u>R. Exhibits 17, 19, 20, and
24)</u> after his motion to amend and supplement counsel's deficient brief. These
motions demonstrate that Klein did not qualify as a competent attorney as
guaranteed by the United States Supreme Court on an appeal as of right, and,
that, Klein was forced to proceed pro se. These motions demonstrate that Klein
was not provided an adequate amount of time to properly draft a brief pro se,
and, that, the 30 days provided by the Court held Klein to a higher standard
than what was being provided to professional attorney's, especially, the
attorneys in Klein's case who had received catastrophic amounts of time in
comparison to the 30 days provided to Klein to complete the same task.
Nevertheless, Klein attempted to draft and submit a supplemental brief pro se,
(<u>R. Exhibit 18</u>) but the Court simply struck that brief without ever reviewing
its contents. (<u>R. Exhibit 19</u>). Then the Court went on to review what it
already knew was a Constitutionally factually and legally deficient appeal
brief in violation of Klein's Federal Due Process rights. Doing so denied
Klein of full and fair hearings and an adequate, effective, and meaningful
appeal on an appeal of right. The contents of Klein's motion to amend should
have been sufficient to make the Court aware of counsel's deficiencies and to
justify further inquiry, replacement of counsel, or to justify an order
ordering the appointed attorney to amend and fix his deficient appeal brief.
Here, as in Bland, the Federal Court granted relief because of the lower
court's failure to inquire further. But, further inquiry was not entirely
necessary since a simple reading of the appointed attorney's brief in
conjunction with Klein's motion to amend and the trial record would have been
enough to demonstrate that counsel made sever factual errors, sever legal
errors, and failed to advance Klein's more powerful Federal Constitutional
claims. Klein's Federal Constitutional claims were the only claims factually
supported by the record. The Court of Appeals agrees with this statement
because it stated repeatedly that counsel's claims were not factually
supported by the evidence or the record and that they were meritless

throughout its December 3, 1999, decision. Respondent has failed to provide any justification as to why Klein received no Constitutional protection on an appeal as of right. Instead, Respondent has chosen to continue with this facade that Klein procedurally defaulted which is impossible since Klein possessed the Federally protected rights to at some stage in the proceedings to have a competent attorney perfect, draft, and submit for appellate review Klein's most powerful Federal Constitutional claims, and Klein does not meet those Constitutional requirements which is thoroughly demonstrated by the record. The United States Supreme Court holds, "...counsel on the first appeal as of right must exercise reasonable professional judgment. Evitts v. Lucey, ... '[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, ... is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986)(Jones v. Barnes, 463 U.S. 745, 751-52 (1983)); "...a petitioner may establish that counsel rendered constitutionally inadequate representation if the petitioner can show that counsel ignored obvious issues of strength, while including those which were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Winnowing out weaker arguments and focusing on those more likely to prevail is not what the appointed attorney did, in fact, that attorney failed to properly argue any of Klein's more powerful Federal claims and failed to adequately present and argue the claims that he did submit. (See Fourth ground for Relief). Most importantly, Klein was in no position to, and was entirely incapable of, representing himself or hiring another attorney. Since, Klein was forced to represent himself to get review of his more powerful Federal claims and an adequate and meaningful review due to the circumstances created by the courts in the early stages of the appeal, Klein should be entitled to have the writ granted on these grounds, or to have his Federal claims reviewed by this Federal District Court. As the Sixth Circuit held in White v. Schotten, "Those whose right to appeal has been frustrated should be treated exactly like any other appellant; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage of the proceedings.' " White v. Schotten, 201 F.3d 743, 752 (6th Cir. 2000). Klein's claims should be reviewed because he possessed the Federally protected right to have them perfected and submitted in his behalf by a competent attorney and reviewed on appeal as of right and they were not. The Court of

-8-

Appeals' August 13, 1999, entry (P. Exhibit B) requiring Klein to proceed pro
se to obtain review of his Federal claims did not suffice to render the
proceedings Constitutionally adequate because Klein did not qualify as a
Constitutionally adequate attorney where Constitutionally effective assistance
of counsel is mandated by the United States Government.

## 26(B) APPLICATION: PROCEDURAL DEFAULT, AND INEFFECTIVE ASSISTANCE OF COUNSEL

(6) (ARW pg. 19-20) Respondent is attempting to achieve finality by
falsifying information about a procedural default. And, the case relied upon
by Respondent "Lott v. Coyle" (ARW pg. 19) was not even the state of the law
at the time. Lott does not even address any of the issues that exist in
Klein's case. Nevertheless, the Ohio Supreme Court did not find any of Klein's
claims procedurally defaulted, even Klein's 26(B) application or it would have
expressly stated as such. (fully set forth later herein). Respondent falsely
argues that Klein attempted using the 26(B) application as an avenue to
exhaust remedies that were not raised below, but that argument is false. All
of Klein's claims were advanced in the appeal stage even ineffective
assistance of appellate counsel, as stated above, Klein made the Court of
Appeals fully aware of his claims, that he wanted replacement counsel, and,
that, counsel's brief was severally deficient. Since, Klein was forced
unconstitutionally to proceed pro se and denied replacement counsel and denied
his "choice attorney" and denied aid in perfecting his Federal claims, Klein
cannot be held to a default caused by the Court's unconstitutional provisions
or lack thereof. Klein's choice attorney (Lawson & Gains) would have fully and
properly exhausted all State remedies the first time, but the State court's
intervention caused loss of this choice attorney which caused all the
procedural problems in this case; therefore, Klein cannot be held in default.

(7) Next, Respondent falsely argues that "Klein's direct appeal claims
cannot be considered in a Rule 26(B) proceeding, and the claims are not
exhausted because Klein did not present them to the state courts in the manner
required by state law." (ARW pg. 19). But, this is a false and inadequate
defense because Klein was not attempting to exhaust remedies on "all" of his
claims in that proceeding even though it may have had that effect. Klein was
simply trying to achieve full exhaustion of state remedies on his ineffective
assistance of appellate counsel claim if that was the only claim that could
have been exhausted at that time which is questionable since Lott v. Coyle had

not been decided as of that time. Nevertheless, Klein filed an appeal brief
with that 26(B) application, as well as, a statement of the claims not
reviewed in the appeal because App.R. 26(B) required it at that time for
review by that court and Federal Law requires full exhaustion of State
remedies before proceeding to Federal court. Therefore, Respondent's argument
concerning Lott v. Coyle has absolutely nothing to do with any of the
circumstances in Klein's case. Nevertheless, Klein was simply obeying Federal
exhaustion requirements and the Ohio Rules of Appellate Procedure the best he
could in the absence of a competent attorney. Respondent fails to calculate
into the equation that Klein possessed the Federally protected right to an
attorney in the 26(B) proceeding and was denied this Federally protected
right. Second, as the Sixth Circuit pointed out, "The United States Supreme
Court cautioned, however, that 'the mere existence of a basis for a state
procedural bar does not deprive [federal courts] of jurisdiction; the state
court must actually have relied on the procedural bar as an independent basis
for its disposition of the case.' Caldwell v. Mississippi, 427 U.S. 320, 327,
105 S.Cr. 2633 (1985)." Boyle v. Million, 201 F.3d 711, 717 (6th Cir. 2000).
The Ohio Supreme Court did not rely on a procedural forfeiture nor could it
have. (as fully set forth later herein). Additionally, as the Sixth Circuit
also holds, "It is not necessary for any State court to have actually
addressed the merits of the claims, so long as the claims have been presented
to the highest court in the state." Strickland v. Marshall, 632 F.Supp 590-98
(6th Cir. 1986). Therefore, Klein has properly exhausted remedies and has not
procedurally defaulted.

### FEDERALLY PROTECTED RIGHT TO APPOINTED ATTORNEY IN 26(B) PROCEEDINGS

(8) Respondent is ignoring and evading the fact that Klein possessed the
Federally protected right to have an attorney "timely" file his 26(B)
application in his behalf and that Klein never should have ever had to present
anything to the state court on his own on an appeal of right, either in the
26(B) proceedings, or in the initial part of the appeal because Klein
possessed the Federally protected right to have an attorney in both stages to
properly perfect, draft, and timely submit Klein's documents in Klein's
behalf. When the Court failed to provide Klein with an attorney it stepped
right in the path of a train of precedent a second time establishing
otherwise. And, again, Klein did not qualify as Constitutionally adequate or

effective assistance of an attorney; therefore, Klein's claims raised in the
26(B) application cannot be procedurally defaulted as Respondent argues. The
Sixth Circuit holds, "We more hold that a petitioner who is representing
himself on appeal because he is no longer entitled to the assistance of
counsel should not be held to a stringent definition of 'cause.' " Strickland
v. Marshall, 632 F.Supp 590, 599 (S.D. Ohio 1986), but Klein should be held to
a "no stringent standard of cause" because Klein possessed the Federally
protected right to have an attorney submit his pleadings in his behalf. Klein
should not have had to file anything throughout the entire appeal which
includes the 26(B) proceedings because he possessed the right to have an
"effective" attorney "appointed" to do it for him, and this, the state courts
failed to do. White v. Schotten was the state of the law at the time Klein
became eligible to file his 26(B) application which holds (1) the defendant
possesses the right to an attorney at that stage in the appeal because 26(B)
proceedings are part of the direct appeal; (2) a defendant possesses the right
to effective assistance of an attorney; (3) this also has to mean that a
defendant also possesses the right to be properly notified that he possesses
such a right so that he can invoke this right and have protected any other
right that he might possess; and (4) when a defendant possessed the right to
an attorney, he also possesses the right to have the Court appoint one if he
cannot afford one, but it is impossible to request an attorney if the
individual, as here, was never properly informed that he possessed such a
right. The Court knew that Klein was indigent because this fact was clearly
established on record. (See R. Exhibit 45, 1/25/99 entry, top line). And, the
Court knew from Klein's previous pro se motions that Klein had a serious
problem with this appointed attorney and that Klein would have need of further
proceedings concerning ineffective assistance of appellate counsel. But, Klein
was neither notified of the December 3, 1999, judgment and decision by the
Court itself, nor was he informed by this appointed attorney in time to invoke
his Federally protected rights on an appeal as of right. Second, Klein was not
properly informed that he possessed the right to an attorney in 26(B)
proceedings, nor, that, if he could not afford one that one would be
appointed. It is indisputable that the Court knew that Klein was indigent and
that he possessed the desire to advance an ineffective assistance of counsel
claim because Klein advanced that claim in the appeal itself however

-11-

inartfully pleaded is insignificant to the equation. The Court should have served notice of judgment on Klein himself and not that attorney since the Court forced Klein to proceed pro se with his Federal claims. If the Court expected Klein to litigate his Federal appeal issues himself then Klein was entitled to personal notice of judgment and not the attorney who Klein attempted to have removed from the case and who never should have been on Klein's case in the first instance. Therefore, serving that attorney does not qualify as reasonable notice to Klein because Klein was the only individual who needed to know when his time limits began to run and not the attorney because the attorney was finished with the case when he filed his appeal brief. That attorney failed to properly forward notice of judgment and he was not Klein's "choice" attorney which prevented Klein from learning when his time limits began to run for further proceedings. This was another proceeding where Klein was denied an attorney of right and other Federally mandated Due Process rights. Klein's inabilities rendered him ineffective to litigate his case himself as the record clearly demonstrates; therefore, Klein was Constitutionally ineffective assistance of counsel. Had Klein been fully appraised of his rights to an attorney and to have one appointed if he could not afford one, Klein would have chosen that avenue instead of attempting to obtain justice on his own. Since, Klein does not qualify as a competent attorney as guaranteed by the United States Constitution then Klein is either entitled to another State appeal with his choice attorney or the equivalent or is entitled to have his Federal claims reviewed by the Federal Court that were not presented at all by a competent attorney in Klein's appeal which were the only claims supported by the record.

(9) (ARW pgs. 31 through 33). (1) Respondent claims that Klein's 26(B) application is procedurally defaulted for "untimely filing." (2) Respondent accuses Klein of failing "to show good cause for his untimely filing." (ARW pg. 31, para. 1, 2, & 3). (3) Respondent builds on this premise that Klein's reliance on Crim. R. 32(B)(3)(c) is misplaced because a Rule 26(B) application is a "discretionary appeal." (ARW pg. 31-32). First, the Court in White v. Schotten specifically held that 26(B) proceedings, at that time, were part of the appeal as of right requiring application of Federal Due Process of Law principles. Id. at 745. Therefore, since it was part of direct appeal then Klein was entitled to copies of the documents necessary for filing it due to the fact that Klein's indigency was clearly established in record (R. Exhibit

45, 1/25/99 entry) and due to the fact that the appellate court was forcing
Klein to litigate the appeal himself. The Court's failure to provide the
copies necessary for filing the 26(B) application are in direct violation of
Klein's Federally protected rights. Klein filed a "Motion to Reduce Number of
Copies" (P. Exhibit D) because the Clerk refused filing Klein's 26(B)
application and its evidence. Klein specifically requested copies to be made
of the motion, transcripts relied upon, the exhibits, the appeal brief, and
the additional copies, all of which were required by Rule 26(B) at that time
for filing which amounted to an enormous amount of copies. Nevertheless, the
rule as it was at that time required all of these copies which were necessary
for filing. Since, the State made the rule and its enormous copy requirements,
and, since, 26(B) proceedings are part of the direct appeal itself where
Federal Due Process principles apply then Klein was entitled to have copies
made in his behalf or to have an attorney appointed to represent him and the
Court did neither. The State is required to provide the necessary resources to
file a 26(B) application because it is part of the direct appeal. The White
Court's reliance of Evitts v. Lucey demonstrates the requisite Due Process
principles that apply. "...if a State has created appellate courts as 'an
integral part of the ... system for finally adjudicating the guilt or
innocence of a defendant, Griffin... the procedures used in deciding appeals
must comport with the demands of Due Process and Equal Protection Clauses of
the Constitution." Evitts v. Lucey, 469 U.S., at 393, 105 S.Ct., at 834
(1985). Here as in Griffin, these copies were a prerequisite for an accurate
and adequate determination on the merits. The copies were necessary because
App. R. 26(B) required these to be supplied in the 26(B) proceedings. The
copies were necessary to assure that the appeal was "adequate" and
"effective." Had the appellate court appointed Klein's choice attorney or the
equivalent for the appeal or adequately reviewed Klein's previous complaint
about the appointed attorney then 26(B) proceedings would not have been
necessary. Additionally, had the Court notified Klein of the judgment entry
and notified Klein that he possessed the right to have an attorney appointed
for the 26(B) proceedings those claims would have been properly and timely
filed. Klein possessed the Federally protected right to prove that the appeal
was not Constitutionally adequate and effective in protecting Klein's rights.
The Griffin court relied upon in Evitts, requires the State to supply the

copies of documents necessary for adjudicating the appeal as of right and the 26(B) proceedings qualify as part of that appeal which required certain documents to be supplied for that filing. Klein's Federal claims should be reviewed for the foregoing reasons.

(10) Respondent argues that Klein has failed to present any evidence to demonstrate "good cause" for the "untimely filing" of the 26(B) application. (ARW pg. 20, para. 4; pg. 31, para. 1). But, this is a false unsubstantiated accusation because Klein did present sufficient evidence to prove that "objective factors" external to Klein's control prevented earlier filing. Klein presented this in his "Motion for Delayed Repoening Appeal Rule 26(B)(2)(b)." (P. Exhibit F). Which was Klein's motion for leave showing good cause for the late filing. The four (4) most important reasons that Klein was unable to file within the 90-day limit are: (1) Klein was not provided the requisite attorney for the proceedings; (2) Klein was not provided the requisite resources (copies) necessary to make the filing; (3) Klein was indigent and unable to hire an attorney or supply the necessary copies; and (4) Klein was not provided the requisite service of judgment. Klein was Federally entitled to service of judgment on him because he was forced to proceed pro se. Clearly established Federal Law guarantees that Klein, after being forced to act as his own attorney on an appeal as of right, possessed the Federally protected right to receive himself timely service of the judgment entry affirming conviction and not the ineffective attorney. Woodard v. Williams, 236 F.3d 1135 (10th Cir. 2001); Day v. Sullivan, 794 F.Supp., at 821-22 (S.D. Ohio 1991); Matter of Park Nursing v. Samuels, 766 F.2d 261 (6th Cir. 1985). Because, serving the attorney whom Klein had filed complaints against could not have been reasonably calculated to reach Klein because that attorney possessed motive not to forward the notice to Klein, and Klein was the only individual in the equation who needed to know when that judgment was entered on the docket so that he would know when his time limits began to run. Supplying that attorney with service of notice of judgment could not have been reasonably expected to "timely" reach Klein because that judgment would have to go through channels which are time consuming and costly. Nevertheless, that attorney possessed motive not to forward timely notice of judgment because Klein had lodged complaints about his conduct. When the Court forced Klein to proceed pro se it was then that it was Constitutionally obligated to provide Klein with the service of the judgment entry. Therefore, Respondent's

argument that Klein did not present "any" evidence showing good cause is false because Klein's (P. Exhibit F) demonstrates that Klein did provide the court with sufficient evidence and "objectively verifying" it. Respondent's argument was not that Klein's evidence did not meet the "good cause" standard, if there was such a standard established at that time and there was not. Respondent specifically argues that Klein presented no evidence. Had Klein received the requisite timely notice of judgment, and the requisite financial aid of copies necessary for the filing, and the requisite aid of an attorney then the 26(B) application, its exhibits, transcripts, appeal brief and extra copies required by rule the application would have been date stamped sooner (timely).

(11) Then Respondent argues that after the Court refused to provide Klein with the requisite Federally protected rights presented above, that, Klein allegedly wasted his resources on a state habeas petition, and "he should have diligently worked on preparing a Rule 26(B) Application which complied with Ohio's rules." (ARW pg. 32, para. 2). But, this argument is completely irrelevant to Klein's Federally protected rights calims and the true facts. That habeas petition only cost .50¢ to draft and file because postage was only .35¢ and Klein did not have to supply a mountain of copies. That petition was not a catastrophic financial burden created by rule like the 26(B) application was at that time. Klein had a 26(B) application prepared. The problem was not in diligently drafting the original, the problem was in obtaining all of the copies of everything that Rule 26(B) required at that time. The 26(B) application and its enormous copying requirements is catastrophically different from the state habeas. The Documents required to be supplied at that time with a 26(B) application were four (4) copies and the originals of the transcripts relied upon, exhibits relied upon, the motion, an appeal brief, and extra copies of all of this for the Clerk's service on the prosecutor, all of which were required by rule 26(B) at the time and all add up to the State's attempt to preclude enforcing Klein's Federally protected rights by drafting a rule that only a rich individual could afford to comply with. The very premise of Evitts and Griffin demonstrate that this tactic is enormously unconstitutional. Therefore, eight (8) months had passed before Klein was able to put together enough funds for copies, postage, and drafting materials to present a significant Constitutional demonstration of ineffective assistance of appellate counsel. The Strickland court places the burden of proving

-15-

counsel's entire neglect of duty and obligation not just piecemeal deficient performance, but that demonstration does not come at a low cost, especially, in light of a rule that contains catastrophic copying requirements of exhibits, evidence, transcripts, and extras as App. R. 26(B) required at the time. No indigent defendant could have afforded all of that and still have proven overall deficient performance of an appellate attorney. The State already possessed its own copies of all of these documents on record. The rule should only have required reference to the record, not supplying five (5) copies of it.

(12) Next, Respondent is falsely attempting to intertwine Klein's two (2) Ohio Supreme Court appeals as if they were connected with Klein's 26(B) proceedings. (ARW pg. 32-33, para. 3, "III Non-Cognizable claims..."). But, Klein's "Third" and "Fifteenth" ground for relief do not go together. Respondent here attempted to falsely intertwine these two grounds as though they were related to cause an inadequate determination and dismissal of this Federal Habeas action on false pretenses. That Court did not dismiss Klein's 26(B) claim when it dismissed that action as Respondent argument attempts to mislead which is the equivalent of falsifying evidence. The two are unrelated.

## EXHAUSTION AND PROCEDURAL DEFAULT

(13) Again, Respondent falsely claims that Klein has procedurally defaulted because he failed to file an appeal to the Ohio Supreme Court because, "He claims that he was not notified of the appellate court judgment in time to file a timely appeal." (ARW pg. 18A(1)). But, Respondent's argument is falsification of evidence because Klein's argument there stated specifically that the appointed attorney left Klein without any significant claims that could have been advanced to the Ohio Supreme Court due to counsel's factual and legal deficiencies and the reasons stated in Klein's Fourth Ground for Relief, and because that attorney was not supposed to be representing Klein's case in the first instance.

## ADEQUATE AND INDEPENDENT STATE GROUND

(14) Respondent's arguments and defenses from (ARW pg. 14 through 36) revolve around exhaustion of remedies and procedural default that do not exist in this case and this Court has already ruled on this very issue in Klein's favor; therefore, collateral estopple, or res judicata, or some rule, standard, or law bars Respondent from relitigating the same issue between the same parties in the same court based entirely upon the very same

arguments, defenses, and evidence. Klein has since amended his petition, but it still contains the exact same claims advanced in the petition at the time this Court ruled upon Respondent's same claim. This Court has decided this very same issue in its April 12, 2004, ORDER (Doc. 34) after Respondent filed "Respondent's Motion to Dismiss" (Doc. 10) for failure to exhaust state remedies and procedural default. Klein responded with, "Petitioner's Response Motion in Opposition to Respondent's Motion to Dismiss" (Doc. 11) where Klein provided this Court with evidence possessing adequate indica of reliability establishing that Klein did, in fact, exhaust all state remedies, and further compounding on the fact that Klein did so "properly." Thereafter, Respondent filed an "Objection to Report and Recommendation of Magistrate Dated February 11, 2003" (Doc. 16) where Respondent expanded on the procedural default defense even further. Klein then responded with "Petitioner's Motion in Opposition and Motion to Strike..." (Doc. 18) further expanding on the fact that Klein exhausted remedies and did so "properly." Nevertheless, these issues have already been determined in Klein's favor because Klein has since added no new claims, but has, in fact, extracted some. Most importantly, Klein had demonstrated that there was no "adequate and independent" state ground in existence in this case in the Ohio Supreme Court and there still is not. The Ohio Supreme Court could not have relied upon an "adequate and independent" state forfeiture, (1) because that defense was never properly placed before that Court by the State; (2) the Ohio Supreme Court "expressly" ruled upon the merits of Klein's Federal claims placed before it but denied discretionary jurisdiction on some other ground as expressly stated in its decision entry.

(15) This is what transpired, and what has already been presented and ruled upon by this District Court in Klein's favor. On September 4, 2001, Klein filed his "Notice of Appeal to the Ohio Supreme Court" requesting discretionary appeal on a felony case (see Petitioner's Supplemental Exhibit Q, pg. 2-3 [hereinafter P. Exhibit]) with Klein's "Memorandum in Support of Jurisdiction." (P. Exhibit Q, pgs. 4-23). Then on September 13, 2001, the State filed its, "Memorandum in Response," (P. Exhibit Q, pgs. 24-35). On page 8 of the State's Memorandum, the state argues, that, "THE COURT OF APPEALS DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR DELAYED APPEAL." (P. Exhibit Q, pg. 8/33). And, the State continued with, "The State of Ohio, opposes defendant's motion for delayed appeal because that he has failed to

-17-

state an adequate reason for the failure to file a timely appeal," and then
cites Appeal Rule 5 of the Ohio Rules of Appellate Procedure. But, these rules
obviously do not apply to the Ohio Supreme Court; therefore, the State had to
have been referring to some other previously filed action in the State
appellate courts known as App. R. 5 Delayed Appeal, but Klein had never in the
history of this case ever filed for a delayed appeal pursuant to App. R. 5.
And, Klein's claim advanced no argument of "abuse of discretion." It advanced
a significant Federal Constitutional claim. The State's argument was not
responsive to any of Klein's claims, previous filings, or to any circumstances
that existed in this case; nor, did it supply the Ohio Supreme Court with an
"adequate and independent" state ground that was an adequate basis to dismiss.
If the ground was independent but not adequate it does not qualify. The
State's argument was not adequate because it had absolutely nothing to do with
Klein's case; therefore, the Ohio Supreme Court could not have "expressly"
relied upon it. Respondent cannot rely upon an "independent and adequate"
state ground that does not exist to foreclose Klein's Federal action because
this defense was not adequately placed before the State's highest court for
disposition. The Court was clear that it had considered all of the
jurisdictional memoranda including Klein's exhibits and transcripts attached,
as well as the State's memoranda. (P. Exhibit Q, pg. 1). Therefore, since the
Court gave careful consideration to both parties pleadings it expressly ruled
upon Klein's claims instead of dismissing on the State's claim which had no
part in the proceedings because it was not responsive to any arguments
advanced or to any circumstances that existed at the time. Respondent still
argues that Klein has failed to exhaust state remedies because he can still
pursue a delayed appeal to the Ohio Supreme Court, but this Federal District
Court has already ruled in Klein's favor and the United States Supreme Court
holds, "...a state prisoner need not have invoked every conceivable
'available' state remedy in order to avoid procedural default." O'Sullivan v.
Boerckle, 526 U.S. 838, 119 S.Ct. 1728, 1737 (1999). And, "The Supreme Court
cautioned, however, that 'the mere existence of a basis for a state procedural
bar does not deprive [federal courts] of jurisdiction; the state court must
actually have relied on the procedural bar as an independent basis for its
disposition of the case.' Caldwell v. Mississippi, 427 U.S. 320, 327, 105
S.Ct. 2633 (1985)." Boyle v. Million, 201 F.3d 711, 717 (6th Cir. 2000). The

Supreme Court holds in Coleman, "...this court has created a conclusive presumption that there is no such ground if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not 'clearly and expressly' rely on an independent and adequate state ground." Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2551 (1991). And, "...a federal claimant's procedural default precludes federal habeas review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default." Harris v. Reed, 489 U.S. 103, 109 S.Ct. 1038, 1043 (1989). "An alleged procedural default becomes a bar to habeas review ... only if the last state court to review the claim has clearly and expressly based its decision on the claimed procedural default. The procedural default must be independent of the federal question and adequate on its own to support the state's decision. Coleman v. Thompson,..." Levine v. Torvik, 986 F.2d 1506, 1516 (6th Cir. 1993). In Klein's case, as in Gravely, "...constitutional claims could be addressed without doing a 'cause' and 'prejudice' analysis because the last state court to hear the case had not dismissed the action on the independent state ground." Gravely v. Mills, 87 F.3d 779, 785 (6th Cir. 1996). The last state court to review Klein's Federal claims did not rest its judgment on an independent state ground, but specifically reviewed all of the jurisdictional memoranda and evidence and specifically stated that it, "...dismisses the appeal as not involving any substantial constitutional question." (P. Exhibit Q, pg. 1). Which was a general ruling on all of the claims, and the issue of a procedural default of Klein's Federal claims and 26(B) application was not even presented to that court properly. Therefore, there was no "adequate" state ground presented in which the last court could have "clearly" and "expressly" relied upon. Additionally, "...a defendant may not default a constitutional claim through conduct that occurs as a result of the constitutional violation. Coleman v. Thompson,..." Morris v. California, 966 F.3d 448, at 454 (9th Cir. 1991). The fact that Klein possessed the Federally protected right to his choice attorney on an appeal as of right is not only grounds to grant the writ in and of itself, but it too provides the requisite Constitutional violation for overcoming a procedural default, as well as, quick and speedy appeal right violation which is another Constitutional

-19-

violation caused by the dismissal providing the requisite Constitutional
violation necessary to overcome any procedural default, especially, in light
of the fact that any defaults were caused by dismissal of the direct appeal
and denial of choice counsel in the early stages. Total denial of counsel on a
26(B) proceeding which was established law at the time, as well as, the
Court's failure to properly notify Klein of his right to counsel, and the
Court's failure to appoint counsel for what the Court knew was an indigent
defendant, as well as, the State's failure to properly notify Klein of the
appellate Court's December 3, 1999, decision and judgment all provide the
requisite Constitutional violations to overcome any procedural default that
may have occurred in the wake of all of these violations of Federally
protected Constitutional rights. Therefore, a "cause" and "prejudice" analysis
need not even be invoked concerning ineffective assistance of appellate
counsel because that attorney should not have even been on Klein's case in the
first instance; therefore, it does not matter whether or not that attorney was
ineffective assistance of counsel because Klein possessed a Federally
protected choice in the matter of who represents him and what claims were to
be advanced in his behalf.

<u>EXHAUSTION OF SPECIFIC CLAIMS</u>

(16) Klein has already demonstrated for this Court where he "properly"
exhausted state remedies on his claims in Klein's May 13, 2002, "Petitioner's
Response Motion in Opposition to Respondent's Motion to Dismiss," (<u>Doc. 11</u>)
and in Klein's February 24, 2003, "Petitioner's Objection to Magistrate's
Report and Recommendations," (<u>Doc. 17</u>) and in Klein's February 25, 2003,
"Petitioner's Motion in Opposition and Motion to Strike..." (<u>Doc. 18</u>). Where
this Court has ruled in Klein's favor in its April 12, 2004, <u>ORDER</u> (<u>Doc. 34</u>)
thus demonstrating that Klein had, in fact, fully and "properly" exhausted
state remedies. Here again is a recap of specifically when, where, and how. On
September 4, 2001, Klein filed his "Notice of Appeal to the Ohio Supreme Court"
(<u>P. Exhibit Q, pg. 2-3</u>) with his Memorandum in Support of Jurisdiction. (<u>P.
Exhibit Q, pg. 4-23</u>). Klein's Ohio Supreme Court's **First Proposition of Law
No. I**, pg. 2/10 (See Habeas 13th Ground for Relief pg. 101); **Second
Proposition of Law No. II,** pg. 3/11 (See Habeas 1st, 2d, and 3d Ground for
Relief pgs. 1-10); **Third Proposition of Law No. III,** pg. 5/13(See Habeas 4th
Ground for Relief pg. 12); **Fourth Proposition of Law No. IV,** pg. 6/14(See

-20-

Habeas 1st Ground for relief pg. 1); **Fifth Proposition of Law No. V,** pg. 7/15(See Habeas 5th and 12th Ground for Relief pg. 36 and 100); **Sixth Proposition of Law No. VI,** pg. 9/17(See Habeas 6th Ground for Relief pg. 44); **Seventh Proposition of Law No. VI,** pg. 12/20(See Habeas 9th Ground for Relief pg. 64); **Eighth Proposition of Law No. VIII,** pg. 12/20(See Habeas 6th Ground for Relief pg. 44); **Ninth Proposition of Law No. IX,** pg. 13/21(See Habeas 10th Ground for Relief pg. 66); **Tenth Proposition of Law No. X,** pg. 14/22(See Habeas 11th Ground for Relief pg. 82).

### ABSENCE OF ADEQUATE REMEDY AT LAW AND APPLICATION
### OF STATE LAW RISING TO FEDERAL CONSTITUTIONAL DUE PROCESS VIOLATIONS

(17) (ARW pg. 20-22) (1) First, Respondent argues that Klein possessed an adequate remedy at law of appeal to raise his Fourteenth and Fifteenth Ground for Relief, but this is false. Klein did not possess an "adequate remedy at all. (2) Second, Respondent falsely argues that a state habeas corpus is "only" designed to attack the jurisdiction of a court, but this is also false. The statute itself at the time made clear that its design was to release a prisoner from unlawful restraint of liberty of "any kind." Since, the December 29, 1998, nunc pro tunc judgment was both invalid and rendered by a court without jurisdiction then it was not a valid final appealable order which divests the court of appeals of jurisdiction to entertain an appeal; therefore, Klein was being "unlawfully" restrained of his liberty by being incarcerated without a "valid" order imposing sentence from a court of competent jurisdiction which left Klein without an "adequate remedy at law on appeal because an appellate court without jurisdiction is not an "adequate" remedy at law. Here is why. The First District Court of Appeals made clear in Klein's December 4, 1998, decision dismissing Klein's appeal (R. Exhibit 13) that a court of appeals is without jurisdiction in the absence of a "valid" judgment of conviction. That Court made equally clear, that, "The record before us is devoid of a judgment of conviction from which an appeal may be perfected." (R. Exhibit 13, pg. 6). Thus, there was no "initial" judgment filed in this case; therefore, the very same law relied upon to dismiss Klein's Federally protected appeal as of right, State v. Breedlove, (1988) 46 Ohio App.3d 78, 546 N.E.2d 420, also establishes the later filed nunc pro tunc order to be an "invalid" judgment when it was used to "render a judgment where no judgment was rendered in the first instance." Breedlove, at 423

The second reason this nunc pro tunc order is invalid is, "The reason that the entry nunc pro tunc is invalid is that it exceeds the very limited power of a court to enter a nunc pro tunc order." Breedlove, at 423. The trial court's initial failure to place of record a valid judgment caused dismissal of Klein's Federally protected "first" appeal as of right in violation of Klein's Federal Fourteenth Amendment Due Process, Equal Protection, Speedy Trial, and Speedy Appeal rights. The trial court's filing of an "invalid" judgment nunc pro tunc thereafter (18 months later) divested the court of appeals of jurisdiction a second time, regardless of whether an appeal resumed after the nunc pro tunc entry, because the court of appeals was still without jurisdiction in the absence of a "valid" judgment of conviction leaving Klein without an "adequate remedy at law" of appeal before a court of appeals with competent jurisdiction, thus, violating Klein's same Federally protected rights a second time. The First District Court of Appeals made clear in Klein's December 4, 1998, decision, that, the rule of Breedlove requires "strict conformity with Crim. R. 32(B)..." (R. Exhibit 13, pg. 4, para. 2). Therefore, the only way Klein could have viewed this legal situation pro se at the time was that there was no "adequate" remedy of appeal available because "...the Supreme Court ruled that when a court exceeds its power in entering a purported nunc pro tunc order, that order is invalid." Breedlove, at 423. And, when a court enters judgment nunc pro tunc where no judgment was entered in the first instance then that order is "invalid." Breedlove, at 423. Therefore, the very same law that the Court of Appeals relied upon in dismissing Klein's first appeal as of right rendered the Court of Appeals without jurisdiction a second time from the nunc pro tunc order leaving Klein without an adequate remedy by way of appeal to a court of competent jurisdiction on appeal. Crim. R. 32(C) establishes that a judgment does not take effect until it is entered on the journal by the Clerk, but there was no judgment initially entered in Klein's case; therefore, no judicial action had been taken because a court speaks "only" through its journal entries and not by oral "announcement" as the Court in Klein's case pointed out in its December 4, 1998, decision. (R. Exhibit 13, pg. 3, para. 4). Therefore, no lawful judicial action had been taken to cause the incarceration, and of equal force is the very fact that a court exceeds its power when it enters judgment nunc pro tunc which renders the order invalid and non-appealable. Additionally, Rule 7 of the Rules

-22-

of Superintendence for the Courts of Ohio (Rule 5(c) at the time) gives the trial court thirty (30) days to enter a valid judgment conforming to Crim. R. 32(B) then the court is divest of jurisdiction over the issue of sentencing. See Willoughby v. Lukehart, (1987) 39 Ohio App.3d 74. In the absence of a valid judgment imposing sentence, and in the absence of an adequate remedy of appeal before a court of competent jurisdiction, Klein then resorted to pursuing a collateral remedy by way of R.C. 2725.01 challenging the jurisdiction of the trial court, the court of appeals, the lawfulness of the incarceration because Klein was unlawfully incarcerated without a lawful valid judgment imposing sentence, and setting forth Klein's Federal rights violations. The main issue here is that the trial court's oppressive intervention "twice" abridged and impaired Klein's Federally protected appeal of right causing (1) loss of "choice" counsel; (2) denial of speedy trial; (3) denial of speedy appeal; (4) denial of access to a court of competent jurisdiction, "twice"; and (5) denial of an adequate, effective, and meaningful appeal and denied "full" and "fair" hearing on appeal because Klein's more powerful Federal Constitutional claims still have not been reviewed on their merits due to the    violations of Federal Due Process of Law. "...a federal court's inquiry is whether the state's procedures have passed the federal constitutional muster, not whether there was error in the state applying its own law. In other words, the constitutional issue is whether the state court's application of its own standard was so erroneous as to rise to an independent due process violation." Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993). Klein's appeal was Federally protected because of the Evitts Court's holding, "...if the State has created appellate courts ... the procedures used in deciding appeals must comport with the demands of Due Process and Equal Protection Clauses of the Constitution." Evitts, at 393; 834. Additionally, "Federal court will review claims, ...if no State court had provided a full and fair opportunity to litigate those claims." Wright v. West, 505 U.S 277, 112 S.Ct. 2482, 2486 (1992). Klein was repeately denied "full" and "fair" opportunity to litigate any of his more powerfu  Federal Constitutional claims due to all of the foregoing constitutional violations, as well as, those stated below. The state courts' procedures were so erroneous they rise to numerous Federal Constitutional violations. This is why Klein pursued an extraordinary writ because there was no state remedy "adequately" protecting Klein's Federally protected rights. These Constitutional violations

provide the requisite Constitutional violation necessary to overcome any procedural default that may exist, and Klein is still incarcerated without a valid judgment imposing sentence which is in violation of Klein's Federally protected rights because no court has ever lawfully imposed execution of sentence or ordered Klein to be transferred to a state correctional facility.

**STATE'S ADMISSION TO FILING FALSE CLAIM TO OBTAIN**

**UNLAWFUL DISMISSAL OF ACTION ON AN APPEAL AS OF RIGHT**

(18) On appeal from denial of State habeas action. Klein was again denied full and fair hearing for the fourth (4) time, and Federally protected rights of access to the courts were abridged and impaired in violation of Due Process of Law. Counsel for Respondent admits to being the individual responsible for filing a false claim for the sole purpose of getting Klein's "appeal as of right" dismissed without a hearing on false grounds. It was not just an appeal, but was, in fact, an "appeal as of right." Respondent admits in (ARW pg. 22) to the following, "When undersigned counsel (who represented Respondent in the state habeas action) learned that a brief had been filed (by calling the clerk of courts), she filed a motion to strike the brief for Klein's failure to serve it. (Exhibit 30)." (ARW pg. 22). This is an admission and a false claim again. In Respondent's February 8, 2001, "Appellee's Motion for Extension of Time to File Merit Brief," (see P. Exhibit P) the motion contains as exhibit "A" a photo copy submitted by Respondent to that Court of Klein's certified mail envelope which Respondent argues in the motion, "The postmark on the envelope which contained the Brief which was served on Appellee's counsel is dated February 5, 2001. (see Exhibit A attached)." (P. Exhibit p, pg. 1). Therefore, (1) Respondent has admitted lying to that court and this court; (2) Respondent supplied the evidence and statement to establish that Klein, in fact, did serve the brief; (3) Respondent proved that Klein served the brief in which Respondent claimed Klein did not serve; (4) Respondent has proven that Respondent had received a significant amount of time to prepare a response brief by obtaining an extension of time; and (5) now Respondent has provided additional evidence that Respondent got the "appeal as of right" dismissed on the false claim (argument) that Klein did not serve the brief "at all." The Ohio Supreme Court established this to be an appeal as of right where Due Process principles apply because S.Ct. Prac. R. II, Section 1(A)(1) establishes that an original action that originated in the

-24-

court of appeals invokes the appellate jurisdiction of the Supreme Court and is designated an appeal as of right. Therefore, Klein was on direct appeal from his original action which originated in the court of appeals; thus, it was an appeal as of right. Second, and most importantly, Ohio Supreme Court Rule XIV, Section 2(C) states that documents in original actions need no proof of service, and S.Ct. Rules do not set forth any set time limits for service in an appeal as of right in an original action, but the old rules applicable then 1998-99 were still in effect and required the Clerk to serve the brief under these circumstances. Therefore, Respondent possessed no grounds to have that appeal dismissed and did so under false pretenses in violation of Klein's Due Process rights. Additionally, being indigent on an appeal as of right also invokes Klein's Federal Due Process protection on an appeal as of right. Klein's (P. Exhibit M) demonstrates first that Klein was proceeding in forma pauperis, and, second, that the Clerk of Court specifically told Klein that he only had to supply as many copies as he could afford and Klein sent a letter demonstrating that he was unable to obtain any copies in a timely manner and that the copy necessary for service had to be made by the Clerk and service forwarded by the Clerk. Third, in Klein's (P. Exhibit O, pgs. 1 through 5) Klein demonstrates that the Clerk told Klein's mail carrier that the Clerk's office would make and serve the necessary copy on the opposing party. Klein's carrier would have rendered personal service had it not been for the Clerk's alternate instruction and Klein was entitled to have the Clerk make the necessary copy. Especially, in light of the fact that Klein was indigent and without the aid of an attorney. Nevertheless, Respondent's argument was that Klein did not serve the document at all which was false and caused his appeal as of right to be dismissed in violation of all of Klein's Federally protected rights on an appeal as of right. In addition, the Court possessed the very evidence to establish that Klein did, in fact, serve the opposing party the appeal brief and that Respondent presented a false claim to get the appeal dismissed on false pretenses.

### INDIGENT'S RIGHT TO APPOINTED COUNSEL AND
### EFFECTIVE ASSISTANCE OF COUNSEL ON AN APPEAL AS OF RIGHT

(19) In the appeal stated in para. (18) Klein possessed the right to have counsel appointed to draft and submit his pleadings in his behalf as an indigent party in a state facility without adequate access to the court due to the incarceration as Klein specifically points out in Klein's (P. Exhibit N)

-25-

**ACTUAL INNOCENCE CLAIM**

which Respondent refers to as a "myriad of excuses" is, in fact, not a "myriad of excuses" but is a sound pro se request for the aid of counsel to meet procedural standards. The Court, in dismissing this appeal violated Klein's numerous Federally protected rights, especially, in light of the fact that it based its decision on a lie and the Court had to have known it was a lie because it had just granted Respondent's motion for extension of time which contained the evidence that Klein did, in fact, serve the brief that Respondent claimed Klein did not serve. Nevertheless, Klein still possessed the Federally protected right to counsel on this appeal and was not provided the aid of an attorney which is the most significant factor. Klein's Fourteenth and Fifteenth grounds for relief are based on the facts set forth in this appeal, that, Klein possessed no adequate remedy at law of appeal to raise these claims and other claims.

**ACTUAL INNOCENCE**

(20) As the United States Supreme Court pointed out in Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514 (1992), "...a prototypical example of 'actual innocence' in a colloquial sense is the case where the State had convicted the wrong person of the crime." Sawyer, at 340. "...it may turn out later, for example, that another person has credibly confessed to the crime, and it is evident that the Law made a mistake." Sawyer, at 340-41. In Klein's case, the State has convicted the wrong person, and this is one of those rare cases in which another person had "credibly" confessed to the crime and excluded Klein from any involvement, and it is evident in the record with the new evidence that the Law made a mistake. Additionally, Constitutional error precluded development of true facts and resulted in the admisson of false ones in Klein's case,as the Sawyer Court points out is a significant factor in the equation of actual innocence. Sawyer, at 340. Klein's claims should be reviewed by this Court because the State has admitted to Klein's innocence on record; therefore, obtained a conviction by unconstitutional means, whereas, Constitutionally fair trials produce just results. The State has already admitted on record that it knew Klein is innocent then continued to build up layers upon layers of evidence to substantiate and objectively verify Klein's innocence, but the jury was lied to and mislead repeatedly which precluded the development of true facts and resulted in the admission of false ones. As the United States Supreme Court holds, "...a petitioner asserting both innocence

-26-

### ACTUAL INNOCENCE CLAIM

and constitutional error 'need carry less of a burden' with respect to
innocence than a petitioner like Herrera who claimed only innocence. Schlup v.
Delo, 513 U.S. 298, 316, 115 S.Ct. 851, 861 (1995). The Schulp Court holds
that to permit consideration of his procedurally defaulted claims, a
petitioner must show that in light of all of the evidence, including new
evidence, "it is more likely than not that no reasonable juror would have
found petitioner guilty beyond a reasonable doubt." Schulp, at 327. Once the
State itself admitted on record that it knew the only statements implicating
Klein were lies and it possessed evidence from Doctors to substantiate that,
and when it admitted that Klein was not there at the time the injury occurred
and the State verified this with valid, trustworthy, and reliable evidence,
then it was admitting to Klein's innocence because it possessed no evidence to
obtain a conviction on. But, the jury was not permitted to weigh all of this
evidence into their decision. (As fully set forth below).

### RICHMOND'S CONTINUAL AND REPEATED, KNOWING AND VOLUNTARY CONFESSIONS AND ADMISSIONS TO GOVERNMENT OFFICIALS

(21) The first evidence that the jury was not provided to factor into its
decision was, that, the State possessed the overwhelming evidence that
Richmond continually, repeatedly, knowingly, voluntarily, and tape recorded
confession after confession after knowingly and voluntarily waiving her
Miranda rights on three (3) different occasions (P. Exhibit "G" pgs. 1, 2, & 3
Richmond's three (3) Miranda waivers) confessing that she was solely and
independently responsible for the injury that caused the death of her son. The
jury was not permitted to weigh into their decision Richmond's three (3)
voluntary Miranda waivers; thus, it was unable to make an accurate and
reliable determination as to whether Richmond's confessions as being solely
and independently responsible were valid, trustworthy, and reliable. As the
Miranda Court holds, validity of the Miranda waiver is determinative of the
validity, trustworthiness, and reliability of the confession. This would have
had a powerful impact on its determination. The State has already admitted on
record that Richmond's statements implicating Klein were lies, it knew they
were  lies, and it possessed expert witness evidence that her statements
implicating Klein were lies. (As fully set forth below). The new evidence here
would have pushed the jury's determination in Klein's favor because as the
United States Supreme Court holds, "The fact that a confession is made without

## ACTUAL INNOCENCE CLAIM

the grant of immunity and overwhelmingly against the individuals penal
interests 'is a strong indicator of reliability.' See Williams v. United
States, 512 U.S. 549, 599, 114 S.Ct. 2431, 2435 (1994)..." Carriger v.
Stewart, 132 F.3d 436, at 475 (9th Cir. 1997). Here, as in Carriger, the
record viewed as a whole does not support the State's contention that
Richmond's trial testimony implicating Klein was more reliable than her
confessions. Carriger, at 475-76. Richmond attempted to recant her confessions
to implicate Klein diverting "full blame" to Klein, and she was not charged
for causing the injury or the death. Her statements implicating Klein were
merely recantations of her confessions which Courts view with extreme
suspicion. Carriger, at 483. Additionally, the Court in Smith v. Zant, 887
F.2d, at 1435-36 held that "confessions carry 'extreme probative weight.' " The
State presented no evidence whatsoever to discredit her confessions or to
justify the recanting of her confessions to render her trial testimony
implicating Klein more trustworthy and reliable than her confessions.
Therefore, there is no legal or factual basis for the jury's determination
that her statements diverting full blame to Klein, implicating Klein, were
more valid, trustworthy, or reliable. The jury was not presented with the
facts that Richmond voluntarily waived her Miranda rights numerous times and
this effects the validity, trustworthiness, and reliability of her confessions
and statements implicating Klein. It is not an issue of credibility. It is an
issue of the validity, trustworthiness, and reliability of her confessions
verses her statements implicating Klein; therefore, it is an issue of Law.
Therefore, regardless of Richmond's credibility, her confessions were more
valid, trustworthy, and reliable than her statements diverting blame to Klein,
and neither Richmond, nor the State, offered any evidentiary or legal
justification whatsoever for permitting Richmond to simply recant her
confessions and divert the entire blame for the injury and the death over to
Klein. The jury's determination was made in the vacuum of the absence of the
evidence which establishes validity, trustworthiness, and reliability.
Richmond's confessions possess the extreme probative value that attaches to
confessions that are made without the grant of immunity and overwhelmingly
against her legal interests.

   (22) The State admitted that it knew that Richmond had made numerous
admissions to other officials prior to her tape recorded confessions to

-28-

## ACTUAL INNOCENCE CLAIM

police, (1) to the 911 operator (T.P. 403, 13-25; 503); (2) to the Captain of
the Fire and Rescue Department upon arrival to the residence after Richmond's
911 call (T.P. 439); (3) then to Doctor Aronson at Children's Hospital upon
arrival (T.P. 408, 1-10); (4) then to a Chaplain and Social Service
Investigator at Shriner's Burn Institute after Richmond's son was transferred
there (T.P. 408, 15-25); (5) then detectives arrived at Shriners where Richmond
first (1) voluntarily waived her Miranda rights and gave one of numerous tape
recorded confessions that she was solely and independently responsible for the
injury (T.P. 410; 463, 11-16; 490, 491) which were consistent with what the
State knew from doctors was the nature of the injury an "immersion burn." Then
Richmond was taken to CIS headquarters where she continued voluntarily giving
full confessions. (T.P. 468). Richmond was then taken to the residence by
detectives where she waived her Miranda rights a second time and demonstrated
for detectives what she had done when the injury occurred. (T.P. 468; 485). Then
Richmond was taken back to CIS headquarters where she waived her Miranda rights
a third (3) time and she maintained that she was responsible. (T.P. 486). The
State admitted that it knew Richmond's statements implicating Klein were lies
because it possessed expert evidence that the injury could not have happened the
way Richmond implicated and diverted blame to Klein. (T.P. 543; 544; 545).
Therefore, the jury relied upon Richmond's lies implicating Klein in convicting
Klein in violation of Due Process of Law established in United States v. Agurs,
427 U.S. 97, 96 S.Ct. 2392 (1972), but the State's admission did not cure the
prejudicial effect of the lies. Richmond maintained her confessions from 9:34 am
January 2, 1997, (T.P. 403) until 9:30 pm that evening when detectives
threatened criminal charges then Richmond suddenly and without any legal
justification or evidentiary support diverted "full blame" to Klein, (T.P. 426,
11-25; 543) and the State knew her statements implicating Klein were lies.
First, what the jury was not provided to calculate into their decision was what
evidence justified permitting Richmond to simply divert full blame after
continually voluntarily providing numerous confessions that were consistent with
the injury as the State knew from doctors how it occurred. (as fully set forth
later). Second, what the jury was not provided to factor into the equation was
the evidence that establishes the validity, trustworthiness, and reliability of
her confessions as being solely and independently responsible which were three
(3) Miranda waivers in conjunction with the fact that she did so in the absence
of the grant of immunity and overwhelmingly against her own legal interests.

## ACTUAL INNOCENCE CLAIM

(23) The State admitted on record that it knew that the only statements implicating Klein were lies because it knew from doctors that it was an immersion burn and it could not have happened the way Richmond implicated Klein. (T.P. 543, 544, 545). The State admitted that it knew Richmond's confessions were consistent with what the State knew from doctors was the nature of the injury "immersion" because she stated that she found him in a "pool of water" (T.P. 487, 7-8) with an "expressionless face" (T.P. 513; 523; 540) which is both consistent with the nature of the injury "immersion" and consistent with Richmond's son's seizure disorder described as a blank stare. (T.P. 347, 19-25; 348; 304; 305; 307; 346). And, the State admitted that it knew about the seizure disorder during its investigation. (T.P. 540, 16-19). Second, the State knew because Richmond confessed that she delayed seeking medical treatment for 12 hour for her son. The record indisputably holds this 12 hour delay caused her son's death as established by the state's admission that this delay is what caused the death, (T.P. 650, 19-25) and this was supported by expert witness testimony. Expert testimony established that her son died of "Adult Respiratory Distress Syndrom" "shock lung" brought on by Richmond's 12 hour delay which was the reason he died "in actuality." (T.P. 578, 13-14; 583, 12-13). Her son possessed a (65) percent chance of survival had he received immediate medical treatment (T.P. 575, 20-21) but this plummeted to a ten (10) percent (T.P. 579, 15-16) due to her 12 hour delay. Richmond was her son's sole legal guardian. (T.P. 345). Klein had only known them for about a month (T.P. 417) and had only lived there for two weeks, (T.P. 545, 10-14) and Klein had never acted in the capacity of father or guardian. (T.P. 370, 6-12). Therefore, Richmond possessed sole and independent power and legal authority over "her son" and made all decisions concerning "her son." Richmond lied to detectives about when the injury occurred, (T.P. 495, 11-13) again confessing in open court that when she was asked if anybody had prevented her from seeking medical treatment Richmond responded to detectives, "I am an independent person, I have a brain, and I can make these decisions on my own," (T.P. 424; 425; 427; 491; 549) thus, Richmond confessed to being solely and independently responsible for the 12 hour delay in open court. Additionally, Richmond confessed in open court that she was fully aware of the severity of the injury from the onset. (T.P. 375; 376; 377; 384; 393; 394; 395). The most powerful and overwhelming evidence that can be presented to any court is an individual's own confession while on the witness stand

ACTUAL INNOCENCE CLAIM

and this court was presented with multi-layered confessions from Richmond. Richmond would not have done all of this confessing had Klein actually caused the injury and the death of "her son" which is the only logical and reasonable conclusion that can be drawn from all of the true facts. The two things that were missing was that the jury was not provided with the evidence (1) that justified and supported Richmond recanting her numerous confessions, and (2) the evidence which established the validity, trustworthiness, and reliability of Richmond's numerous confessions to detectives. Therefore, it could not have prescribed the correct value to her confessions. This was pertinent evidence because it was her statements diverting full blame to Klein that was the only evidence implicating Klein. No reasonable juror could have been able to prescribe a greater weight to Richmond's statements and testimony implicating Klein than it could prescribe to Richmond's numerous, continual, and repeated confessions after waiving her Miranda rights three (3) times. That would have been impossible had the jury been fully informed. All of this crushes hard against Richmond's credibility, but this is not a credibility issue. The issue is validity, trustworthiness, and reliability of her confessions verses her statements implicating Klein which is an issue of law, but the jury could not have accurately and adequately made that determination in the absence of the evidence because the validity, trustworthiness, and reliability of her confessions was based upon the fact that she repeatedly "knowingly," "voluntarily," and "intelligently" gave them without the grant of immunity and heavily against her own legal interests. And, the jury was not provided any evidence to justify or support Richmond suddenly diverting full blame. As the Court in Sawyer pointed out, "...it may turn out later, for example that another person has credibly confessed to the crime, and it is evident that the Law made a mistake." Sawyer, at 340-41. This Court was not engaging in a credibility determination, it was establishing that it is evidence of innocence when another person had knowingly, voluntarily, and intelligently given valid, trustworthy, and reliable confessions because that evidence is overwhelming. Additionally, Richmond's confessions placed Klein somewhere else at the time of the injury.

(24) Another piece of evidence that the jury was not provided to factor into the equation is that detectives had already established that Klein was not a suspect, (T.P. 463) because klein was not even there at the time the

-31-

## ACTUAL INNOCENCE CLAIM

injury occurred which was corroborated by highly credible, valid, trustworthy, and reliable evidence, Richmond's own voluntary confessions against her own legal interests. (T.P. 42). Richmond would not have continually and repeatedly confessed to being solely and independently responsible for an injury of this severity if Klein had caused it. As stated above, Richmond was fully aware of the severity of the injury from the onset then lied to detectives about when the injury occurred knowing as a mother with 12 years of experience that any delay in seeking medical treatment would have serious legal ramifications.

(25) More evidence that the jury was not provided to factor into its determination was that Richmond was not charged for causing the injury, nor for causing the death through her 12 hour delay. Richmond was only charged for the "pain" and "suffering" caused by her 12 hour delay in seeking medical treatment for her son as the State's testimony on record makes perfectly clear. (T.P. 15, 24-25; 16, 0-1). Therefore, the evidence thoroughly demonstrates that Richmond was actually the individual who caused the injury through her negligence and was the individual who delayed medical treatment for 12 hours causing her son's death. The record also demonstrates that Klein was not there, but the jury was not provided all of this evidence. The jury's verdict is undermined by the fact that it was not provided all of the facts. As the Sawyer Court points out, that, when Constitutional violations prevent development of true facts or cause admission of false ones this is a significant factor in a claim of actual innocence as here in Klein's case.

## RICHMOND'S GRANT OF IMMUNITY

(26) More evidence that the jury was not provided to factor into their determination was that Richmond was provided immunity from prosecution and the State failed to provide Klein with this promise prior to or at trial. It is obvious from the record after Richmond made multi-layered confessions as to causing the injury then delaying medical treatment for 12 hours causing the death of her son that she was granted immunity because she was only charged with a single count indictment compared to Klein's six (6) count indictment which included a murder charge in which Richmond received immunity from. She was only charged for, as the prosecutor placed it on record, "...the resultant suffering by Matthew as a result of this charge is the reason she was charged in this." (T.P. 15; 16). As stated above, it was this 12 hour delay that sealed her son's fate ultimately causing his death. Richmond obviously

**ACTUAL INNOCENCE CLAIM**

confessed to being the individual who delayed treatment for 12 hours (T.P. 15, 13-17) because she plead guilty to this single count for the resultant pain and suffering caused by her 12 hour delay in seeking medical treatment for her son. The jury was not provided this evidence. The jury was not provided the fact that Richmond received only five (5) years on her one (1) count indictment because she had not been sentenced yet and that was all she could get for causing the injury and the death of her son because she was provided immunity. Since, Richmond was sole legal guardian then she is solely responsible for the care of her child. Therefore, it is indisputable that Richmond was personally and solely responsible for the 12 hour delay that caused the death of her son, and she walked away with a five (5) year sentence compared to Klein's (31) year sentence for having done nothing wrong. Therefore, Richmond was granted and supplied immunity from the other five (5) counts of the indictment that Klein was charged with. Had the jury been properly presented with these facts about how heavily Richmond was paid by the State for providing testimony then it is indisputable that this would have severally effected their determination. The Constitutional violation caused Klein to be convicted of Richmond's crimes. There were two (2) crimes involved, (1) causing the injury; and (2) causing the death by way of a 12 hour delay in seeking medical treatment.

(27) More evidence that the jury was not provided to factor into their decision was the fact that the State promised Richmond that it would stand silent and not even seek a prison term for her at her belated sentencing hearing that was strategically scheduled and rescheduled until after Klein's trial which was about a year. This was an extreme motivating factor which caused Richmond to fabricate testimony to continue to divert blame and to attempt to obtain a favorable minimal sentence at her upcoming sentencing hearing. The State admitted at a post-trial hearing that it made this promise (T.P. 767, 4-9) which should have been sufficient to cause a new trial at minimum. The Court found that the State did not disclose this promise, neither before trial, nor during trial. (T.P. 752, 24-25; 753). The State falsely argued that a question that it posed to Richmond constituted disclosure, (T.P. 751, 1-9; 761, 14-25) but as stated above, the Court found that it was not disclosed. This promise was not discovered until after trial by Klein's attorney Anita Berding. (T.P. 753). The State's two (2) promises that it

-33-

## ACTUAL INNOCENCE

not charge Richmond with a six (6) count indictment after her numerous confessions, and, second, the State's promise not to pursue a prison term when the evidence demonstrated that Richmond was the actual perpetrator in the equation causing both the injury and the death was, in fact, all powerful evidence of Klein's innocence that Klein was denied of at trial. Richmond's single statement implicating Klein possessed no weight or reliability because Richmond had already confessed to being solely and independently responsible providing Klein with a powerful alibi supported by valid, trustworthy, and reliable evidence, her confessions. (T.P. 463). Additionally, the State stomped Richmond's entire trial testimony implicating Klein when it testified that it knew those statements were all lies and that they were contrary to and in direct conflict with the evidence that the State knew from doctors, (T.P. 543; 544; 545) but this obviously did not cure the prejudicial effect of the lies. The evidence demonstrates that Richmond sought only to continue to divert blame to evade a six (6) count indictment and sought only to mitigate her own sentence at her upcoming sentencing hearing which was strategically scheduled and rescheduled until after Klein's trial which motivated her to lie. (T.P. 423, 15-25). The problem was that the jury did not get to evaluate all of the evidence in the equation.

## FALSELY ALLEGED APOLOGY NOTE

(28) More evidence that the jury was not permitted to factor into its determination was the police search warrants and inventory lists attached. Richmond was knowingly permitted by the State to fabricate testimony regarding an alleged apology note. Richmond fabricated what the note said because she did not accurately read it to the jury, she made it up as she went along. (T.P. 400; 401). Second, the detectives presented false testimony concerning this alleged apology note at a pre-trial hearing testifying that this letter, "in a white envelope," was given to them by Richmond in a "white envelope." (T.P. 47, 19-21). The detective stated that this note (index card) was on the door of the residence, and Richmond claimed that she asked detectives if she could get the index card from the mailbox, but both of these testimonies were lies because the police search warrants dated January 8, 1997, (P. Exhibit I) demonstrate that the "index card" in a "white envelope" was removed from Klein's "kitchen trash" on that date. Both inventory lists demonstrate that all of the index cards were taken from the kitchen trash. And, the index card

-34-

## ACTUAL INNOCENCE CLAIM

itself, that was mis-read to the jury, bears police writing of the date and where it was found (1/8/97 Kitchen Trash). (P. Exhibit I, pg. 5). The record demonstrates that Klein had no access to the inside of the residence after the injury occurred. (As fully set forth in Habeas Petition Sixth Ground for Relief pg. 50). Therefore, Klein could not have written the note after the injury for it to have found its way to the kitchen trash because Klein was arrested outside the residence on January 2, 1997, and the doors were barricaded from the detectives earlier investigation of the crime scene when Richmond was demonstrating what she had done. Since, the true evidence demonstrates where the alleged apology note came from and the date it was discovered by police this demonstrates that Richmond's testimony concerning the note was a fabrication, and the State knew it was a fabrication because it possessed the Search Warrants and Inventory lists from January 8, 1997, showing that the note was discovered six (6) days after Klein's arrest. Most importantly, the note had nothing to do with the injury and was written on a previous date which was why it was in the kitchen trash. The State presented no evidence whatsoever connecting the note to the injury nor the entire incident, and there was nothing in the note that connected it to the injury or the entire incident. It simply was not reliable evidence and the jury was lied to thus mislead because it was not provided all of the facts and evidence to render an accurate and reliable determination.

## FALSELY ALLEGED ADMISSION

(29) More evidence that the jury was not provided to factor into its decision. Detectives falsely alleged that Klein made an admission during custodial interrogation, but this is false. Had the jury heard the true evidence which was the State's admission that Klein was invoking his Fifth Amendment rights from the moment of his arrest, its determination would have been different. At a pre-trial hearing that the jury was not permitted to hear, detectives admitted that Klein refused to voluntarily give written statements, (T.P. 61) refused to voluntarily give tape recorded statements, (T.P. 62) and refused to voluntarily sign the detective's alleged notes of the alleged interrogation, (T.P. 29; 498) thus, refusing to "adopt" the alleged notes and refusing to verify that these notes accurately contain Klein's alleged statement. As the Sixth Circuit points out, " '...it would be grossly unfair to allow the defense to use a statement to impeach a witness which

-35-

## ACTUAL INNOCENCE CLAIM

could not fairly be said to be the witness' own rather than a product of the investigator's selections, interpretations, and interpolations." U.S. v. Carroll, 26 F.3d 1380, 1391 (6th Cir. 1994). Here, as in Carroll, "...there is no indication that they were verified or adopted by the witness interviewed." Carroll, at 1391. Detectives admitted that they did not produce a verbatim record of the alleged interrogation, (T.P. 29; 31, 1-4; 33; 40; 62) and admitted that they did not write down anything valid, trustworthy, reliable, or "significant." (T.P. 50). Klein refused to verify the notes because those notes did not contain Klein's statements. As the record demonstrates the only statements that Klein made to police was his statements at Shriners that he was not there at the time of the incident. (T.P. 42, 12-15; 464, 9-16). The detective admitted that he picked and chose what he wanted to write down. The entire alleged admission was a product of the detective's fabrications, "interpolations." Therefore, it was grossly unfair for the state to claim an admission that could not be said to be Klein's own statement. There was evidence that Klein invoked his rights to remain silent and to have an attorney present during any interrogation at the time of arrest but the jury was not provided this evidence. First, Klein invoked his right to remain silent when he left the lobby at CIS after a three and a half hour wait (T.P. 481, 18-25). Then Klein invoked his rights to remain silent and to have an attorney present when he told detectives that he refused to voluntarily give written, tape recorded, and verbal statements and refused to verify any police notes. Detectives were deceptive and waited until almost midnight on the evening of January 2, 1997, when no attorney could have been hired for the interrogation before they arrested Klein. (T.P. 29; 34; 35). Klein did not qualify to have an attorney appointed because he was way over income for that and detectives knew it. Klein could have retained his own attorney for the interrogation as Klein did for the trial and appeal, but not at midnight on January 2, 1997, the day following new years day there were no attorneys available to be hired and detectives knew that. Klein was not stupid. Klein never opened his mouth in the absence of an attorney and tape recorder. The totality of the circumstances is obvious and blatant. Had Klein been "voluntarily" giving any statements there would have been no prohibition about tape recording it to secure an "accurate" record as to what was said for future litigation. Klein denies ever making any statements "whatsoever" in the

-36-

## ACTUAL INNOCENCE CLAIM

absence of a competent attorney and a tape recorder. This is evident due to the fact that Klein invoked these rights throughout the entire trial. It is obvious that Klein began invoking his rights upon arrest on January 2, 1997, at 11:30 pm and never subsided invoking his rights. Klein was not provided an attorney, and as the Miranda Court holds, " '[I]t is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' This proposition applies with equal force in the context of providing counsel to protect an accused's Fifth Amendment privilege in the face of interrogation. Although the role of counsel at trial differs from the role during interrogation, the differences are not relevant to the question whether a request is a prerequisite." Miranda, at 471; 1626. And, "...any evidence that the accused was threatened, trucked, or cajoled into a waiver will of course, show that the defendant did not voluntarily waive his privilege." Miranda, at 476; 1629. Klein possessed more than the Miranda requisite of "any evidence," Klein possesses "ironclad" admissions by the State itself that Klein was refusing to make any voluntary statements in the absence of an attorney and tape recorder because Klein refused to voluntarily give written, tape recorded, and verbal statements. The State's admissions to two out of three is overwhelming evidence that Klein invoked his rights to remain silent and to have an attorney present during any interrogation which meets the Miranda requirement of "any evidence." Had the jury been fully presented with this evidence and any other evidence that would have been derived from that evidence then it would have been able to determine that Klein invoked his Fifth Amendment rights from the onset of the arrest and never waivered from that position. The State possessed the burden of proof, not Klein, but it failed to provide any proof as to what was actually said at this alleged interrogation. Therefore, it was grossly unfair in direct violation of Klein's Due Process rights to submit an alleged admission that could not be said to be Klein's own statements and detectives (the State) admitted that Klein refused to sign and verify the alleged notes. Klein did not make those statements. The only statements that Klein volunteered were his statements at the hospital (T.P. 42; 464, 9-16). Klein had no reason to waiver from that and the State possesses no evidence otherwise. The police summaries do not qualify as a record demonstrating proof beyond a reasonable doubt because those summaries were done at a much later date (T.P. 40, 18-19) and

## ACTUAL INNOCENCE CLAIM

were the product of the detective's fabrications and "interpolations."

(30) The State then disavowed Klein's alleged admission by establishing that it was false and inconsistent with what detectives knew from doctors was the nature of the injury, "immersion." (T.P. 480, 24-25; 481; 504, 15-25; 505, 1-6). Since, the State presented and the jury relied upon what it knew was a false statement then it stepped directly into the path of Klein's Federally protected Due Process rights because the United States Supreme Court holds, "...a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United State v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397 n.8 (1972). The State admitted that it knew that the alleged admission was a lie therefore a false and perjured statement; therefore, reliance on what the State knew was a lie cannot be used to obtain a conviction. Since, Klein was not "voluntarily" supplying them with any "voluntary" statement it stands to reason that he was being "coerced" and "cajoled." But, this is not even the case because Klein offered no statements at all. Therefore, regardless of whether or not Klein actually made this alleged admission, it was not evidence that the State could legally present to the jury because the State admitted that it was a lie; thus, presenting it to the jury was the decimal equivalent of blatantly lying to the jury knowing that it was a lie. But, most importantly, Klein possessed the Federally protected right to have an attorney present at that interrogation and if it was to late in the evening to obtain the counsel specifically requested by Klein before questioning then the interrogation never should have occurred that evening anyway because it was midnight on January 2, 1997, a day after new years day which made it a holiday. As the Miranda Court made clear, " '...the right to be furnished counsel does not depend on a request. ' " Miranda, at 470; 1626. Klein's behavior by leaving the CIS lobby and throughout the entire trial demonstrates that Klein always made the indisputable choice of both silence and the aid of a retained counsel. Thus, Klein's actions demonstrate that he would not have made any statement in the absence of an attorney and a tape recorder to secure an accurate record of "exactly what transpired" during an interrogation. Klein's experience demonstrates that Klein would never proceed without fully invoking his rights at every point and every stage in all proceedings;

-38-

### ACTUAL INNOCENCE CLAIM

Therefore, the interrogation stage would not have been treated any differently by Klein. This meets the Miranda standard of "...any evidence..." Miranda, at 476; 1629. Klein does not have to testify at any hearing where the State possesses the burden of proof at. Klein denied "everything" when he plead not guilty.

(31)More evidence that the jury was not provided to factor into its determination was the fact that the State possessed the burden of proof that Klein made an admission and exactly what was said and transpired, that, what detectives testified to accurately portrayed what occurred. Klein did not adopt the alleged notes of the alleged interrogation at any time. Therefore, it was grossly unfair, in direct violation of Due Process of Law for the State to present an alleged admission that it could not rightly prove was Klein's own words. Carroll, at 1391. The State's failure to secure accurate and reliable evidence of the totality of the circumstances surrounding the alleged interrogation precluded an accurate, reliable determination of voluntariness, knowingly, and intelligently of the alleged admission. Klein was unable to effectively challenge the credibility, trustworthiness, and reliability of the Detective's testimony alleging details of an alleged admission that allegedly occurred almost a year earlier. Detectives admitted not making accurate tape recordings or notes, nor accurate transcripts of what allegedly transpired (T.P. 29 through 35; 40; 50; 61; 62; 64) leaving Klein and the State without any trustworthy or accurate record of what actually transpired on the evening of the alleged interrogation. Detectives could not possibly have remembered that much detail after almost a year without an accurate record having been made at the time of the alleged interrogation. Detectives simply made it up as they went along because there is no evidence that any admission was even made. The Sixth Circuit held, "In Crain v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142 (1986), the Supreme Court held that it was unconstitutional for a court to prevent a defendant from challenging the credibility of a confession by excluding all evidence of the circumstances under which the confession was made." Harpster v. Ohio, 128 F.3d 322, 329 (6th Cir. 1997). What detectives did was exclude evidence of the totality of the circumstances of the alleged interrogation violating Klein's constitutional rights by failure to secure an accurate record by appointing Klein an attorney or permitting Klein time to retain one since he could afford one, or by failure to secure accurate record of what actually transpired by either tape recording, video taping, or legibly

-39-

## ACTUAL INNOCENCE CLAIM

writing what could be considered a verbatim transcript of the totality of the circumstances surrounding the alleged interrogation and the alleged admission. It could not have been done by memory nearly a year later, nor by the alleged illegible scribbled notes allegedly taken because these alleged notes do not contain anything like what detectives testified to, nor do the alleged notes contain anything that could have been transcribed into a summary at a later time, and Klein never made any such admission. Additionally, in Klein's case as in O'Guinn v. Dutton, 88 F.3d 1409 (6th Cir. 1996) at 1417, the detective's testimony was the most substantial evidence of how unreliable the alleged admission was because it simply did not comport with the information known to detectives and the State knew it and admitted to this. (T.P. 504, 16-25; 506). Nevertheless, as set forth above, Klein refused voluntarily making written, tape recorded, or verbal statements, and refused to verify or sign the alleged notes of the alleged interrogation in the absence of an attorney. Had the alleged interrogation been recorded there would have been even more evidence favorable to Klein. And, the State possessed the burden of proof as to what was actually and truthfully said and not said and this it failed to do by its failure to supply the requisite attorney. This is all clear and convincing evidence of Klein's innocence.

For the foregoing reasons Klein respectfully requests review of his Federal Constitutional claims advanced in Klein's habeas corpus petition.

Respectfully submitted,

Richard J. Klein III 350-022

Petitioner/pro se

R.C.I. P.O. Box 7010

Chillicothe, Ohio 45601

## CERTIFICTE OF SERVICE

Petitioner hereby certifies that a true copy of the foregoing has been served upon counsel for Respondent Assistant Ohio Attorney General Diane Mallory at 150 East Gay Street Columbus Ohio by regular U.S. mail on this 21st day of January, 2005.

Richard J. Klein III 350-022