UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

RICHARD J. KLEIN III,

    Petitioner,

                           Case No. C-1-01-794

vs.                        JUDGE BECKWITH

                           M.J. BLACK

HAROLD CARTER, Warden,

    Respondent.

## PETITIONER'S SUPPLEMENTAL EXHIBIT "Q"

(For use with Petitioner's Traverse/Response)

Respectfully submitted,

Richard J. Klein III 350-022

Petitioner/pro se

R.C.I. P.O. Box 7010

Chillicothe, Ohio 45601

## CERTIFICATE OF SERVICE

Petitioner hereby certifies that a true copy of the foregoing has been served upon counsel for Respondent Assistant Ohio Attorney General Diane Mallory at 150 East Gay Street Columbus Ohio 43215 by regular U.S. Mail on this 21st day of January, 2005.

Richard J. Klein III 350-022

# The Supreme Court of Ohio

FILED

OCT 24 2001

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

State of Ohio,                    :        Case No.  01-1588
        Appellee,                 :

        v.                        :              E N T R Y

Richard J. Klein,                 :
        Appellant.                :


    Upon consideration of the jurisdictional memoranda filed
in this case, the Court dismisses the appeal as not involving
any substantial constitutional question.

COSTS:

    Docket Fee, Affidavit of Indigency filed.


(Hamilton County Court of Appeals;  No. C990066)


THOMAS J. MOYER
Chief Justice

Pg.1

01-1588

In The Supreme Court of Ohio

Richard J. Klein,
    Appellant,

    V.

State of Ohio,
    Appellee

: On Appeal from the
Hamilton County Court of
: Appeals, First Appellate
District of Ohio
: Appeal Case No. C-990066
Appeal Case No: C-970788
: Trial Case No. B-9700308

---

Notice of Appeal of Appellant
Richard J. Klein

---

Richard J. Klein 350022
S.O.C.F. P.O. Box 45699
Lucasville, Ohio 45699

Appellant / Pro se

Michael Allen (0025214)
Hamilton County Prosecutor
1000 Main Street - Room 411
Cincinnati, Ohio 45202

Counsel for Appellee

FILED

SEP 0 4 2001

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

Pg. 2

## Notice of Appeal of Appellant Richard J. Klein

Appellant Richard J. Klein hereby gives notice of appeal to The Supreme Court of Ohio from the judgment of the Hamilton County Court of Appeals, First Appellate District of Ohio, entered in Appeals Case No. C-990066 on July 27, 2001.

This case involves a Felony conviction and a Constitutional question.

Respectfully Submitted,

Richard J. Klein 350022
Richard J. Klein 350022
S.O.C.F. P.O. Box 45699
Lucasville, Ohio 45699

Pg. 3

01-1586

In The Supreme Court of Ohio

Richard J. Klein,
    Appellant,

     v.

State of Ohio,
    Appellee.

: On appeal from the
: Hamilton County Court of
: Appeals, First Appellate
: District of Ohio
:
:
: Appeals Case No. C-990066
: Trial Case No. B-9700308

---

Memorandum in Support of Jurisdiction of
Appellant Richard J. Klein.

---

Richard J. Klein (350022)
S.O.C.F. P.o. Box 45699
Lucasville, Ohio 45699

Appellant/pro se


Michael Allen (0025214)
Hamilton County Prosecutor
1000 Main Street, Room 411
Cincinnati Ohio 45202

Counsel for Appellee

**FILED**

SEP 04 2001

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

**This document contained the following**
(1) MOTION TO AMEND AND SUPPLEMENT COUNSEL'S BRIEF;
(2) MOTION FOR RECONSIDERATION FOR FILING AMENDED AND SUPPLEMENTAL BRIEF;
(3) 26(B) **Motion for leave;**
(4) 26(B) APPLICATION FOR DELAYED REOPENING 26(B)
(5) MOTION TO REDUCE NUMBER OF COPIES;

1

Pg. 4

# Table of Contents

Explanation of Why This Case Should be Heard. . . . .1

Statement of The Case and Facts. . . . . . . . .1

Proposition of Law NO. I:

Is double jeopardy, due process, and equal protection of the law denied when a court imposes five maximum consecutive sentences R.C. 2953.08 A(1), "... arising out of a single incident... "R.C. 2953.08 A(1)(b); "... and the consecutive sentences exceed the maximum prison term allowed for the most serious offense..." R.C. 2953.08(C). N. Carolina v. Pearce, 395 U.S. 711, 717 (1969); State v. Thomas (1980), 61 Ohio St.2d 254. . . . . . .2

State v. Lang (1995), 102 Ohio App.3d 234. . . . . . .2

State v. Johnson (1983) 6 Ohio St.3d 420 . . . . . .2

Proposition of Law NO. II:

Prisoners' have a constitutional right of access to the courts; the State nor its officers may abridge nor impair this right. Bonds v. Smith, 430 U.S. 817, 97 S.t. 491. . . . . . . . . . . . . . . .3

Appeal Rule 13(A). . . . . . . . . . . . . . . .3

Appeal Rule 26(B). . . . . . . . . . . . . . . .3

Anders v. California, 386 U.S. 738 . . . . . . . .4

Proposition of Law No. III:

Defendants have a right to an advocate in mandatory appeals; Counsel has an ethical

-i-

responsibility of Constitutional dimension to argue zealously those issues contained of record, and to raise argueable issues consistent with law. Delgado v. Lewis, 181 F3d 1087 (9th Cir. 1999); Evitts v. Lucey, 469 U.S. 387 (1985).

responsibility of Constitutional dimension to argue zealously those issues contained of record, and to raise argueable issues consistent with law. Delgado v. Lewis, 181 F3d 1087 (9th Cir. 1999); Evitts v. Lucey, 469 U.S. 387 (1985). . . . . . . . . . . . 5

Appeal Rule 16 A(7) . . . . . . . . . . . 5

Proposition of Law No. IV:

The Court of appeals abused its discretion when it struck Appellant's pro se brief which was, in fact, timely filed denying due process, access to the Courts, and an adequate meaningful review on appeal in violation of federal and State constitutional rights.

Hawkins v. Marion Corr. (1986), 28 Ohio St.3d 4 . . . . . 6

Appeal Rule 13(A). . . . . . . . . . . . 6

Woodard v. Ohio Adult Parole Authority, 107 F3d 1178 (6 Cir. 1997). . . . . . . . . . . . 6

Proposition of Law No. V:

Due process requires the prosecution to disclose exculpatory evidence, to defense, when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 87 (1963).

Due process requires the prosecution to disclose exculpatory evidence, to defense, when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 87 (1963). . . . . . . . . . . . 7

Lee v. Illinois, 476 U.S. 530, 544 (1986). . . . . . 8

United States v. Powers, 467 F2d 1089 (CA 7 1972. . 9

Jacobs v. Scott, 513 U.S. 176 (1995). . . . . . 9

Shumaker v. Oliver Cannon (1986), 28 Ohio St.3d 367. . . . 9

Proposition of Law No. VI:

-11-

Pg. 6

"A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." <u>United States v. Agurs</u>, 427 U.S. 97 (1976), c <u>In re Winship</u>, 397 U.S. 358 (1970); <u>State v. Jenks</u> (1991), 61 Ohio St.3d 259.

<u>Brown v. Illinois</u>, 422 U.S. 590 (1975). . . . . .12

<u>Gates v. Illinois</u>, 462 U.S. 213 (1985). . . . . .12

<u>Lee v. Illinois</u>, 476 U.S. 530 (1986). . . . . .12

<u>Proposition of Law No. VIII</u>:

"Prosecutors' duty is . . . to refrain from improper methods calculated to produce wrongful convictions."

<u>Burger v. United States</u>, 295 U.S. 78 (1935). . . . .12

<u>State v. Flaherty</u> (1992), 78 Ohio App.3d 718. . . . .13

<u>Proposition of Law No. IX</u>:

"The due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358 (1970).

. . . . . .13

<u>State v. McGhee</u> (1997), 79 Ohio St.3d 192. . . . . .13

R.C. 2903.11 A(1). . . . . . .13

R.C. 2901.22(C) . . . . . .13

R.C. 2901.22(B) . . . . . .14

<u>Proposition of Law No. X</u>:

Trial Counsel has an ethical responsibility of constitutional dimension to zealously represent his clients interests (I.A.B.A. Standards (1982 Supp)) No. 4-4.1; consistent with this duty is to conduct investigation, present exculpatory evidence, make appropriate objections and challenges to evidence, conduct appropriate cross-examination, and to assert any other rights defendant may possess. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984); <u>United States v. Cronic</u>, 466 U.S. 648, 104 S.Ct. 2039. . . .14

<u>U.S. v. Purkett</u>, 7 F.3d 779, 782 (8 Cir. 1993) . . . . .14

Pg.8

## Explanation of Why This Case Should be Heard

First, this case involves a felony conviction contrived by the denial of federal and state constitutional rights. Second, the case involves a constitutional question; is double jeopardy, due process, and equal protection of the law denied when a court imposes five maximum consecutive sentences arising from a single act?

## Statement of the Case and Facts

This case arises from the death of Mathew Richmond, who was the son of co-defendant Sharon Richmond, and received burns from being placed in a tub of hot water and died 12 days later. Richmond initially confessed to being "Solely" responsible (T.p. 503, 12-17); then after being threatened with criminal charges recanted the confessions to implicate Richard Klein (Appellant). Appellant asserted the defense of actual innocence. (T.p. 379, -25; 380). On January 14, 1997, Appellant was charged with murder; involuntary manslaughter, felonious assault, and three counts of endangering children. On July 11, 1997, the trial court imposed five maximum consecutive sentences totalling 31 years. On September 12, 1997, Appellant appealed. On December 3, 1999, conviction was affirmed. On May 18, 2000, and January 2, 2001, Appellant filed pro se motions for delayed reopening pursuant to App. R. 26 (B), and on July 27, 2001, the motion was denied.

-1-

Pg. 9

<u>Proposition of Law No. I</u>: (see Habeas Petition 13th Ground) pg 101

Is double jeopardy, due process, and equal protection of the law denied when a court imposes five maximum consecutive sentences R.C. 2953.08 A(1) "... arising out of a single incident..." R.C. 2953.08 A(1)(b), "... and the consecutive sentences exceed the maximum prison term allowed... for the most serious offense..." R.C. 2953.08(C); <u>N. Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969); <u>State v. Thomas</u> (1980), 61 Ohio St.2d 254.

Appellant was sentenced to five maximum consecutive sentences totalling 31 years for the single act of placing Matthew in a tub of tap water, and Appellant was subjected to five multiple enhancements of serious physical harm for each count. Which raised the felony degree and sentence. "Where an accused is sentenced for two crimes arising from what is indisputably a single course of conduct constitutes plain error and is prejudicial requiring reversal." <u>State v. Lang</u> (1995), 102 Ohio App.3d 243; "The two offenses need not be identical in constituent elements or actual proof in order to be the same for double jeopardy purposes." <u>State v. Johnson</u> (1983), 6 Ohio St.3d 420, at 421. The sentence exceeds the maximum term allowed for the most serious offense. R.C. 2953.08(C). The court, by imposing five maximum consecutive sentences, is, in effect, imposing multiple punishments for what is essentially one offense.

-2-

<u>Proposition of Law No. II (Habeas Petition - 1st, 2d, 3d Grounds) Pgs. 1-10).</u>

Prisoners' have a constitutional right of access to the courts; the state nor its officers may abridge, nor impair this right. <u>Bonds v. Smith</u>, 430 U.S. 817, 97 S.Ct. 491.

Appellant was forced to proceed pro se; on July 27, 1999, Appellant filed a motion to amend and supplement counsel's brief based on ineffective assistance of counsel which included a request for new counsel. On August 13, 1999, the court granted the motion, not appointing new counsel, setting the filing date for September 7, 1999. On that date, Appellant placed the pro se brief in the prison's mailing system for filing because App. R. 13(A) provides, ". . . briefs are deemed filed on the date of mailing," but on October 5, 1999, the court struck the brief. On October 19, 1999, Appellant filed a motion for reconsideration of that judgment containing mail receipts, signed by an officer, to establish date of mailing. On October 26, 1999, the court overruled that motion.

Next, on December 3, 1999, the court affirmed conviction. Appellant received notice of this judgment on February 27, 2000, 85 days late and after the time had expired for appeal to the Supreme Court. On May 18, 2000, within 90 days of receiving notice of judgment, Appellant filed a pro se application for delayed reopening pursuant to App. R. 26(B) which the clerk refused to file based on Appellant's indigency. An affidavit of indigency accompanied the

-3-

Motion including a letter requesting copies to be made. On June 15, 2000, Appellant filed a motion to reduce number of copies necessary for filing pursuant to App. R. 26(B) which contained mail receipts and other evidence to establish good cause. See (Motion for Delayed Appeal to the S.Ct., exhibit A, pages 1 through 23). (M.D.A.). On June 30, 2000, the Motion was denied.

Appellant was denied effective assistance of counsel on appeal; therefore, it was necessary to reopen appeal to exhaust remedies on claims. Prejudice occurred because counsel's brief violated <u>Anders v. California</u>, 386 U.S. 738 (1967). Counsel's deficiencies forced Appellant to proceed pro se.

Then on January 2, 2001, after Appellant secured funds to purchase copies necessary for filing pursuant to App. R. 26(B), the application was refiled; good cause for late filing was shown. (M.D.A. exhibit A, pages 1 through 23). On July 27, 2001, the court denied the application.

(1) The clerks failure to serve notice of judgment, and refusal of the application App. R. 26(B), (2) Counsel's failure to give notice of judgment, and other deficiencies, (3) the court's striking of pro se brief, and denial of pro se application App. R. 26(B), all worked to deny Appellant an adequate meaningful review on appeal of right, access to the courts, due process, equal protection of the law, and effective assistance of counsel in violation of Appellant's federal and state constitutional rights.

-4-

Pg 12.

<u>Proposition of Law No. III</u>: (Habeas Petition 4th Ground)

pg. 12

Defendants' have a right to an advocate in mandatory appeals; counsel has an ethical responsibility of constitutional dimension to argue zealously those issues contained of record, and to raise arguable issues consistent with law. <u>Delgado v. Lewis</u>, 181 F.3d 1087 (9th Cir. 1999); <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).

Counsel's brief violated Anders. v. California. In the first assignment of error, counsel failed to cite pertinent evidence contained of record as required by App. R. 16 (A) (7); that, the state confirmed the plea bargain on record. (T.p. 767, 2-9), and that, the court abused its discretion when it denied bringing Richmond in for inquiry into her plea bargain based on the fact that, "... It's simply not in the record," (T.p. 799, 18-20), but of course "it's" not in the record that is why "it" was raised in the motion for new trial as newly discovered evidence. The court recognized that, "there was another plea bargain."

Next, there was no evidence of record to support counsel's second and third error. Counsel's fourth error argues allied offenses, but it is well established law that these offenses are not allied; therefore, the error is frivolous. Counsel's fifth error would have had merit had the correct evidence been cited. Counsel's sixth error, jury instruction was consistent with law; therefore, not prejudicial, but the error itself was inconsistent with law.

- 5 -

therefore the error itself was frivolous. Counsel's Seventh error, "grusom photos" was groundless because the state was relying on other evidence. The court's conclusion on each error was that the record did not support it, it was meritless, or it was contrary to the evidence or law; therefore, counsel performance was deficient in disregarding pertinent errors contained in record; their omission was prejudicial because those claims rise to a federal constitutional magnitude and are likely to cause reversal.

<u>Proposition of Law No. IV</u>: (Habeas Pet. 1st. Ground)

The court of appeals abused its discretion when it struck Appellant's pro se brief which was, in fact, timely filed denying due process, access to the courts, and an adequate meaningful review on appeal in violation of federal and state constitutional rights. <u>Hawkins v. Marion Corr.</u> (1986), 28 Ohio St.3d 4; <u>Woodard v. Ohio Adult Parole Authority</u>, 107 F.3d 1178 (6 Cir. 1997).

On July 27, 1999, Appellant filed a motion to amend and supplement counsel's brief. On August 13, 1999, the motion was granted on the basis of ineffective assistance of appellate counsel. The court set the filing date for September 7, 1999, and on that date Appellant placed the pro se brief in the prison's mailing system for filing pursuant to App. R. 13(A), "... briefs are deemed filed on date of mailing." On October 5, 1999, the court struck the

-6-

the brief. On October 19, 1999, Appellant filed a notice for reconsideration of that judgment containing mail receipts, signed by an officer, to establish date of mailing (filing). On October 26, 1999, the court overruled. Pursuant to rule, the brief was timely filed when it was placed in the prison's mailing system; therefore, the court abused its discretion denying Appellant due process, access to the courts, and an adequate meaningful review of the record on appeal.

Proposition of Law No. V: (Hab. Pet. 5th & 12th Ground)

Pgs. 36 & 100

Due process requires the prosecution to disclose exculpatory evidence, to defense, when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 87 (1963).

The State failed to disclose co-defendant's (Richmond's) plea bargain arrangement. Richmond was granted immunity in five out of the six counts of the indictment even though she initially confessed to being "solely" responsible, and even though she was guilty of lying either in her confessions or in her statements implicating Appellant. She further received an O.R. bond and was promised that the State would stand silent and not request a prison term. Richmond's sentencing was scheduled for after Appellant's trial so she was awaiting sentencing at the time of her testimony. The plea bargain asses' credibility because it creates witness bias, motive to fabricate testimony favorable

-7-

Pg. 15

to the State in an attempt to obtain a minimal Sentence, to evade responsibility, "to shift blame or curry favor. Lee v. Illinois, 476 U.S. 530, 544, 106 S.Ct. 2064 (1986). Richmond's testimony implicated Appellant and was relied upon to establish all the elements of the offenses; therefore, it was material to guilt. Absent Richmond's testimony the state would not have a case. Furthermore, Richmond's statements to police, after recanting her confessions, were used as the evidence to establish probable cause necessary to make a warrantless arrest, but Richmond continually lied. (T.p. [373, 16-18; 374, 1-6; 428, 14-25; 429, 7-9; 502, 12-22]; [377, 1-19; 382, 13-18; 389, 2-9; 391, 1-25; 424, 5-25; 425, 1-25; 427, 1-25; 549, 8-23]; [390, 1-25; 491, 1-25]).

This issue was raised in a motion for new trial (T.p. 752; 753; 773; 774) based on newly discovered evidence. The State confirmed the deal (T.p. 767, 2-9); the court recognized, "that there was a non-disclosed plea agreement that did not come out at trial." (T.p. 794, 18-20). The court abused its discretion when it added, "...it's not on record so I'm not going to let her testify." (T.p. 794, 18-20). If it were on record it would not be newly discovered evidence.

Next, the state failed to disclose that Richmond's 12 hour delay in seeking medical treatment is what caused the death. The State further cloaked this evidence when it placed of record at Richmond's plea hearing that the

- 8 -

Pg. 16

delay had nothing to do with the death. (Tp. 15, 18-23).
Expert testimony established Matthew had a 65% chance
of survival but that dropped to 10% due to the damage
to the lungs caused by the delay (Tp. 575; 578; 579; 583;
584) and Richmond being sole legal guardian is solely
responsible for the care of her own child. Due process
is denied when the state takes two dramatically opposed
positions in two different proceedings against co-
defendants. United States v. Powers, 467 F.2d 1089, 1097
(CA7 1972); Jacobs v. Scott, 513 U.S. 176 (1995).

Next, the state failed to provide defense with expert
witness report which denied Appellant the opportunity
to have admissibility of highly inflammatory expert
testimony determined outside of the hearing of the jury;
thus, denying due process. Shumaker v. Oliver Cannon,
(1986), 28 Ohio St.3d 367, 369-70; 71 Ohio St.3d 421.

Proposition of Law No. VI: (Hab. Pet. 6th Ground)
Pg. 44
"A conviction obtained by the knowing use of perjured
testimony is fundamentally unfair, and must be set
aside if there is any reasonable likelihood that the
false testimony could have affected the judgment of
the jury." United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct.
2392 (1976); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340 (1935).

Officer Heinlein fabricated testimony that they had
just received a call from the hospital and learned from
doctors that, "... the injury was an immersion burn

-9-

Pg. 17

and not a splash burn, that it couldn't happen that way," (Tp. 525, 6-11), "then they approached Richmond with this information and she decided to tell the truth." (Tp. 525, 13-20). First, Richmond was fully aware of the seriousness of her son's injuries. (Tp. 377; 393; 394). Second, they did not receive a call from the hospital that evening (Tp. 539, 10-25), and the issue of immersion or spraying never even occurred to any of them that evening. (Tp. 541, 12-17). Then Heihlein testified that Richmond said Appellant caused the injuries by spraying and this is in her taped statements. (Tp. 543, 16-21; 544, 1-25), but Richmond never said the injury was caused by spraying. (Tp. 51, 6-10; 539, 10-14). Then prosecutors compounded its prejudicial affect by re-soliciting the untruthful testimony. (Tp. 550, 17-25; 551). Richmond's tapes are devoid of any such statements.

Richmond continually lied throughout the course of the investigation and detectives knew it. (Tp. 543, 7-25; 544, 1-25; 545, 1-25). Then she continually lied while testifying. (Tp. [373, 16-18; 374, 1-6; 428, 14-25; 429, 7-9; 502, 12-22;]; [377, 1-14; 382, 13-18; 389, 2-9; 391, 1-25; 424, 5-25; 425, 1-25; 427, 1-25; 427, 1-25; 549, 8-23];[390, 1-25; 491, 1-25]). The state relied on Richmond's statements to implicate Appellant, and her testimony to establish the elements of the offenses.

Landesberg testified as though he was involved in the testing of the water and tub stating that "we" did

-10-

Pg 18

a lot of tests to determine whether Richmond's statements were consistent with the nature of the injury (T.p. 492, 18-25; 493, 22-23), but Heinlein testified that Landesberg was not involved (T.p. 548, 19-25; 549, 1-2); therefore, had no first hand knowledge, and they did not thoroughly test (T.p. 540, 9-25; 541, 1-11; 547, 1-25; 548, 1-2; 550, 1-2), but based their assumption on feeling (T.p. 504, 8-10) not facts because the facts are that Richmond had been showing them "how she filled the tub with water" (T.p. 485, 5-6, 541, 6-11), "how she placed him in the tub" (T.p. 523, 1-25), "how she pulled him out" (T.p. 513, 22-25), and she continually confessed (T.p. 503, 12-17) maintaing those confessions (T.p. 487, 3-25) which she would not have done had she not been personally responsible because she was fully aware of the severity of the injury (T.p. 377, 393, 394). Richmond's version of what occurred was consistent with the nature of the injury, immersion, although she continually mis-lead detectives in details; her testimony was perjurious and police and prosecutors knew it.

Next, detectives presented false testimony that Appellant caused the injuries by spraying (T.p. 492, 9-10; 481, 8-11; 504, 16-25; 505, 1-5), but it was well established that this was an immersion burn not a "splash" (T.p. 573, 4-6), and detectives knew it. (T.p. 481, 1-4). There exists no evidence of these statements. Appellant refused taped statements (T.p. 50, 14-20; 533, 1-8), and written statements (T.p. 61, 24-25).

-11-

Pg. 19

and refused to sign notes (Tp. 497, 20-25; 498, 1-10).
The State has the burden of proof supported by substantial credible evidence. In re Winship, 397 U.S. 358 (1970); State v. Jenks (1991), 61 Ohio St.3d 259.

Proposition of Law No. VII: (Hab. Pet. 9th Ground)
Pg. 64

"If the totality of the circumstances reveals that the statement was the direct result of the exploitation of the Fourth Amendment violation, the statement and any additional evidence obtained thereafter is inadmissible." Brown v. Illinois, 422 U.S. 590 (1975).

Appellant was arrested without a warrant and probable cause. Detectives acted on Richmond's statements after she recanted her confessions, which do not contain the evidence necessary to establish probable cause. "If police are going to rely on hearsay to establish probable cause that hearsay must be both factual and reliable." Gates v. Illinois, 462 213. "... a codefendant's statements are presumptively unreliable as to the passages detailing a defendant's conduct." Lee v. Illinois, 476 U.S. 530 (1986).

Proposition of Law No. VIII: (Hab. Pet. 6th Ground)
Pg. 44

"Prosecutors duty is ... to refrain from improper methods calculated to produce wrongful convictions." Burger v. United States, 295 U.S. 78 (1935).

Appellant asserted a defense of innocence. (Tp. 380, 1-12). The State aided by police testimony continually impressed upon the jury their opinion of Appellant's

-12-

Pg 20

guilt, and of the truthfulness of Richmond's testimony; that, her confessions were lies and her statements implicating Appellant were the truthful statements. (Tp. 470, 14-25; 503, 12-25; 504, 1-12; 525, 19-20; 526, 5-8; 614, 18-22). Then counsel's cross-examination elicited the same response. (Tp. 408; 409; 410; 425; 426; 427; 430; 491; 492; 493; 494; 543; 544; 545; 579). State v. Boston (1989), 46 Ohio St.3d 108.

Proposition of Law No. IX: (Hab. Pet. 10th Ground)
                                          Pg. 66

The due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358 (1970).

"The existance of the culpable mental state of reckless is the essential element of the charge endangering children." State v. McGhee, (1997), 79 Ohio st.3d 192. Knowingly is the essential element of felonious assault. R.C. 2903.11 A(1). The State failed to prove, with substantial credible evidence, that it was Appellant who caused the injury, and that he possessed the requisit culpable mental states of reckless and knowingly R.C. 2901.22(C) and R.C. 2901.22(B). The State did prove that Appellant did not possess these culpable mental states. (Tp. 456, 2-3; 466, 3-4; 478, 15-18). Therefore, Appellant did not possess the foreknowledge necessary and was not aware of the potential danger of the tap water, and the State failed in its burden of proof.

Pg. 21

Proposition of Law No X: (Hab. Pet. 11th Ground)
                                                    Pg. 82
Trial counsel has an ethical responsibility of constitutional
dimension to zealously represent his client's interests
(1 A.B.A. Standards (1982 Supp.) No. 4-4.1), consistent with is
a duty to conduct reasonable investigation, present
pertinent exculpatory evidence, make appropriate objections
and challenges to evidence, conduct appropriate cross-
examination, and to assert any other rights defendant
may possess. Strickland v. Washington, 466 U.S. 668, 104
S.Ct. 2052 (1984), United States v. Cronic, 466 U.S. 648.

(1) Counsel failed to investigate to make an informed
tactical cross-examination into Richmond's plea agreement,
(2) Counsel failed to investigate cause of death to make an
informed tactical cross-examination that would have establi-
shed it was Richmond's 12 hour delay which caused the death, thus,
she is the individual responsible since she is sole legal guardian
and solely responsible for the care of her child, (3) Counsel failed
to object and challenge expert's factually unsupported opinion
on "holding" (T.p. 574, 19-22), (4) and failed to obtain a pre-trial
expert witness report to determine the admissibility of
highly inflammatory testimony out side of the hearing of
the jury, (5) failed to challenge detectives and Richmond's
untruthful testimony and opinion testimony, (6) Counsel's
cross-examination of Richmond and detectives continually
re-solicited the same response that she lied in her confess-
ions, but told the truth when implicating Appellant, thus,

-14-

compounding its prejudicial affect. (T.p. 408, 11-25; 409, 1-3; 426, 1-14; 430, 10-12; 492, 7-15; 493, 11-17; 494, 24-25; 544, 23-25; 545, 45), (7) failed to investigate into discovery (T.p. 402, 8-10; 403, 1-4) (8) failed to assert Appellant's Fourth Amendment rights, (9) failed to appropriately challenge maximum consecutive sentences and multiple enhancements, (10) re-solicited untruthful testimony compounding its prejudicial affect (T.p. 504, 16-25; 505, 1-6; 544, 18-25; 545, 1-6), and presented prejudicial cross-examination (T.p. 492, 1-25; 500, 16-25; 539, 16-17), and failed to wait for Witnesse's response to pertinent questions (T.p. 427, 16-25), (11) failed to investigate and cross-examine alibi witness, (12) failed to object to blatantly inadmissible, prejudicial hearsay testimony (T.p. [400, 23-25; 401, 1-25]; [471, 1-25; 472, 1-25]; [511, 14-18; 513, 2-25; 514, 1-3; 522, 14-25; 523, 1- ; 526, 6-25; 527, 1-25; 528, 1-25; 529, 1-4]).

<u>Conclusion</u>

For the foregoing reasons Appellant requests that this court grant jurisdiction to allow this case to be allowed and reviewed on its merits.

Respectfully submitted,
Richard J. Klein 350022
S.O.C.F. P.O. Box 45699
Lucasville, Ohio 45699
Appellant / pro se

-15-

Pg. 23

IN THE

SUPREME COURT OF OHIO

**STATE OF OHIO**                               :          NO. 01-1588

           Plaintiff-Appellee        :          On Appeal from the Hamilton County
                                            Court of Appeals, First Appellate
     vs.                                       :          District

**RICHARD KLEIN**                          :          Court of Appeals
                                                  Case Number C-990066
           Defendant-Appellant      :

---

## MEMORANDUM IN RESPONSE

---

Michael K. Allen (0025214P)
Prosecuting Attorney

**James Michael Keeling (0068810P)**
Assistant Prosecuting Attorney
Counsel of Record
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3178
Fax No. (513) 946-3021

COUNSEL FOR PLAINTIFF-APPELLEE, STATE OF OHIO

Richard Klein
#350022
S.O.C.F. P.O. Box 45699
Lucasville, OH 45699

DEFENDANT-APPELLANT PRO SE

Pg 24

# TABLE OF CONTENTS

PAGE #

EXPLANATION OF WHY THIS CASE IS NOT A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND DOES NOT INVOLVE A SUBSTANTIAL CONSTITUTIONAL QUESTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.

    ARGUMENT IN SUPPORT OF PROPOSITIONS OF LAW . . . . . . . . . . . . . . . 8.

    FIRST PROPOSITION OF LAW: THE COURT OF APPEALS DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR A DELAYED APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10.

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10.

i.

Pg 25

## EXPLANATION OF WHY THIS CASE IS NOT A CASE OF PUBLIC OR GREAT GENERAL INTEREST AND DOES NOT INVOLVE A SUBSTANTIAL CONSTITUTIONAL QUESTION

The issues raised in the Defendant's memorandum in support of jurisdiction do not warrant meritorious consideration by this Court.  The issue of when the granting of a motion for delayed appeal is appropriate is well decided in Ohio.  This case offers no new of novel perspective on the issues nor does it present a reason to revisited established precedence.   The First District Court of Appeals applied proper Ohio law and reached a proper conclusion.  This case falls short of the standards needed for this Court to exercise jurisdiction over this appeal.

### STATEMENT OF THE CASE AND FACTS

**Procedural Posture:**

The Defendant December 29, 1998 the Defendant was convicted on all charges in an six count indictment for committing Murder, Involuntary Manslaughter, Felonious Assault, and Child Endangering.  On December 3, 1999, The First District Court of Appeals affirmed the Defendant's conviction.  State v. Klein (Dec. 3, 1999), Hamilton App. No. C-990066, unreported.  The Defendant chose not to ask the this Court to accept jurisdiction.

On January 2, 2001, Defendant filed an Application for Delayed Reopening pursuant to Appellate Rule 26(B) as well as a Motion for Delayed Reopening.  The First District Court of Appeals denied that request on July 27, 2001.  From this judgment the Defendant now seeks an appeal.

1.

Pg 26

**Statement of Facts:**

Matthew Richmond was the only child of Sharon Richmond, (T.p. 345). He was twelve years old, three and one-half feet tall, and weighed about sixty-five pounds, (T.p. 350). Matthew was mentally handicapped. He was developmentally delayed and suffered from a seizure disorder, (T.p. 304, 347). He communicated in one word utterances and had difficulty staying focused in school, (T.p. 305). Matthew had some physical limitations but generally was very active and was one of the more physically able students at his school, (T.p. 304, 328, 347).

On November 15, 1996, Sharon Richmond met Defendant through a friend, (T.p. 354). The two started to date and by December 9, 1996, Ms. Richmond and Matthew moved into Defendant's apartment located on St. Catherine Street in Hamilton County, Ohio, (T.p. 355). At the time they moved in, Defendant was not aware that Matthew urinated in his bed almost every night and that he occasionally had a bowel movement while he slept, (T.p. 364-365). About a week or week and a half after Matthew and Ms. Richmond moved in, Matthew had a bowel movement in his pants, (T.p. 366). Ms. Richmond was cleaning Matthew in the bathroom when Defendant entered and told her that he could handle it- that he would get Matthew to stop doing this, (T.p. 366). Ms. Richmond did not accept Defendant's offer at that time, (T.p. 367). On December 20, 1996, Matthew had another bowel movement in his pants, (T.p. 367). Defendant put Matthew in cold water in the bathtub. Defendant said that Matthew was twelve and he should be treated as such, (T.p. 367-368). Ms. Richmond told Defendant that she did not

2.

Pg 27

like him disciplining Matthew that way, (T.p. 368). On December 31, 1996, Matthew had another bowel movement in bed. Again, Defendant gave Matthew a cold bath, (T.p. 369). On January 1, 1997, Ms. Richmond gave Matthew a bath and put him to bed in his bedroom around 8:00 p.m., (T.p. 371). She and Defendant were watching television when Defendant heard Matthew moving. Defendant went to Matthew's bedroom and found that Matthew had another bowel movement in his pants, (T.p. 372). Defendant initially said he was going to leave Matthew that way but Ms. Richmond told Defendant he could not do that, (T.p. 372). Defendant got up, took Matthew by the hand to the bathroom for what Ms. Richmond believed would be another cold bath, (T.p. 373). Defendant said that this would be the last time Matthew did this, (T.p. 373). About twenty or twenty-five minutes after Defendant took Matthew into the bathroom, Defendant came out and told Ms. Richmond that there had been an accident- that Defendant had burned Matthew, (T.p. 373). Ms. Richmond started to get up and Defendant pushed her back, saying it was okay, (T.p. 373). By the time Ms. Richmond made it back to the bathroom, Defendant already had Matthew out of the bathtub, (T.p. 374). Matthew was roasted. He was dark red, like the color of a lobster, (T.p. 375). Defendant told Ms. Richmond that he did not know what happened. He had left and when he got back, Matthew was by the faucet knobs, but Defendant had no idea Matthew had touched them, (T.p. 376). Defendant told Ms. Richmond that he hosed Matthew down, and by the time he realized the water was that hot, he had already sprayed Matthew's whole body, (T.p. 376). Ms. Richmond saw skin peeling off Matthew's ankles. At first, Matthew did not make a sound, but when Ms. Richmond and Defendant put him in his bedroom with cold rags and sheets on him, he was moaning, (T.p. 376). Ms. Richmond was going to take Matthew to the hospital when Defendant said that it wasn't

3.

Pg 28

that bad. It was just like a real bad sunburn, (T.p. 377). Ms. Richmond put wet sheets and

Noxema on Matthew, (T.p. 383). Defendant and Ms. Richmond set up a bed for Matthew

on the sofa in the living room, (T.p. 385). At one point in the night, Matthew crawled into

bed with Ms. Richmond and Defendant made her take Matthew back to the sofa, (T.p.

385). Throughout the night, Ms. Richmond did not sleep, (T.p. 386). She changed

Matthew's sheets and compresses all night to try to keep him comfortable, (T.p. 386).

Defendant left for work the next morning around 7:45 a.m., (T.p. 388). Matthew's breathing

became very shallow, he was unresponsive and he was very pale, (T.p. 388-389).

Defendant came back from work around 9:30 a.m. and Ms. Richmond called 911, (T.p.

389-390). Ms. Richmond told the 911 operator that she had been giving Matthew a bath

that morning when she left the room, (T.p. 390). Ms. Richmond said that when she came

back, Matthew had played with the faucet knobs and he was burned, (T.p. 390-392).

Defendant was standing next to Ms. Richmond when she made the call, (T.p. 391). Before

the paramedics arrived, Defendant left the apartment and told Ms.Richmond to call him

when she got to the hospital, (T.p. 392). After arriving at the Shriner's Hospital, Ms.

Richmond told police officers the same thing she told the 911 operator, (T.p. 392, 462).

Defendant told police that he was not home at the time of the incident. He told them he

had left for work around 7:30 a.m. and that Ms. Richmond called him around 10:00 a.m.

and told him Matthew was burned, (T.p. 464). The police asked Ms. Richmond and

Defendant to go to the police station for further questioning that afternoon, (T.p.395, 467).

Defendant was asked to wait in the lobby, (T.p. 467). In her interview, Ms. Richmond again

told police what she had told them and the 911 operator earlier, (T.p. 395). While

Defendant waited in the lobby, police brought Ms. Richmond back to the apartment to

Pg. 29

inspect the scene, (T.p. 396). When they went back to the police station, Defendant had left and did not return that night, (T.p. 396, 470). At around 9:30 p.m. that night, Ms. Richmond told police that Matthew was actually burned twenty-four hours previously, not that morning as she had originally said, (T.p. 397, 471, 526). Ms. Richmond then told the police that it was Defendant who had taken Matthew to the bathroom that night after Matthew soiled his pants, (T.p. 398, 471). She told police then that when Defendant found that Matthew had defecated in his pants the night of January 1, he first said he was just going to leave Matthew like that, (T.p. 526). He then decided to give Matthew a bath. Ms Richmond told police that Defendant took Matthew into the bathroom, ran the water and put Matthew in it. Defendant came out of the bathroom later and told Ms. Richmond that there had been an accident- that Matthew was burned and red, (T.p. 527). The police took Ms. Richmond back to the apartment at 11:00 p.m., (T.p. 398, 473). Defendant had nailed the front door shut, (T.p. 398, 473). The police and Ms. Richmond were going towards the other entrance when Defendant came out and was then arrested, (T.p. 399, 473). Defendant asked one of the officers if Ms. Richmond could get the letter he left her in the mailbox, (T.p. 400). The letter said that Defendant loved Matthew and he never meant him any harm. He said it was an accident, (T.p. 401). Defendant was taken to the police station to be questioned. At 11:50 p.m. Defendant told police that he had caused the burns. He told police he took Matthew to the bathroom to clean him up. He squirted Matthew with what he believed was a cold mix of water. He left the bathroom briefly and when he came back, he hosed Matthew down some more. He noticed Matthew was turning red and he realized the water was hot when it splashed on his hand, (T.p. 477, 534). Defendant told police this happened between 11:00 p.m. and 12:00 a.m or 1:00 a.m.

5.

Pg 30

and 2:00 a.m. on January 1 or January 2, (T.p. 478, 534). He told police he wanted it to be an uncomfortable bath for Matthew, (T.p. 478). He told police he did it to teach Matthew not to go in his pants, (T.p. 535). Defendant admitted he had given Matthew cold baths on two or three prior occasions, (T.p. 479, 536). When the police confronted Defendant with the medical evidence that the injury was an immersion burn and could not have been caused by squirting Matthew, Defendant said he knew he was looking at fifteen years for this, (T.p. 481). At that time he requested a lawyer and the interview was terminated, (T.p. 481).

Dr. Glenn Donald Warden, general surgeon, Professor of Surgery at the University of Cincinnati and Chief of Staff at the Shriner's Burns Institute, testified to Matthew's injuries and treatment during the eleven days before he died, (T.p. 559, 583). According to Dr. Warden, Matthew was in a very extreme condition when he was admitted on January 2, (T.p. 563-564). Matthew had burns over 74 percent of his body, his body temperature was 81 degrees, his blood pressure was very low at 50 over 30, (T.p. 564). Matthew's body temperature and blood pressure were not consistent with the original history given that this had occurred around 9:00 a.m. that morning, (T.p. 564). Matthew's burns were not consistent with the original history given that Matthew had turned on the hot water and sprayed himself, (T.p. 565). In Dr. Warden's opinion, the burns were compatible with a submersion type injury, (T.p. 565). Dr. Warden testified that the survival rate for a person with third degree burns over 74 percent of his body was 60 percent, (T.p. 575). He said that the twelve hour delay in treating the burns made Matthew's chances of survival less likely, (T.p. 578). When Dr. Warden first saw Matthew on January 2, Matthew's prognosis was very poor. He was given only a 10 percent chance of survival, (T.p. 579). Matthew

Pg 31

was a patient at Shriner's for the next eleven days, during which time he was administered fluids, he was put on a ventilator to make him breathe, he had incisions made through his dead skin to help him breathe better, and he underwent skin grafts, (T.p. 581-583). Matthew died on January 13, 1997, (T.p. 583). The cause of his death was pulmonary lung damage secondary to 74 percent total body surface area burns, (T.p. 584).

7.

Pg 32

## ARGUMENT IN SUPPORT OF PROPOSITIONS OF LAW

### FIRST PROPOSITION OF LAW: THE COURT OF APPEALS DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR A DELAYED APPEAL.

The State of Ohio, opposes Defendant's motion for delayed appeal because that he has failed to state an adequate reason for the failure to file a timely appeal.

App.R. 5 states in relevant part:

(A) Motion and Notice of Appeal.

After the expiration of the thirty day period provided by App.R.4(A) for the filing of a notice of appeal as of right in criminal cases, an appeal may be taken only by leave of the court to which the appeal is taken. A motion for leave to appeal shall be filed with the court of appeals and shall set forth the reasons for the failure of the appellant to perfect an appeal as of right * * *

Although the decision regarding whether to grant a motion for delayed appeal is a matter committed to the sound discretion of the appellate court, the court should not exercise its discretion and grant a criminal defendant's motion for delayed appeal, when the motion fails to adequately explain the reasons for the untimely appeal. See, State v. King (1984), 20 Ohio App.3d 126, 485 N.E.2d 280; App.R. 5(A). A claim that the trial court abused its discretion implies that it issued an unreasonable, unconscionable, or arbitrary ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. This Court, however, should be guided by a presumption that the ruling of the trial court was correct. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184.

Appellant claims he met the good cause requirement because (1) he did not receive notice of this Court's affirmance until Feb. 27, 2000, (2) he was unable to discover the ineffective assistance of counsel within the ten days allotted for a motion for

Pg. 33

reconsideration (3) his Motion for Delayed Reconsideration which he attempted to file on May 18, 2000 was returned for insufficient copies and postage (4) he was transferred to a different prison.

The threshold issue in a late filing of an App. R. 26(B) Application for Reopening is whether Defendant can establish good cause for the delay. The Defendant confuses the deadline for filing a Motion for Reconsideration with the deadline for a timely filing of a Motion to Reopen. Regardless of which procedure the Defendant is seeking to employ, the Defendant is woefully late in his filing. Even if the Defendant's argument that he was not informed of the Court's judgment until Feb. 27, 2000 is conceded, the time for filing a motion for delayed opening would have past in the early spring of 2000. The attempted filing of the Defendant's Motion to Reconsider also does not toll the time for the filing of his requests for a reopening of his appeal.

The Defendant can not establish good cause for filing his application more than a year after the Court of Appeals decided his direct appeal. Consequently the Court of Appeals did not abuse its discretion in denying the Defendant's motion.

9.

Pg 34

## CONCLUSION

The lower court's decisions, being without error, this Court should decline to exercise jurisdiction

Respectfully,

Michael K. Allen, 0025214P
Prosecuting Attorney

James Michael Keeling, 0068810P
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
Phone: 946-3178
Attorneys for Plaintiff-Appellee

## PROOF OF SERVICE

I hereby certify that on this 18th day of September, 2001, I have mailed a copy of the foregoing Memorandum in Response, by United States mail, addressed to Richard Klein, #350-022, S.O.C.F. P.O. Box 45699, Lucasville, OH 45699.

James Michael Keeling, 0068810P
Assistant Prosecuting Attorney

10.

Pg 35