FILED
JAMES BONINI
CLERK

05 JUN -2 PM 1: 51

 SOUTHERN DIST OHIO
WEST DIV CINCINNATI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

Richard J. Klein III,

    Petitioner,

vs.

Harold Carter,

    Respondent.

Case No. 1:01cv794

(Beckwith, J; Black, M.J.)

## PETITIONER'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 20, 2005, the Magistrate Judge placed of record the report and recommendation. (Doc. 80). Petitioner hereby objects to the report and recommendation its entirety on the grounds set forth herein.

Respectfully submitted,

Richard J. Klein III 350-022

Petitioner/pro se

R.C.I. P.O. Box 7010

Chillicothe, Ohio 45601

## PETITIONER'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner (Klein) objects to the Magistrate Judge's (hereinafter M.J.) Report and Recommendation (Doc. 80) on the grounds that it was factually inconsistent with the record, and contrary to law for the following reasons:

(1) First, the M.J. relied upon facts either not in record, or inconsistent with the facts of record. The M.J. held that the Ohio Court of Appeals' factual findings were entitled to a presumption of correctness unless petitioner rebuts the presumption by "clear and convincing evidence." Klein has demonstrated previously in his petition and traverse with "clear and convincing evidence" that rebuts the State Court's factual findings. The M.J. quoted the Ohio Court of Appeals' factual findings. (Doc. 80, pg.3):

"Klein had disciplined Matthew for incidents of incontinence by immersing the child in a tub of cold water. During the evening of January 1, 1997, Matthew suffered another incident, and Klein took him into the bathroom while Richmond remained in another room. Approximately twenty-five minutes later, Klein emerged from the bathroom and reported to Richmond that Matthew had been accidentally burned."

"Neither Klein nor Richmond sought immediate medical treatment for Matthew. Instead they treated Matthew's burns with cold wet sheets and Noxzema skin lotion. The next day, Richmond summoned paramedics when she discovered that Matthew's breathing had become rapid and shallow...."

"Matthew's treating physician at Shriners, Dr. Glen Warden, testified that Matthew had suffered third-degree burns covering seventy-four percent of his body. Warden stated that the injuries were consistent with Matthew having been immersed in twelve inches of 140-degree water for five seconds. ..."

"Richmond and Klein had initially told the authorities that Matthew was accidentally burned while Richmond was bathing him. They maintained that Matthew turned on the hot water faucet when Richmond momentarily left him unattended. Later, Richmond recanted this account and told investigating officers that Matthew had suffered his injuries at Klein's hands."

"Further investigation revealed that Klein had left a note for Richmond in which he claimed that he did not intend to harm Matthew and that his injuries had resulted from an accident. Klein gave the same account to investigating officers. He stated that he had accidentally burned the child while he was cleaning him with a hose that was attached to the faucet. Richmond ultimately entered a plea of guilty to one count of child endangering. She was sentenced to a term of incarceration for that offense."
(Doc. 8, pg. 3).

-1-

(Transcript pages hereinafter "T.P."). These interpretations of facts are clearly wrong, and either not in the record at all, or inconsistent with the record evidence and facts. The record demonstrates that Klein did not discipline Richmond's son either with hot or cold water, Klein did not take her son in the bathroom for (25) minutes while Richmond remained in the other room, nor did Klein emerge from the bathroom and report to Richmond that Matthew had been accidentally burned. The record demonstrates that the State knew that Richmond's statements implicating Klein were lies which was fully supported by expert witness evidence that the State relied upon. (T.P. 543; 544; 545). Richmond's statement diverting blame to Klein was the only evidence that the State based its entire case upon. Second, it would have been scientifically impossible for Klein to have placed Richmond's son in the tub of hot water with Richmond sitting right outside of the alleged open door. (T.P. 374, lines 6-10). This would be impossible since expert witness testimony demonstrated that her son would have been crying out. (T.P. 576, 16-18). She allegedly heard no sound, not even water splashing (T.P. 374, 2-5: 428, 14-25; 429, 1-8) and she was less than ten feet away from the open door in a tiny apartment. It is scientifically impossible for the child not to have made any sound that Richmond would have been unable to hear from where she was sitting right outside of the bathroom door, she would have had to have heard it. Since, Richmond's statements implicating Klein were known to be lies, her fairy tail that Klein emerged from the bathroom and reported to her that there had been an accident is simply inchoate and scientifically beyond refute that it was a lie. This evidence rises to the clear and convincing standard because it is scientific and common sense that Richmond was lying. Who would believe such absurdity. Additionally, this demonstrates that the Court of Appeals did not render a Constitutionally adequate and meaningful determination in violation of the Fourteenth Amendment of the United States Constitution. Therefore, the M.J. was in error in the holding. (Doc. 80).

The pronoun "they" as used in the above paragraphs is erroneous, misleading, and inconsistent with the record because "they" did not fail to seek medical treatment, only Richmond failed as the record clearly demonstrates. "They" did not treat Richmond's son with cold wet sheets and Noxiema, only Richmond did such a thing. (T.P. 513, 23-24; 523, 18-21). This was part of her multiple confessions as being solely and independently

responsible, and Klein never made any such statements. The record demonstrates that Richmond plead guilty for being personally responsible for the (12) hour delay in seeking medical treatment for her son, (T.P. 15) and demonstrates that Richmond announced to police during interrogation in one of her numerous tape recorded confessions that she delayed seeking medical treatment because she "is an independent person, she "has a brain," and she "can make those decisions on her own." (T.P. 409, 20-25; 424, 5-18; 425; 1-16; 427; 491; 549). And, Richmond was sole legal guardian, (T.P. 345; 346) Klein had only known them for two weeks, (T.P. 545, 10-14) and the only person who ever served in the capacity of father was Richmond's fience' Ron Evans. (T.P. 345; 346)(Not Klein). There is absolutely no evidence to support any of Richmond's allegations against Klein. The State nor the Court of Appeals can rely upon evidence that it admitted was a fabrication to support a conviction. Additionally, the State knew Klein was not there at the time the injury occurred. (T.P. 42). Richmond made numerous confessions as being solely and independently responsible for causing the injury after waiving her Miranda rights on three different occasions throughout police interrogation. (T.P. 409; 410; 425; 490; 491; 549). Then Richmond took detectives to the residence and showed them what she had done to cause the injury. (T.P. 469, 9-10; 485, 4-7; 487, 1-11; 490, 13-16; 495, 13-16; 513, 22-23; 520, 19-25; 523, 1-18; 540, 1-10). The State knew from doctors that the injury was an immersion burn (T.P. 481, 1-4; 525; 544) and knew Richmond's confessions were consistent with the nature of the injury, immersion, (T.P. 487, 1-11; 513, 22-23; 523, 10-17; 540, 1-10; 490, 13-16) and police knew about her son's seizure disorder described as a blank stair (T.P. 347, 19-25; 348; 304; 305; 307; 346; detectives knew 540, 15-18); therefore, Richmond's confessions as being solely and independently responsible for the injury were consistent with the nature of the injury, immersion, and with her sons seizure disorder. (T.P. 513, 21-22; 523, 10-11; 540, 7-8). There was absolutely no evidence whatsoever presented that Richmond's confessions were lies or that they were inconsistent with the facts of the injury and delay in seeking medical treatment. It was not until Richmond had a private conversation with a detective and discovered that there was going to be charges pursued that Richmond diverted full blame over to Klein. (T.P. 543, 4-25; 426, 11-25). The State cannot say that Richmond suddenly found out how sever her son's injuries were at the time of

this "private conversation" because she had already testified while viewing photos of her son that she was fully aware of the severity from the onset, (T.P. 375; 377; 384; 393; 394; 395) and she observed skin pealing off; (T.P. 523, 13-17; 429; 430) therefore, she was fully aware of the severity and damage of the injury, but she made a decision on her own not to get her son medical treatment because she is an independent person, and has a brain, and she made that decision on her own as sole authority of legal guardian in the circumstances. The record does not support a finding that Klein "and" Richmond failed to seek immediate medical treatment for Richmond's son. The only things that the record supports is that Richmond was sole guardian and legal authority over her son, that, she made a decision of her own free will and authority not to obtain medical treatment, that, Klein possessed no authority or say so in the matter. There is nothing in the record that demonstrates that Klein even knew about the injury because the record demonstrates that Klein was not even there at the time the injury occurred. (T.P. 42). The record is devoid of any evidence whatsoever that Klein said anything about Richmond accidentally burning her son while she was bathing him; therefore "They" did not say these things. This was Richmond's statements only.

The record does not support that Richmond's confessions were lies. The Record demonstrates that she confessed that she found him in a pool of water with an expressionless face. (T.P. 487, 1-18). Even if Richmond placed her son in a tub of hot water differently, the fact remains that there is absolutely no evidence supporting a theory that Klein placed her son in the tub, and there is absolutely no evidence of record to demonstrate that Richmond was not the actual perpetrator. Richmond's recanted confessions implicating Klein do not hold any legal probative value at all, therefore, they cannot support a conviction, nor can they be relied upon by the court of appeals to do so. Expert witness testimony supports that the injuries were consistent with a five (5) second immersion in 140-degree water which is consistent with accidental immersion rather than deliberate immersion. There is no evidence whatsoever that the injuries were inflicted knowingly which is the essential element of Klein's charges. The State has already admitted to the above stated facts and gave full evidentiary demonstration at trial. In other words, the State lost this case factually.

The evidence does not demonstrate that Klein left an apology note for

-4-

Richmond about the injury that said his injuries resulted from an accident.
The record does not support that Klein gave this same account to police as the
Court of Appeals erroneously held and the M.J. cited. Klein provided argument
concerning this alleged apology note in his traverse and petition with "clear
and convincing evidence" that demonstrates the alleged note to false, and
there was absolutely no evidence that Klein told investigating officers that
he accidentally burned the child while cleaning him with a hose that was
attached to the faucet. The record demonstrates that the State knew this was
false even if it was said. (T.P. 481; 504, 16-25; 505, 1-6). Since, the State
knew and admitted that the alleged statement made by Klein was also false
which is evidence reaching proof beyond a reasonable doubt thus exceeding the
clear and convincing standard proving that there was an absence of evidence.
The State's admission would be enough evidence to support a conviction in
reverse. Even if it were true that Klein made this admission, it is simply
inchoate, unproven, and inconsistent with the nature of the injury,
circumstances, and the facts as the State knew them to be. What is "clear and
convincing" is that Klein invoked his Fifth and Sixth Amendment rights and
refused to voluntarily give written statements, (T.P. 498, 3-10) refused to
voluntarily give tape recorded statements, (T.P. 62, 1-3; 497, 20-25) and
refused to verify detective's notes by refusing to voluntarily sign them.
(T.P. 498, 3-10). Therefore, even the alleged admission is not evidence that
can be relied upon. The above facts prove by "clear and convincing evidence"
that the Court of Appeals' factual determinations were all based upon false
information and fabrication to aid Richmond in evading further prosecution for
causing the injury and the death of her son.

    (2) The M.J.'s reference to Klein's August 2, 2000, state habeas corpus
(Doc. 80, at 5) is erroneous because Klein has previously filed a motion to
strike those grounds (Doc. 67) (Fourteenth and Fifteenth) from the Federal
Habeas Corpus Petition which were the only grounds presented from that
petition and are now officially struck from these proceedings.

  **I. WAIVER OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM** (see Doc. 80, at 12-20)

    (3) The M.J. held that the Court of Appeals was the last court to render a
reasoned opinion on petitioner's ineffective assistance of appellate counsel
claim denying the application because petitioner allegedly failed to show good
cause for his untimely filing, and held that the Ohio Supreme Court's later
unexplained decision dismissing the appeal must be presumed to rest on the

same ground. (Doc. 80, pg. 15). This finding is contrary to the facts and law because the State also possesses the requirement to preserve its arguments and defenses on record by "properly" presenting to the State's highest court the substance of its defense, claim, or counter-claim. In Klein's case, the State failed to present to the Ohio Supreme Court that Klein procedurally defaulted his ineffective assistance of appellate counsel claim in the court of appeals. Instead, the State presented an inadequate defense that Klein failed to show good cause for late filing of an Appeal Rule (5) delayed appeal motion, but Klein has never filed for delayed appeal in the court of appeals in the entire history of this case. Therefore, the Ohio Supreme Court could not have either expressly or even silently considered procedural default of the 26(B) application because it was not properly placed before that court for consideration; therefore, the Ohio Supreme Court's dismissal has to "fairly appear to rest primarily on resolution of those claims" Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2557 (1991) because it could not have silently regarded a claim that was not placed before it. Thus, the M.J.'s holding was in error. (more fully set forth in Klein's traverse Doc. 70, pg.s 16-20 (¶14)). (consider as an objection as if fully rewritten herein). The M.J.'s holding was in error because it cannot be presumed that the Ohio Supreme Court's decision rested upon the same procedural default because that was not even evaluated by that Court.

Second, the M.J. was in error in holding that the state law ground relied upon by the Ohio courts was an adequate basis for its decision because it was well established, regularly followed practice in Ohio to foreclose review of untimely ineffective assistance of appellate counsel claims. But, this holding leaves out of the equation that Klein did present the Court of Appeals with adequate evidence showing good cause as in other cases that factors beyond Klein's control impeded his ability to timely file the 26(B) application, and, this evidence was objectively verifiable. Clear and convincing evidence demonstrates that Klein was indigent as Klein's objectively verifies in his motion for leave pursuant to App.R. 26(B) (Doc. 53, Petitioner's Exhibit F, at [exhibit 4 of exhibit 2 motion to reduce number of copies]) which is the clerk of court's docket sheet demonstrating that Klein was on record as being indigent and could not afford all of the copies of the 26(B) application, the evidence, and transcripts relied upon. This is simple, cursory allegations do not support a claim, thus, evidence in support was required to support the

-6-

claims advanced therein which amounted to more than Klein could afford. This
obviously required a lot of copying as the rule in effect required at that
time. (as fully set forth in traverse pg. 9-16). Therefore, under Griffin v.
Illinois, and Crim.R. 32(B) Klein possessed the federally protected right to
be supplied documents necessary to an appeal as of right, and pursuant to
White v. Schotten, 26(B) proceedings qualify as part of that appeal as of
right and due process principles attach. Therefore, the State court's holding
that, "...appellant's claim of indigency lacks the specificity necessary to
provide justification for the remaining ten month delay," (Doc. 80, at 16) and
the M.J.'s holding that this reasoning was an adequate basis for the court's
failure to provide a competent attorney and/or the copies of the documentation
and evidence to comply with the demands of Due Process of Law is contrary to
the facts and to law. Keeping in mind that Klein did not receive notice of the
appellate court's judgment until the time limit had almost elapsed, second,
that Klein was entitled to an attorney for those proceedings, and within 18
days of receiving notice of judgment Klein attempted to file the 26(B)
application pro se (which he possessed no right to do pro se) and the clerk
refused the filing due to Klein's indigency after Klein specifically
demonstrated indigency for the clerk and requested the necessary copies for
filing to be made in his behalf. (note that the clerk could have debited
Klein's prison account for the sum). Then after the clerk's refusal to make
the copies or make arrangements for later payment, Klein diligently filed a
motion to the court of appeals requesting the court to either reduce the
number of copies necessary for the filing, or to order the copies to be made
and arrangement made to debit Klein's prison account, all of which occurred
within an extremely short period of time after Klein received notice of the
appellate court's judgment. Klein fully set forth all of this in precise
detail in his motions on record. Most importantly, Klein possessed the
Constitutional right to have an attorney draft and timely file the application
in his behalf in the first instance when it became clear to the court of
appeals that Klein was pursuing the claim regarding appellate counsel's
unprofessional performance. (note that Klein presented the court of appeals
with a complaint during the early stages of the appeal pointing out enough of
counsel's deficiencies that the court granted Klein's pro se motion to amend
and supplement counsel's brief but failed to either order counsel to amend the
deficiencies or appoint an attorney who could) (note secondly that the court

failed to inquire adequately into counsel's performance as required by law
[fully set forth in traverse]). Since, Klein demonstrated diligence in
attempting to file the application pro se at its earliest possible time (May
18, 2000 see Doc. 53, P. Exhibit F) within 18 days of notice of judgment, and
then pursued judicial action attempting to achieve filing when Klein did not
possess the right to file anything pro se in an appeal as of right as the M.J.
pointed out, and, since, Klein was denied an attorney then Klein's claims
should be reviewed by the Federal Court. All the law requires is:

> "To establish cause, petitioner must show that 'some objective
> factor external to the defense impeded [his] efforts to comply with
> the State's procedural rule.' Carrier, 477 U.S. at 488; see Coleman,
> 501 U.S. at 753 ('[C]lause' is 'something external to the petitioner'
> which 'cannot be fairly attributed to him.')" (Doc. 80, at 16).

Klein presented the State court with extremely specific evidence that he
could not afford anything at all, and that he did not receive notice of the
appellate court's judgment. Klein demonstrated diligence by attempting to file
the 26(B) application and by petitioning the court to provide a remedy to
render the necessary documentation for the filing. The court's failure to
fashion a remedy denied Klein of Federally protected Due Process rights on a
state created appeal as of right and the 26(B) proceedings. Klein possessed
the Federally protected rights to an effective attorney and to, at some stage
in the proceedings, receive an "adequate" and "meaningful" review of his
claims. Due the multiple Constitutional violations and  the fact that Klein
demonstrated diligence in pursuing his claims but was unavoidably prevented
from earlier filing then Klein's claims should be reviewed by this Federal
Court. Pursuant to 28 U.S.C. 2254(b)(1):

> "An application for a writ of habeas corpus shall not be granted
> unless the petitioner has exhausted his state court remedies, there is
> an absence of available state corrective process, or circumstances
> exist that render such process ineffective to protect petitioner's
> rights." Castille v. Peoples, 489 U.S. 346, 109 S.Ct. 1056 (1989).

Since, the State Courts have unconstitutionally prevented review of
Klein's claims that should have been reviewed at the earlier time then failed
to provide an adequate remedy throughout all stages of appellate review (as
Klein fully sets forth in his traverse and in the habeas petition) then there
is an absence of state corrective process, and circumstances exist that render
such process ineffective to protect Klein's rights under the United States
Constitution. The Sixth Circuit holds:

"...the state appellate court was obligated to examine the claim on its merits, and that the state court's failure to do so did not undermine the exhausted nature of the claim." Pillette v. Foltz, 824 F.2d 494, 497 (6th Cir. 1987).

Therefore, Klein should not be held to procedural defaults created by unconstitutional conduct of the State's officials (clerk of court in refusing filing) and unconstitutional procedural decisions denying adequate corrective process rendering ineffective the corrective process available.

(4) The M.J. was partially in error in holding, "Petitioner argues that he has a right to have copies made for him free of charge and counsel appointed based upon the Sixth Circuit's decision in White v. Schotten,..." (Doc. 80, pg. 17). But, this holding erroneously re-cast Klein's argument. The argument was not that pursuant to White v. Schotten that he possessed the constitutional right to have copies made for an appeal as of right. The correct argument was that pursuant to Rule 32(B) of the Ohio Criminal Rules of Procedure and Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585 (1956) Klein possessed the right to have documents supplied for an appeal as of right if he could not afford them, and, secondly, pursuant to White v. Schotten, 26(B) proceedings qualify as part of that appeal as of right were due process principles attach. Therefore, Klein possessed the right to have all of the copies of documents made by the State necessary to that appeal. (fully set forth in traverse Doc. 70). As Klein fully sets forth, cursory allegations do not suffice to prove the elements of his claims, thus, evidence and transcripts were required to obtain a constitutionally meaningful review, to fully develop the record, and to properly present the substance of those claims for preservation as the exhaustion doctrine requires. Without those copies of evidence and transcripts, no constitutionally effective and meaningful review could have occurred, and no claim would have been "properly preserved" for further review.

(5) In addition, where ever an individual possesses the Federally protected right to effective assistance of an attorney, he must first possess the Constitutional right to have an attorney, thus, have an attorney appointed. As the United States Supreme Court Holds, " '[I]t is well settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.'" Miranda v. Arizona, 384 U.S. 436, 471, 86 S.Ct. 1602, 1626 (1966). This proposition applies with equal force in the context of providing counsel to protect an accused's Sixth

-9-

Amendment right to counsel on direct appeal as of right. White made clear that 26(B) proceedings are part of that Federally protected appeal right. The Court in Evitts v. Lucey, 469 U.S. 388, 393, 105 S.Ct. 830, 834 (1985) holds, that, although the State is not constitutionally required to grant appeals as of right, "Nonetheless, if a State has created appellate courts as 'an integral part of the ... system for finally adjudicating the guilt or innocence of a defendant,' Griffin... the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." The Court of Appeals had plenty of forewarning that Klein possessed a sever problem with that attorney when he requested a replacement at the beginning of the appeal and Klein possessed the right to choice of attorneys or choice not to be represented by a particular attorney as Klein fully set forth in his traverse, but Klein was indigent and could not afford to hire another attorney on his own so that option was not open during the appeal, additionally, he was denied the Constitutional right to raise the ineffective assistance of counsel claim in the 26(B) proceedings because he could not afford to hire an attorney, and the Court, knowing that Klein was unsatisfied with that attorney's performance and that Klein possessed the right of choice in the matter, failed to properly conduct further inquiry as Constitutionally mandated. (see travers). Klein placed this request in his motion to amend and supplement counsel's deficient appeal brief (Doc. 53, P. Exhibit A, pg. 3-4) which expressly requests a competent attorney to perfect Klein's more powerful Federal claims roughly set forth therein for review by that court and to "exhaust remedies" (Doc. 53, P. Exhibit A pg. 3) for Federal review. Therefore, the court knew and it was on record before the time to file a 26(B) application came into effect that Klein was in need of an attorney to correct the errors in appellate counsel's performance. It is not like the Court did not know. As the M.J. pointed out, "...there is no constitutional right to proceed pro se on appeal." (Doc. 80, pg. 24). Therefore, since 26(B) proceedings are part of the appeal as of right and a defendant possesses no right to advance any claims pro se, there is no logic in the proposition that defendant's on appeal as of right in 26(B) proceedings are not entitled to appointment of an attorney to timely draft and submit the application in a defendant's behalf. Failure to provide a remedy for such circumstances renders the Constitutional guarantee of the Sixth and Fourteenth Amendments meaningless in the absence of procedures to enforce those rights. Since, Klein

did not possess the Constitutional right to proceed pro se in the initial or latter part of the appeal the only way to protect Klein's Constitutional rights for that appeal is to have an attorney appointed to "properly" draft and timely submit the application in Klein's behalf. The M.J. build on the premise that there is no constitutional right to proceed pro se on appeal by adding, "[W]hen a criminal appellant accepts the assistance of counsel, but later objects to his attorney's appeal strategy or preparation of the brief, the criminal appellant cannot then expect to be allowed to file a supplemental brief. By accepting the assistance of counsel the criminal defendant waives the right to preset pro se briefs on direct appeal." (Doc. 80, pg. 24). This holding leaves out the clearly established fact that Klein did not accept that attorney's deficient performance and requested replacement counsel in the early stages of the appeal in order to achieve an effective and meaningful review on appeal as of right, and Klein possessed the Constitutional right to choice of attorney's. Klein did not request to proceed pro se, nor did Klein accept the ineffectiveness of that attorney. Regardless of whether or not Ohio follows its App.R. 13 mailbox rule for the filing of briefs, the issue is that Klein is Constitutionally guaranteed an "adequate," "effective," and "meaningful" review on a state created appeal as of right. Evitts... What the State Court did was tie Klein's hands for attempting to achieve that review at the earliest possible time. Klein's continual petitioning of the courts demonstrates his diligence in achieving this review. Most importantly, since Klein did not possess the right to proceed pro se at any stage of the appeal as of right then Klein was entitled to the effective assistance of an attorney during that critical stage in the 26(B) proceedings to protect his rights that were violated earlier, and since, Klein did not possess the right to proceed pro se he could not have procedurally defaulted and the denial of counsel at that stage provides "cause" for the procedural default. Additionally, White was the state of the law at the time Klein became eligible to file a 26(B) application and not any decisions recently decided. Therefore, these issues must be decided based upon the state of the law in effect at that time which is still in effect. There is but little difference between White and Klein's case because White was constructively denied an attorney through his attorney's negligence and Klein was totally denied an attorney at a critical stage in the proceedings and was denied effective assistance of an attorney in the initial appeal.

-11-

The United States supreme Court holds:
"Those whose right to appeal has been frustrated should be treated exactly like any other appellant; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage of the proceedings." Rodriquez v. United States, 395 U.S. 327, 330, 89 S.Ct. 1715 (1969); White v. Schotten, 201 F.3d 743, 752 (6th Cir. 2000).

"If the application for delayed reconsideration is neither part of a state habeas nor state post-conviction proceeding, it must be a continuation of activities related to the direct appeal itself. Because a defendant is entitled to effective assistance of counsel on direct appeal, see Evitts v. Lucey,... such an individual must be accorded effective assistance of counsel throughout all phases of that stage of the criminal proceedings." White, at 753.

"Therefore, upon establishing that he was actually prejudiced by any ineffective representation, the petitioner is entitled to present to a federal court for merit review those claims that should have been brought to the attention of the Ohio State courts throughout the course of the petitioner's legal battles." White, at 753.

Therefore, since Klein was entitled to effective assistance of an attorney in "all phases" of the appellate proceedings, and since Klein was denied replacement attorney and totally denied counsel in the 26(B) proceedings, and since Klein is not permitted to proceed pro se in any of these proceedings and Klein did not accept the assistance of that attorney and possessed a Constitutional right of choice in the matter then Klein is Constitutionally entitled to have his Federal claims reviewed in the Federal Court.

(6) The M.J. holding based upon Ohio Supreme Court's decisions (Doc. 80, pg. 18) are not applicable in habeas proceedings because as the United States Supreme Court holds, "...it is not the province of a federal habeas court to reexamine state court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991). Therefore, the Ohio Supreme Court's position that 26(B) proceedings is a collateral post-conviction remedy is State-law and beyond the habeas court's province. In addition, the Ohio Supreme Court's proposition fails in addition to the holding in White because Appeal Rule 26(B) is just that an "Appeal Rule" not a statute like R.C. 2953.21 post-conviction petition which is a collateral remedy. The M.J.'s holding that Klein's case is distinguishable from White (Doc. 80, pg. 18) is contrary to the facts and to law because the United States Supreme Court holds in Evitts, "...a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel as all." Evitts, at 388/831. Therefore, constructive denial and total

-12-

denial of an attorney are exactly the same thing. The M.J.'s refusal to extend White to this case is an incorrect and legally deficient holding because it is not entirely White that should extend to this case. White only established 26(B) proceedings to be Federally protected under the Due Process and Equal Protection Clauses. It is Douglass v. California, 372 U.S. 353, 83 S.Ct. 814 (1963), Evitts v. Lucey, and Griffin v. Illinois that extend to this case mandating that Klein possessed the Federal Constitutional right established under the Due Process and Equal Protection Clauses of the United States Constitution on a direct appeal as of right. These due process rights attached to those proceedings when the court in White applied the sound legal reasoning found in Evitts to 26(B) proceedings. Therefore, "Nominal representation on appeal as of right-like nominal representation at trial-does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." Evitts, at 831. In addition, Klein was denied the Federally protected right to "an adequate opportunity to present his claims fairly in the context of the State's appellate process." Ross v. Moffitt, 417 U.S. 600, 616, 94 S.Ct. 2437, 2447 (1974) "...a State cannot arbitrarily cut off appeal rights for indigents..." Ross, at 607/2442. Klein was not provided an "adequate opportunity" to present his claims fairly which denies Due Process and Equal Protection of the Law. Klein was denied a Constitutionally "meaningful appeal" in the earlier stages as well as in the 26(B) proceedings. Therefore, the M.J.'s finding was contrary to law and factually in error in holding, "Petitioner fails to cite any case which extends White to require that the court provide free copying on an application for reopening." (Doc. 80, pg. 18-19). It is the combination of the above stated precedent that extends the holding in White to this case. Specifically, that the White holding established 26(B) proceedings to be part of the appeal as of right where due process principles apply.

(7) The M.J. holding that "...petitioner did not even have to file portions of the record to support his claims" (Doc. 80, pg. 19) is factually and legally erroneous. The exhaustion doctrine requires a petitioner to fully develop the record with the substance of and evidence supporting his Federal claims. Failure to place the requisite evidence on record also fails to support the Federal claim in the appellate stage as stated above. The very premise of Griffin was to supply the documents necessary to make the appeal

-13-

more than a meaningless ritual by supplying copies of any documentation
necessary to that appeal. "In Griffin itself, a transcript of the trial court
proceedings was a prerequisite to a decision on the merits of an appeal."
Evitts, at 834. Likewise, the evidence (copies) Klein was relying upon in
support of the claims advanced in the 26(B) proceedings was also a
prerequisite to a Constitutionally meaningful determination on the merits.

   (8) The M.J. holding that unavailability of funds to prepare documents,
copies, and pay postage necessary to file a 26(B) application is not an
objective factor external to Klein's control is contrary to the facts and the
law. (Doc. 80, pg. 19). As stated above, the documents necessary to achieve a
meaningful determination on the merits of the 26(B) application are entirely
dependent on the evidence submitted. As stated above, the money necessary to
draft, copy, and mail the requisite documentation is not cheap. Whereas, Klein
objectively demonstrated that he possessed no money at all and was listed on
record as being indigent. Therefore, Klein had "objectively" demonstrated that
at the time he was unable to timely file due to insufficient funds available
to draft, copy, and mail those documents. Crim.R. 32(B) establishes that if a
defendant cannot afford the cost of documents for an appeal those documents
will be provided for him without cost and Griffin supports providing indigent
defendants with copies of documents necesary for an appeal as of right, and
White holds that the 26(B) proceedings are part of the Federally protected
appeal invoking the premise of Griffin, Douglass, and White.

   (9) The M.J. was also erroneous holding that "petitioner did not even have
to file portions of the record to support his claims," (Doc. 80, pg. 19) but
the M.J. failed to support this proposition with any legal basis or sound
reason because App.R. 26(B) establishes otherwise; it mandates that a
petitioner supply those portions of the records that are available to him. It
was already on record that Klein possessed a copy of the transcript and other
documentation that he was relying upon as evidence; therefore, those were
obviously available to him and the Court could have easily checked the record
to verify that fact. Therefore, Klein was required to reproduce those portions
of the records that the Court knew he possessed. This is the very language of
App.R. 26(B). The Rule does not provide for a defendant to withhold
documentation known to be in his possession. What the M.J. failed to consider
was that Klein possessed over three hundred pages of evidence and transcript
to be reproduced in support of his claims which is, in fact, mandated by Rule

26(B) and necessary to achieve a Constitutionally meaningful determination on the merits, as well as, a prerequisite to exhaustion of state remedies to fully develop the record evidence on appeal. What the M.J. failed to realize is that the State knew Klein possessed this documentation because Klein obtained it from the State. What the M.J. decided is that Klein should have mislead the Court of Appeals and pretended that he did not possess the requisite documentation for the filing of the 26(B) application. This is absurd to even imagine. The M.J. failed to elaborate on how Klein should have gone about misleading that Court of Appeals on this matter. The only reasonable determination was that Klein had to strictly follow the mandates of Rule 26(B) in its entirety or as closely as possible to avoid ramifications of a choice to mislead the Court of Appeals in pertinent information.

## MISCARRIAGE OF JUSTICE EXCEPTION

(10) The M.J.'s findings that Klein failed to demonstrate that a miscarriage of justice will occur if his claims are not addressed (Doc. 80, pg. 19) is erroneous. Klein presented the State's own documentation which was discovered at a later date and possesses the highest validity, trustworthiness and reliability. Therefore, Klein has met the burden of proof with this evidence because it is not only objectively verifiable but is also of the highest ranking evidence that can be presented written by detectives during the course of their investigation and admissions by the State on record to facts not presented to the jury which meets the qualifications necessary to be evidence supporting the actual innocence claims advanced in Klein's traverse.

## DELAYED APPEAL TO THE OHIO SUPREME COURT

(11) The M.J. was in error in holding, "...failure to file a delayed appeal to the Supreme Court of Ohio from that order constitutes yet another procedural default," and "Accordingly, petitioner's ineffective assistance of appellate counsel claims are waived." (Doc. 80, pg. 20). What the M.J. failed to calculate into the equation is that Rust v. Zant, 17 F.3d 155 (6th Cir. 1994) was still controlling at the time Klein became eligible to proceed to a 26(B) application and to the Ohio Supreme Court. The Sixth Circuit held:

> "...where the time periods for reconsideration in the court of appeals and direct appeal to the Ohio Supreme Court have expired, a delayed claim of ineffective assistance of appellate counsel must first be brought in an application for delayed reconsideration in the court of appeals where the alleged error took place, and, if delayed reconsideration is denied, the defendant must file a delayed appeal in the Ohio Supreme Court. Because Rust has complied with these

requirements by filing an application for delayed reconsideration in the court of appeals, and by filing a delayed appeal in the Ohio Supreme Court, Rust has exhausted his available state court remedies." Rust, at 160.

(12) Therefore, Klein's appeal to the Ohio Supreme Court qualifies as a delayed appeal to the Ohio Supreme Court as the Sixth Circuit held in Rust, and the only difference between Rust's case and Klein's case is that Rust failed to present his claims first on direct appeal but Klein did, in fact, fully present his claims to the court of appeals at the earliest possible time on direct appeal in a pro se appeal brief pursuant to a motion to file amended and supplemental pro se brief and motion to exceed the page limit which was granted. The fact that the motion for leave was granted was a significant factor because that was when due process principles attached to Klein's pro se pleadings. Those claims were presented to the Ohio Supreme Court in a consolidated appeal with Klein's ineffective assistance of appellate counsel claim. Neither, respondent nor the M.J. has cited any precedent to establish that this cannot be done in this manner in light of the particular circumstances that exist in this case, or Klein would have proceeded on an additional delayed appeal had that been a requisite for review of all of Klein's Federal claims in the Ohio Supreme Court. Clearly established law as established by the United States Supreme Court holds:

> "An application for a writ of habeas corpus shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. 2254(b)(1)" Castille v. Peoples, 489 U.S. 346, 109 S.Ct. 1056 (1989).

> " 'Once [a] federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied.' Picard v. Connor,..." Castille, at 351/1060.

> "A State prisoner seeking federal habeas relief 'fairly presents' the substance of each claim to state courts, as required, by citing applicable provisions of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." McMeans v. Brigano, 228 F.3d 674 (6th Cir. 2000).

> "State prisoners must give the State Courts one complete round of the State's established appellate review process." O'Sullivan v. Boreckel, 526 U.S. 838, 845, 119 S.Ct. 728, 1732 (1999).

> " '...we have never interpreted the exhaustion doctrine to require

-16-

prisoners to file repetitive petitioner. See Brown v. Allen...' "
O'Sullivan, at 844/1732.

"Nor, '...requiring a state prisoner to invoke any possible avenue
of state court review, we have never interpreted the exhaustion
requirement in such a restrictive fashion.' " O'Sullivan, at 844/1732.

"...a state prisoner need not have invoked every conceivably
'available' state remedy in order to avoid procedural default."
O'Sullivan, at 855/1737.

"...state prisoners must give the state courts [one] full
opportunity to resolve any constitutional issues by invoking [one]
complete round of the State's established appellate review process."
O'Sullivan, at 845/1732.

"The Court recognized in Toggle (Toggle v. Seabold, 806 F.2d 87
(6th Cir. 1986)) the distinction between bypassing a state supreme
court altogether, and merely neglecting to re-petition a court that
already has considered fully the substance of a federal claim. Here
the petitioner Hafley has bypassed the Kentucky Supreme Court
altogether with respect to his ineffective assistance of counsel
claims." Hafley v. Sowders, 902 F.2d 480 (6th Cir. 1990) at 483.

(13) The M.J.'s insistence that Klein's alleged "...failure to file a
delayed appeal to the Supreme Court of of Ohio ... constitutes yet another
procedural default" does not escape the meaning of the above cited law. Klein
only needed to proceed to the State Court of Appeals [once] then to the Ohio
Supreme Court [once] to exhaust remedies and avoid a procedural default on all
of the claims in the habeas corpus petition. Here as in Pillette, even though
neither court reviewed the claims, both already "had a fair opportunity to
review these issues and to require petitioner to trek through [another round
in the Supreme Court] is to further delay redress..." Pillette v. Foltz, 824
F.2d 494, 497 (6th Cir. 1987). Additionally, "...the State appellate court was
obligated to examine the claims on their merits, and that the state court's
failure to do so did not undermine the exhausted nature of the claim."
Pillette, at 497.

(14) Since, the law of Rust permits a defendant to consolidate his appeal
claims into one appeal, and due to the fact that the issue of procedural
default was never raised by the State in the Ohio Supreme Court then the
Supreme Court had to have reviewed the merits of the claims and dismissed upon
some other ground. Klein should not be required to re-petition again the same
court raising the same claims already presented and considered by that court.
Since, the cases cited by respondent and the M.J. citing newly developed law

-17-

that Klein could not have relied upon when he became eligible to file appeal
to the Ohio Supreme Court and to file a 26(B) application then Klein could not
have predicted what the state of the law was going to be at the later date and
the law in effect at the time should be controlling. Nothing in the law
existing at the time forbid consolidation of appeal claims with the 26(B)
claim and a petitioner is only required to present his claims one time to each
court to comply with the mandates of the exhaustion doctrine and to avoid
procedural default.

## II. PETITIONER WAIVED GROUNDS FIVE, SIX SEVEN, NINE, TEN, ELEVEN, TWELVE, THIRTEEN AND FOURTEEN

(15) The M.J. erroneously held that Klein did not present his Seventh (7)
ground for relief to the Ohio Supreme Court because he did not refer to the
claim in his brief to that court. (Doc. 80, at 21). First, Klein never filed a
"brief" in the Supreme Court because the court never ordered a briefing
schedule. Second, Klein did, in fact, raise the seventh (7) ground for relief
in his memorandum in support of jurisdiction. (see Doc. 70, P. Exhibit Q, at
12). Klein's argument stems from his appeal brief argument (see R. Exhibit 18,
at 24-32, pro se appeal brief) Fourth Assignment of Error. Klein mis-wrote
mis-wording the proposition of law citing only the Fourth Amendment, whereas,
the case relied upon connotes the Fourth and Fifth Amendment as being
connected in findings relying upon Brown v. Illinois, (compare Doc. 70, P.
Exhibit Q, at 12 with R. Exhibit 18, at 21). This was a simple clerical error
due to the complex factual predicate that the totality of the circumstances
evidence ties these two claims together and Klein mis-wrote the proposition of
law leaving out the word "Fifth" in that argument. On direct appeal, Klein
raised the claim under the heading of ineffective assistance of trial counsel
but it was both trial counsel and the trial court that was in error whichever
suits these proceedings. By citing and relying upon the rational in Brown
which relies heavily upon Miranda v. Arizona as the predicate of its decision,
both claims were consolidated into one. Nevertheless, the United States
Supreme Court, Granberry v. Greer, 482 U.S. 129, 133 (1987), as well as, the
Sixth Circuit hold:

> "...the Court carved out an exception to the exhaustion
> requirement, now permitting federal courts, in the exercise of their
> sound discretion, to hear the exhausted claims presented in mixed
> petitions while dismissing the unexhausted claims. See Weaver v.
> Foltz,..." Hafley v. Sowders, 902 F.2d 480 (6th Cir. 1990).

-18-

"It is equally well settled that 'however inartfully pleaded,' allegations in a pro se complaint are held to 'less stringent standards than formal pleadings drafted by lawyers.' Hanes v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972)." Franklin v. Rose, 756 F.2d 82, 85 (6th Cir. 1985).

"The allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to liberal construction.' Burris v. United States, 430 F.2d 399, 403 (7th Cir. 1070)." Franklin, at 85.

"The appropriate liberal construction requires active interpretation in some cases to construe a pro se petition 'to encompass any allegation stating federal relief.' " Franklin, at 85.

"Even ... underdeveloped allegations satisfy the requirement of Blockledge v. Allison,... that a habeas petition must 'state facts that point to a real possibility of constitutional error.' " Franklin, at 85.

(16) Nevertheless, the basis of the Seventh (7) ground for relief is still ineffective assistance of trial counsel and the trial court erred albeit inartfully pleaded, it bears both of these meanings. Due to the fact that the Ohio Supreme Court was provided with the Federal basis of the claim advanced under Brown v. Illinois, which covers both the Fourth, and Fifth Amendment claims, and that, the mis-wording was simply a clerical error in the writing of the document, this claim should be reviewed on its merits. And, based on the fact that Klein possessed the right to effective assistance of counsel at trial, on appeal, and in the 26(B) proceedings, this claim should have been advanced and perfected in Klein's behalf. Klein's clerical error is excusable error in its drafting where pro se litigants are entitled to liberal construction as with all of the claims advanced in the habeas petition. Nevertheless, this, like all of the claims advanced in the habeas petition, are valuable powerful Federal Due Process claims and should be reviewed on their merits. Had this claim been properly drafted and set forth in the earlier stages by a competent attorney it would have been properly set forth in the Supreme Court's memorandum in support of jurisdiction. Klein respectfully requests leave to leave this claim in the petition for review by this District Court.

(17) The M.J. was in error when holding that Petitioner's twelfth ground for relief was raised only on appeal to the Supreme Court of Ohio in his 26(B) proceedings. And, "Petitioner waived the claim because he did not present it on direct appeal either in counsel's brief or his his own pro se brief." (Doc.

-19-

80, at 22). First, has Klein received effective assistance of trial and
appellate counsel this claim would have been adequately drafted at trial and
on appeal, as well as, all of Klein's claims had he received the requisite
assistance of an attorney. Second, nevertheless, Klein did raise this issue in
his pro se brief on direct appeal. (see R. Exhibit 18, at 12-15). This is the
decimal equivalent of ground twelve (12) that the State denied Due Process of
Law by taking two critical and dramatically opposed positions in the same case
simply to suit its own litigation purposes. The State's position for Richmond
(the mother) that her delay in seeking medical treatment did not cause the
death, then turning around at trial and advancing that Klein's (12) hour delay
caused the death where Klein was not the father and did not even have any
parental authority over Richmond's child, nor authority over Richmond's
actions and Klein had only known this woman for two (2) weeks, was simply
inartfully drafted and pleaded pro se. This ground for relief is a critical
element in the entire litigation of this case. Pages (13-14) of the pro se
brief (R. Exhibit 18) demonstrates this claim was exhausted. Although, Klein
did not cite the correct case law in support. Clearly established Federal law
holds, that, a pro se petitioner need "only state facts that point to a real
possibility of constitutional error." Nevertheless, had Klein received the
Constitutionally effective assistance of counsel as mandated on the State
through the United States Constitution these claims would have been adequately
drafted in the early stages and this litigation would not be necessary.
Additionally, Klein possesses the First Amendment right of access to the court
system by means of "pro se litigation." The United States Supreme Courts have
held for over 64 years:

> "It is now established beyond doubt that prisoners have a
> constitutional right of access to the courts. This Court recognized
> that right more than 35 years ago... (1941)..." Bounds v. Smith, 430
> U.S. 817, 821, 97 S.Ct. 1491, 1495 (1977).

> "...constitutional principles of [due] [process] and [equal]
> [protection] form the basis for the requirement that States expand
> resources in support of convicted defendant's right to appeal."
> Bounds, at 834/1501.

(18) Therefore, any inadequacies in drafting, litigating, and/or
procedural adherence are overcome by the liberal construction law and the
First and Fourteenth Amendment's rights of pro se litigation especially in
light of the circumstances here where the Court of Appeals' opinion

demonstrates that it knew counsel advanced factually non-supported and non-arguable assignments of error on an appeal as of right.

## III. PETITIONER'S FIFTEENTH GROUND FOR RELIEF

(19) The M.J.'s holding on the Fourteenth and Fifteenth grounds for relief (Doc. 80, at 22-23) are not factually accurate because Klein had previously moved to withdraw those two grounds. (Doc. 67).

## IV. PETITIONER'S CLAIMS RELATING TO THE FAIRNESS OF THE PROCEDURES ON APPEAL AND IN THE RULE 26(B) PROCEEDINGS, ASSERTED IN GROUNDS ONE, TWO, AND THREE, ARE EITHER WAIVED OR DO NOT ENTITLE PETITIONER TO HABEAS CORPUS RELIEF.

(20) The M.J.'s holding (Doc. 80, at 23-24) that Klein's First ground for relief which is that Klein was denied due process when the court of appeals struck his timely filed pro se brief without just cause after permitting the filing of it pro se, is procedurally barred because petitioner failed to file a delayed appeal to the Supreme Court and because Klein was not entitled to proceed pro se on appeal and because the mailbox rule in Rule 13 of the Ohio Rules of Appellate Procedure does apply to the filing of Klein's appeal briefs only is in extreme error. First, as fully set forth above and in Klein's traverse and in Klein's first four grounds for relief, the state of the law at the time Klein became eligible to file for appeal to the Ohio Supreme Court permitted a defendant to consolidate his ineffective assistance of appellate counsel claim with the claims presented to the court but not ruled upon Rust v. Zent (cited above). Second, the M.J. erroneously re-cast mis-casting Klein's argument concerning the filing and unconstitutional dismissal of his timely filed pro se brief. The brief was timely filed because Rule 13(A) of the Ohio Rules of Appellate Procedure says it was timely filed due to the fact that it was an appeal brief. The M.J.'s position that Klein is the only defendant that the appeal rules do not apply to is contrary to law and reasoning because App.R. 13(A) applies on direct appeal to all litigants. The case law cited by respondent and the M.J. does not compare because those cases are based upon the filings of other documents, not appeal briefs on direct appeal as of right. Respondent and the M.J. has failed to demonstrate where in the law App.R. 13(A) is inapplicable to an appeal brief on direct appeal, and failed to set forth the basis of the appellate courts unconstitutional dismissal of Klein's pro se briefs. The appellate court also failed to set forth its basis for its dismissal which unconstitutionally deprived Klein of a Constitutionally fair "adequate" and "meaningful" appeal of right. The M.J.

failed to demonstrate how and why dismissal of the brief did not affect the
fact and duration of Klein's incarceration because it did affect reveiw of the
fact and duration of incarceration which is grounds for habeas relief which is
the very reason Due Process principles attach to appeal procedures in the
first instance because the Due Process right to an "adequate" and "meaningful"
appeal is premised upon review of the fact and duration of incarceration.
Therefore, it was fundamentally unfair, in direct violation of Due Process of
Law, for the court of appeals to strike Klein's timely filed appeal brief
without a legitimate basis after granting Klein's motion for leave because
this was when due process principles attached to Klein's pro se litigation.
Nevertheless, the brief was, in fact, timely filed according to the Ohio Rules
of Appellate Procedure.

(21) The M.J.'s erroneous finding that there is no constitutional right of
proceed pro se makes no logical sense because first, due process principles
attached to Klein's pro se pleadings at the time the court granted Klein's
motion to amend and supplement counsel's deficient brief. Second, Klein did
not choose that attorney and, as fully set forth in traverse, Klein possessed
the constitutional right to a choice in the matter; therefore, the M.J.'s
holding that by accepting the assistance of counsel the criminal defendant
waives the right to present pro se briefs on direct appeal has no basis since
Klein did not "accept" that attorney, Klein filed the brief according to rule,
the court granted leave to file the brief, the court failed to provide the
assistance of an attorney requested in Klein's motion for leave forcing Klein
to proceed pro se against his will and legal skills, and there was no basis
for the court's dismissal of the pro se brief that Klein never should have had
to prepare and file pro se in the first instance because Klein not only
possessed the Federally protected right to adequate assistance of an attorney
on direct review, but also possessed the right to choice in the matter.
Regardless of whether or not the court followed the mailbox rule or not, the
issue is fundamental fairness due process of law on a state created appeal as
of right. Evitts...

(22) The State's failure to provide Klein with adequate notice of the
judgment prevented direct appeal to the Ohio Supreme Court, and Klein did not
pursue delayed appeal to that court because the time limit had elapsed and the
appointed attorney left Klein without any arguable claims to advance to that
stage. The M.J. and Respondent has failed to demonstrate which of counsel's

-22-

claims possessed arguable merit. Therefore, none of which do which is
evidenced by the Court of Appeals holding that counsels claims were either not
supported by any evidence of record or not an arguably meritorious claims.
Thus, proceeding to the Ohio Supreme Court with claims that were factually and
legally deficient without any arguable merit or record support does not
comport with the demands of Due Process of Law. Klein's pro se claims were not
fully developed because he was not provided the requisite assistance of an
attorney thus was forced by the circumstances to achieve due process
("adequate" and "meaningful" review) on his own in which Klein never should
have had to file a single document in the first instance because Klein does
not qualify as constitutionally adequate counsel as guaranteed by the United
States Constitution; therefore, the court's failure to appoint a new attorney
to perfect the only claims supported by the record which was another violation
of due process overcomes all of the procedural defaults.

(23) The Court of appeals ruled that the record did not factually support
any of counsel's claims which is evidence in support of the fact that counsel
failed to raise arguable claims. It is also evidence that the Court of Appeals
knew Klein did not receive adequate representation because it was that court's
determination that the claims were not factually supported by the record.

(24) The M.J. holding that Klein did not present evidence showing good
cause was in error because the Court never ruled upon Klein's "Petitioner's
Rule 12 Motion to Strike Correction of the Record." (Doc. 74). The basis for
this motion was fully set forth therein, that, Respondent removed the key
evidence demonstrating good cause from Klein's motion which was filed by
Respondent as (R. Exhibit, 36 Klein's 26(B) motion for leave showing good
cause). Respondent's exhibits (Doc. 35; 36; 37) were placed of record by leave
of court. Klein was denied ad adequate determination because of Respondent's
failure to acquire, duplicate, and submit accurate documentation from the
State file. Klein regained a copy of this document at a later date through the
clerk of courts in Hamilton County and submitted it as. (P. Exhibit F, Doc.
53). The M.J.'s holding obviously missed this evidence which is evident
because the M.J. could not have rendered the determination rendered had an
accurate document been submitted by Respondent or had the M.J. reviewed
Klein's copy of that very same document. The evidence of which is part of the
State's record but was not submitted by Respondent the same. All of Klein's
evidence demonstrating good cause is objectively verifiable.

(25) Klein incorporates all other objections made in this case that are on file with the Clerk of the United States District Court as if fully rewritten herein.

(26) The M.J. erred in his findings concerning the First through Thirteenth grounds for relief. Second, the M.J. failed to apply the appropriate standard to Klein's actual innocence claims and failed to consider the necessary factors and facts. Klein incorporates all of the claims and issues presented in his traverse as if fully rewritten herein.

For the foregoing reasons, Petitioner respectfully requests that the M.J.'s report and recommendation be overruled and for the habeas petition to be fully reviewed.

Respectfully submitted,

Richard J. Klein III 350-022
Petitioner/pro se
R.C.I. P.O. Box 7010
Chillicothe, Ohio 45601

## CERTIFICATE OF SERVICE

Petitioner hereby certifies that a true copy of the foregoing has been served upon counsel for respondent Assistant Ohio Attorney General Diane Mallory at 150 East Gay Street Columbus Ohio 43215 on this 31st day of May, 2005.

Richard J. Klein III

-24-